Joseph G. Price, Esquire (PA ID #32309)
Sean P. McDonough, Esquire (PA ID #47428)
Paul T. Oven, Esquire (PA ID #77106)
**DOUGHERTY LEVENTHAL & PRICE, LLP**
75 Glenmaura National Blvd.
Moosic, PA 18507
Telephone: **570-347-1011**
Email: JPrice@dlplaw.com
         SMcDonough@dlplaw.com
         Ptoven@dlplaw.com
*(Local Counsel)*

Simon Bahne Paris, Esquire
Patrick Howard, Esquire (PA ID #88657 )
Charles J. Kocher, Esquire (PA ID #93141)
**SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C.**
One Liberty Place, 52nd Floor
1650 Market Place
Philadelphia, PA19103
Telephone:  (215) 575-3986
Facsimile:  (215) 496-0999
Email:  sparis@smbb.com
         phoward@smbb.com
         ckocher@smbb.com

*(Additional counsel listed on signature page)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA - SCRANTON

| | | |
|---|---|---|
| ELAINE RICE, | : | CIVIL NO. _____ |
| | : | |
| *Individually, and on behalf of* | : | |
| *all others similarly situated,* | : | |
| | : | |
| Plaintiff, | : | COMPLAINT – CLASS ACTION |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| ELECTROLUX HOME PRODUCTS, INC., | : | |
| | : | |
| Defendant. | : | |

## CLASS ACTION COMPLAINT

## I.      INTRODUCTION

1.      This is a Complaint brought by Plaintiff Elaine Rice on her own behalf and on

behalf of all persons similarly situated against Defendant Electrolux Home Products, Inc.

("Defendant" or "Electrolux") to redress a product defect in the handle of Defendant's Over-

The-Range Microwave Ovens, ("Microwave(s)") that was designed, manufactured, warranted,

advertised, distributed, and sold by Defendant throughout the United States.  The handle of the

Microwave can reach temperatures of over 168°F when the cooking surface below is in

operation, presenting a risk of serious injury to anyone who touches the handle with a bare hand.



FIGURE 1
EXEMPLAR MICROWAVE WITH STAINLESS STEEL HANDLE

2.     The Microwave is an over-the-range microwave oven designed for installation on

a vertical wall directly over the cooking surface of the range.  *See* Installation Instructions,

attached hereto as Exhibit A at Figure 1.

3.     The handle of the Microwave bearing Defendant's part number 5304471830,[1] and

all predecessor part numbers for this stainless steel handle, however, contains a uniform latent

design defect when used for its intended purpose.  When the cooking range is in use below, the

Microwave's stainless steel handle absorbs the heat from the cooking surface and conducts it

---

[1] As of December 4, 2014, Defendant's part number for the stainless steel handle at issue here was 5304471830.

through the handle reaching temperatures in excess of 168°F in minutes ("Handle Defect"),

creating a substantial risk of harm to consumers for burns and related injuries.

4.      This Handle Defect was confirmed in Plaintiff Rice's Microwave.  As noted

below, the Plaintiff Rice's Microwave handle reached temperatures of over 168°F in the time it

took to bring water to a boil:



**FIGURE 2**
**SURFACE TEMPERATURE OF PLAINTIFF RICE'S MICROWAVE HANDLE**

5.      This Handle Defect is unreasonably dangerous, as it can result, and has resulted,

in injury to Plaintiff Rice and to consumers, including burns to the skin.  The design is defective

in the material selected for the Microwave handle and the failure to design an insulation system

or other protective measure.  Industry standards, such as ASTM, establish guides by which the

engineer or designer can determine the acceptable surface temperature of an existing system

where skin contact may be made with a heated surface.  Defendant's Handle Defect does not

comply with these design standards.

6.      According to industry standards, when dealing with extremely high-temperature

3

metallic surfaces – surfaces in excess of 158°F (70°C) – damage or burns to skin will occur almost instantaneously on contact with the surface.  In addition, most heating apparatus in industrial, commercial, and residential service are insulated, unless thermal insulation would interfere with their primary function.  *See* ASTM International (formerly the American Society for Testing and Materials), ASTM C1055-03 (Reapproved 2014) Standard Guide for Heated System Surface Conditions That Produce Contact Burn Injuries.

7.      Defendant was on notice that the Microwave was defective and not fit for its intended purpose in that the Microwave caused damage to Plaintiff Rice and consumers. Defendant concealed the existence and nature of the said Handle Defect from Plaintiff and Class Members at the time of purchase of the Microwave and thereafter.  Plaintiff Rice is informed, believes, and thereon alleges that Electrolux has not recalled the Microwave, nor has it offered to reimburse Plaintiff Rice or consumers, past or present, who incurred costs relating to their purchase of a defective Microwave or injuries sustained therefrom.

8.      As a result of this Handle Defect and Defendant's conduct, Plaintiff Rice has suffered physical and economic damages, and continues to be exposed to risk of injury.  Plaintiff now bring claims for: (i) declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*; (ii) strict liability-design defect and failure to warn on behalf of a Rule 23(b)(2) declaratory relief class; (iii) negligent failure to warn; (iv) violations of the Magnuson-Moss Consumer Products Warranties Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"); (v) breach of implied warranty of merchantability; (vi) breach of express warranty; (vii) unjust enrichment; and (viii) strict liability-design defect and failure to warn on behalf of Plaintiff Rice individually for personal injuries.  Plaintiff Rice also brings suit on behalf of all other similarly situated persons, as set forth below, who have purchased the Microwave, for monetary damages, declaratory and

equitable relief, and restitution and/or disgorgement of profits.

## II.       PARTIES

### PLAINTIFF ELAINE RICE

9.       Plaintiff Elaine Rice is an adult individual who is a consumer that resides in Havertown, Pennsylvania.

10.       Plaintiff Rice is the owner of a Frigidaire Gallery Over-The-Range Microwave Oven, Model No. FGMV174KFC, which is one of Defendant's Microwaves that contains the Handle Defect.  The Microwave was installed pursuant to Defendant's installation instructions.

11.       The surface temperature of Plaintiff Rice's Microwave handle was measured with a pot of boiling water on the stovetop.  When the water came to a boil, the surface temperature of the handle reached a maximum of 168.12°F.  *See* Fig. 2.

12.       On January 21, 2014, Plaintiff Rice placed Defendant on notice of a claim for the Handle Defect under the warranty.  On February 28, 2014, Defendant denied that claim.

### DEFENDANT ELECTROLUX HOME PRODUCTS, INC.

13.       Defendant Electrolux is, upon information and belief, a Delaware corporation that can be served with process at its principal place of business located at 10200 David Taylor Dr., Charlotte, NC 28262; and may also be served with process at Electrolux Home Products, Inc., c/o CT Corporation System, Registered Agent, 116 Pine Street, Suite 320, Harrisburg, PA 17101.

14.       Defendant distributes its products under a variety of brand names, including Electrolux, Electrolux ICON, Frigidaire Professional, Frigidaire Gallery, Frigidaire, Eureka, Kelvinator, Sanitaire, Tappan, and White-Westinghouse.  *See* http://www.electroluxappliances.com/About-Electrolux/About-US/ (last visited February 10, 2015).

15.     Upon information and belief, at all times relevant, Electrolux was engaged in the business of designing, manufacturing, and distributing the Microwaves throughout the United States, including in this jurisdiction.

### III.     JURISDICTION AND VENUE

16.     This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332(d), as the matter is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure, and the sum of the amount in controversy exceeds $5,000,000.  The requirement of minimal diversity is met, as the dispute is between a citizen of Pennsylvania and a Defendant from a different state, North Carolina.  *See* 28 U.S.C. § 1332(d)(2)(A).

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant regularly transacts business within this district.

### IV.     FACTUAL ALLEGATIONS

**A.     Defendant's Microwave is Defective**

18.     For almost one-hundred years, Defendant has designed, manufactured, assembled, sold, and otherwise placed into the stream of commerce a wide range of home appliances.  In fact, Defendant touts itself as a "global leader" in home appliances and appliances for professional use, selling more than 50 million products to customers in 150 countries every year.  http://www.electroluxgroup.com/en/topic/frigidaire (last visited February 13, 2015).  In 2010, it was the world's second-largest appliance maker by market share.  http://www.bloomberg.com/news/articles/2010-09-23/electrolux-says-ceo-straaberg-to-leave-succeeded-by-mcloughlin (last visited February 13, 2015).

19.     According to Defendant's website setting forth the "Company History," the Frigidaire product line was purchased by AB Electrolux of Sweden in 1986.  http://www.frigidaire-intl.com/company-history (last visited February 11, 2015).

20.     Defendant's core message is "thinking of you," a pledge to Defendant's customers that it places an emphasis on its customers' interests when Electrolux is testing, designing, manufacturing, and selling its products for use in consumers' homes.

21.     Despite this claimed focus on consumers, Defendant designed, manufactured, and marketed a Microwave that contains a serious and dangerous defect, putting its customers in harm's way.

22.     Defendant sells its Microwaves to consumers throughout the United States directly through its website (*see, e.g.*, http://www.frigidaire.com), and indirectly through authorized retailers, including but not limited to, the Lowe's Home Improvement.  *See, e.g.*, http://www.lowes.com/pd_27680-2251-FGMV174KF_0__?productId=3066277 (last visited on February 17, 2015).

23.     The Microwave is a stainless steel over-the-range microwave.  The Microwave is designed to be installed on the wall over the cooking range directly over the cooking surface, as shown below.



**FIGURE 3**
**INSTALLATION SPECIFICATIONS**

24.     The Microwave is designed, manufactured, and intended to be used "over-the-range." *See e.g.*, Exh. B (true and correct copies of Defendant's Product Specifications Sheet for the Microwave ("Specifications Sheet"), available at

http://manuals.frigidaire.com/prodinfo_pdf/Springfield/FGMV174K_0114_EN.pdf) (last visited February 11, 2015).

25.     The Microwave is designed, manufactured, and intended to be used with its unique stainless steel "Handle Design." *See id.* The stainless steel door handle can be replaced at a retail cost of $78.67, and bears Defendant's part number 5304471830.



**FIGURE 4**
**STAINLESS STEEL HANDLE**

26.     The intended use of the Microwave's handle is to access the appliance for use, and is the only way to open the Microwave door.  The handle is designed for use with a bare hand, and a consumer's reasonable expectation is that the handle to the Microwave can be touched without risk of burning or other serious injury.

27.     When the cooking range is in use below, however, the stainless steel handle of the Microwave can reach temperatures in excess of 168°F in minutes, which is dangerous to consumers.

28.     According to ASTM C1055-03, skin contact with metallic surfaces at such temperatures can result in irreversible skin damage:

| Sensation | Skin Color | Tissue Temperature | | Process | Injury |
|---|---|---|---|---|---|
| | | °C | °F | | |
| Numbness | White | 68-72 | 154-162 | Protein Coagulation | Irreversible |
| | Mottled Red & White | 60-64 | 140 - 147 | Thermal inactivation of Tissue Contents | Possibly Reversible |
| Maximum Pain | Bright Red | 52-56 | 126-133 | | Reversible |
| Severe Pain | Light Red | 48 | 118 | | |
| Threshold Pain | | 40-44 | 104-111 | | |
| Hot | Flushed | 36-40 | 97-104 | Normal metabolism | None |
| Warm | | | | | |

**FIGURE 5**
**ASTM C1055-03 (2014), FIG. X1.2 THERMAL SENSATIONS AND ASSOCIATED EFFECTS THROUGHOUT RANGE OF TEMPERATURES COMPATIBLE WITH TISSUE LIFE**

29.     This ASTM Standard also makes clear that "Personal injury resulting from contact with heated surfaces can be prevented by proper design of insulated systems or other protective measures."  ASTM C1055-03 at 7.

30.     Defendant has not provided any warnings, instructions, or visible indicators that the handle becomes hot with the operation of the cooking surface below and may cause serious burns or other injuries.

**B.      Defendant's Defective Microwave Caused Plaintiff's Injury**

31.     Plaintiff Rice's Microwave was purchased from Lowe's Home Centers, Inc. on October 13, 2013 for $269.10, excluding tax.

32.     Thereafter, Plaintiff Rice paid approximately $180 to have her Microwave installed in her home over the cooking range in accordance with the Installation Instructions for the Microwave, which were provided by Defendant.  *See* Exh. A (Installation Instructions).

33.     Plaintiff's Microwave was installed in the same location on the wall over her cooking range as the old microwave that she was replacing.

34.     At all relevant times hereto, Plaintiff has a conventional-size cooking range.

35.     After installation, while cooking on her stove, Plaintiff reached for the handle of her Microwave to open it.

36.     As a result of Plaintiff Rice's very brief contact with the handle, she suffered a burn on her hand due to the exceedingly high temperature of the stainless steel handle of the Microwave.

37.     Shortly thereafter, Plaintiff called the customer service number for Defendant to complain about the defective Microwave and about the injury she had sustained as a result of the Handle Defect.

38.     In response, Defendant arranged for an Electrolux service representative from Baker Appliance Repair LLC, 974 Thrush Lane, Huntingdon Valley, PA 19006-2026 ("Baker Appliance") to inspect Plaintiff Rice's Microwave.

39.     A representative from Baker Appliance inspected Plaintiff's Microwave and advised Plaintiff that her Microwave is located too close in proximity to her cooking range. According to the representative from Baker Appliance, the base of the Microwave should be thirty (30) inches above the surface of the stove.

40.     The Installation Instructions and Specifications Sheet provided by Defendant for the Microwave do not comport with the advice of the Electrolux representative from Baker Appliance regarding the placement of the Microwave on the wall.  Indeed, the Installation Instructions require the top of the Microwave (not the base) to be at least thirty (30) inches from the surface of the cooking range.  *See* Figure 3.  This is consistent with Plaintiff Rice's installation.

41.     On January 21, 2014, Plaintiff Rice sent an email to Toya Talton, a customer service Supervisor in Defendant's Corporate Office advising her of the Handle Defect and

requesting a refund for the purchase price of the Microwave along with the cost to install the Microwave, or, in the alternative, requesting Defendant to install a new microwave of comparable quality without the defective stainless steel handle.

42.    On January 22, 2014, Ms. Talton responded to Plaintiff Rice by email and communicated Defendant's refusal to offer a refund or to replace the Microwave.  Ms. Talton also responded that the technician from Baker Appliance "was correct concerning the dimensions necessary for proper installation of your microwave."

43.    On February 28, 2014, Defendant's Claim Representative, Cindy Del Hoyo sent Plaintiff Rice a letter that denied her claim, referenced by Defendant as Claim# 48926.

**C.    Defendant had Knowledge of and/or Recklessly Disregarded Knowledge of the Handle Defect**

44.    Based on the design or manufacture of the Microwave, the external surface of its stainless steel handle can reach up to 168°F when using the Microwave for its intended purpose as instructed by the Use & Care Guide.

45.    Defendant's choice of material selection for the stainless steel handle causes the exterior of the Microwave handle to reach temperatures that create a substantial risk of harm to consumers when the cooking range is in use below the Microwave.

46.    Plaintiff is informed, believes, and thereon alleges that Defendant has had constructive and actual knowledge of the Handle Defect through numerous consumer complaints made directly to Defendant or through online communications and complaints of consumers at large.

47.    Plaintiff is informed and believes that Defendant acknowledged internally that the Handle Defect caused injuries and burns to consumers, including the serious burn to Plaintiff's hands.

48.     Despite having repeated notice of the Handle Defect,  its effects, and consumers' reasonable expectation of using the handle to open the Microwave door when the cooking range is in use, Defendant has engaged and continues to engage in the following wrongful course of conduct, where it:

a.     Designs, manufactures, markets, advertises, and sells the Microwave with a Handle Defect that causes burns and other injuries;

b.     Fails to disclose at the time of purchase that the Microwave has a Handle Defect that causes burns and other injuries;

c.     Continues to represent on Microwave packaging that the Microwave is of a quality and fitness that it is not;

d.     Continues to represent expressly or by necessary implication that the Microwave is dependable and fit to use in consumer's households when it knows these statements are false because the Microwave contains a Handle Defect;

e.     Continues to manufacture, market, advertise, distribute, and sell the Microwave when it knows that the Microwave is defective and unsafe;

f.     Fails to disclose the risk that to a substantial certainty, the Microwave will cause burns or other injuries when used as instructed by its Use & Care Guide;

g.     Fails to disclose to consumers the Handle Defect; and

h.     Fails to implement a recall or repair program to adequately announce to Plaintiff and Class Members the existence of the Handle Defect, and provide, without charge, a solution to remedy and correct the Handle Defect.

49.     Had Plaintiff known of the Handle Defect in the Microwave and the substantial risk of burns resulting from use of the Microwave, Plaintiff would not have installed her

Microwave.

**D.      Breach of Express and Implied Warranties**

50.      The Microwave's Use & Care Guide contains an express limited warranty

("Limited Warranty"), in which Defendant guarantees:

> Your appliance is covered by a one year limited warranty.  For one
> year from your original date of purchase, Electrolux will pay all
> costs for repairing or replacing any parts of this appliance that
> prove to be defective in materials or workmanship when such
> appliance is installed, used and maintained in accordance with the
> provided instructions.

*See* Exh. C, attached hereto.

51.      The Warranty is guaranteed by Electrolux Major Appliances North America, a

division of Electrolux Home Products, Inc.  *See id.*

52.      The Microwave is not free from defects in material and workmanship.

53.      Plaintiff Rice relied on the warranties, which became the basis of the bargain

between Plaintiff and Defendant.

54.      The Microwave failed to conform to the express warranty and Defendant

breached the express warranty by not repairing or replacing the Microwave or the Handle Defect

and defective parts therein.

55.      Plaintiff is informed, believes, and thereon alleges that the Microwave contained a

design defect when it left Defendant's control.

56.      Defendant manufactures and sells other models of microwaves with handles that

do not emit an exterior surface temperature which would cause burns or injuries to consumers.

The Microwave fails to match the quality of similar products made by Defendant, and Plaintiff

and other consumers suffered injuries resulting from the Handle Defect when using the

Microwave in the intended and reasonable manner.

57.     To the extent there is any notice requirement imposed by law, Plaintiff gave notice to Defendant before filing this lawsuit and/or was excused because Defendant had actual knowledge of the Handle Defect that caused the Microwave to create a high risk of burn and injury.  In response to warranty claims by Class Members, Defendant routinely denies those claims.  Therefore, notice to Defendant has been, is, and will be futile, in that Defendant has refused to modify or remanufacture the Microwave to eliminate the dangerous Handle Defect.

58.     As part of the sale of each Microwave, Defendant warranted, marketed, and advertised that the defective Microwaves were of merchantable quality and fit for the ordinary purpose for which over-the-range Microwaves are used.

59.     Defendant fell short of its warranty obligations because it failed to remedy and eliminate the Handle Defect in the Microwave that causes burns, or create a substantial risk of burns.

60.     Despite Defendant's knowledge that its Microwave is defective, and Plaintiff's pre-litigation request that Defendant correct the Handle Defect, Defendant continues to sell the Microwave, and other microwaves, with the Handle Defect present; has not modified the Microwave to eliminate the Handle Defect; has not offered to replace all of the defective Microwaves; has not replaced or repaired the workmanship, parts, and/or material that cause the Handle Defect; and has not refunded all or part of the monies paid by Plaintiff and Class Members for their Microwaves, including the cost to install the Microwave.

## V.     CLASS ACTION ALLEGATIONS

61.     Plaintiff brings all claims as class claims pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) are met with respect to the Classes defined below.

62.     The (b)(2) Injunctive/Declaratory Relief Class consists of:

All persons in the United States who own a Microwave with a stainless steel handle (Part # 5304471830). Excluded from the Class are officers, representatives, or agents of Defendant, as well as the judge presiding over this case and his or her immediate family members.

63.     The (b)(3) State Sub-Classes consist of:

Pennsylvania: All persons in the Commonwealth of Pennsylvania who own a Microwave with a stainless steel handle (Part # 5304471830) purchased during the four (4) years preceding the filing of this action;

and/or,

Other States: All persons in the States of Alaska, Arkansas, California, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming who own a Microwave with a stainless steel handle (Part # 5304471830) purchased during the four (4) years preceding the filing of this action.

Excluded from the State Sub-Classes are officers, representatives, or agents of Defendant, as well as the judge presiding over this case and his or her immediate family members. In addition, notwithstanding the foregoing, all claims for personal injury and wrongful death are excluded from the Class

Numerosity

64.     Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the Classes are so numerous that the joinder of all members is impracticable.  The Classes are composed of an easily ascertainable, self-identifying set of persons who purchased the Microwaves with the Handle Defect.

Commonality

65.     There are numerous questions of law and fact common to Plaintiff and the

Classes, including the following:

  a.  Whether Defendant engaged in the conduct as alleged herein;

  b.  Whether the Microwaves at issue in this lawsuit are defective;

  c.  Whether Defendant knew or should have known of the inherent Handel Defect in the Microwave;

  d.  Whether Defendant represented that its Microwaves were of a particular standard, quality, or grade when they were not and/or when Defendant knew or should have known that they were of another standard, quality, or grade;

  e.  Whether Defendant fraudulently concealed from and/or failed to disclose to Plaintiff and the Classes the inherent problems with its Microwave;

  f.  Whether Defendant had a duty to Plaintiff and the Classes to disclose the inherent Handle Defects in its Microwave;

  g.  Whether the facts Defendant misrepresented, concealed, or failed to disclose were material;

  h.  Whether as a result of Defendant's concealment of and/or failure to disclose material facts, Plaintiff and the Classes acted to their detriment by purchasing the Microwave;

  i.  Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with its Microwave and for the cost and expense of repairing and replacing all such Microwaves or replacing its defective stainless steel handle, and whether the Court should declare the existence of defects in Defendant's Microwave;

  j.  Whether Defendant's Microwave is covered by express or implied warranties;

  k.  Whether Defendant's purported limited remedies fail of their essential purpose;

  l.  Whether Defendant has acted or refused to act on grounds generally applicable to the Injunctive/Declaratory Relief Class and/or either State Sub-Class(es);

  m.  Whether Plaintiff and the State Sub-Classes are entitled to damages, and the amount of such damages; and

n.   Whether Defendant's warranty documents are subject to reformation or declaratory relief.

Typicality

66.   Plaintiff's claims are typical of the claims of the Classes in that Plaintiff, like all Class Members, owns a defective Microwave, and has been damaged by Defendant's uniform misconduct.

67.   Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all members of the Classes.

Fair and Adequate Representation

68.   Plaintiff Rice will fairly and adequately protect the interests of the Classes. Plaintiff has retained counsel who are experienced in consumer class-action litigation.  Plaintiff has no interests which are adverse to, or in conflict with, other members of the Classes.

The Prerequisites of Rule 23(b)(2) are Satisfied.

69.   The prerequisites to maintaining a class action for injunctive, declaratory, and equitable relief pursuant to Rule 23(b)(2) are satisfied because Defendant has acted or refused to act on grounds generally applicable to the Class, such that actual controversies exist, including its failure to acknowledge a defect or defects in its Microwave, and its failure to provide remedies to consumers, thereby making appropriate injunctive, declaratory, and equitable relief with respect to the Injunctive/Declaratory Relief Class as a whole.

70.   Defendant has injected its defective Microwaves into the stream of commerce, which are now owned by Plaintiff and the members of the Injunctive/Declaratory Relief Class. Defendant claims its Microwaves are not defective, and also refuses to honor the terms of its express and implied warranties.  The issues surrounding the existence of a defect and its impact

on the governing warranties can be resolved in this action.

The Prerequisites of Rule 23(b)(3) are Satisfied.

71.     The questions of law and fact common to Class Members predominate over any questions which may affect only individual members.

72.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.  Moreover, absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

73.     The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant.  In contrast, a class action presents far fewer management difficulties, conserves judicial as well as the parties' resources, and protects the rights of each Class Member.

## VI.     TOLLING

74.     Because the Handle Defect is latent and not detectable until manifestation, Plaintiff and Class Members were not reasonably able to discover the Handle Defect until after installation, despite their exercise of due diligence.

75.     Defendant had a duty to inform Plaintiff and the Class of the Handle Defect described herein of which it had widespread knowledge at the time of sale.  Defendant's failure to document or disclose the known Handle Defect in its Microwaves, and its concealment of the known Handle Defect from Plaintiff and Class Members, constitute fraudulent concealment that equitably tolls the applicable statutes of limitation.

76.     The facts concealed and/or not disclosed by Defendant to Plaintiff and the Class

are material facts because a reasonable person would have considered them important in

deciding whether to purchase and install the Microwave.  Had Plaintiff and the Class known the

defective nature of the Microwave, they would not have purchased and installed the Microwaves

or would have paid less for them.

77.     Any applicable statutes of limitation have, therefore, been tolled by Defendant's

concealment of the facts alleged herein.  Further, Defendant is estopped from relying on any

statutes of limitation because of its concealment of the defective Microwave.

## VII.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Declaratory Relief Pursuant to 28 U.S.C. § 2201, *et seq.*
On Behalf of a Rule 23(b)(2) Declaratory Relief Class**

78.     Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

79.     Declaratory relief is intended to minimize "the danger of avoidable loss and

unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

80.     There are actual controversies between Defendant and the nationwide

Injunctive/Declaratory Relief Class concerning (1) whether Defendant's Microwaves with the

Handle Defect are defective; (2) whether Defendant knew, or should have known, of the

Microwave's defective design; (3) whether Defendant failed to adequately warn of the particular

risk regarding the unreasonably high external surface temperature of the Microwave handle when

the cooking range below is in use; (4) whether there is coverage under Defendant's express

warranty for that defective condition; and (5) the availability of coverage under Defendant's

implied warranties.

81.     Defendant has wrongly denied the existence of the Handle Defect alleged herein; denied coverage under its express warranty; and denied coverage under any implied warranties.

82.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

83.     Accordingly, because of Defendant's failure to act, Plaintiff seeks a declaration that her Microwave is defective in its workmanship, material, and labeling.  These defects cause serious burns or other injuries when the Microwave is used as instructed.  The defective nature of the Microwave is material and requires disclosure to all persons who reside in a structure that contains Defendant's defective Microwaves.

84.     The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective design and labeling of the Microwave and the reasons for its repeated failure.  There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

85.     Plaintiff therefore seeks a declaration that the Microwave has the alleged Handle Defect or defects, that Defendant must notify the Injunctive/Declaratory Relief Class of said Handle Defect or defects, and that the available express and/or implied warranties cover the Handle Defect or defects.

## SECOND CAUSE OF ACTION

### Strict Liability-Design Defect and Failure to Warn
### On Behalf of a Rule 23(b)(2) Declaratory Relief Class

86.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

87.     Plaintiff asserts this claim on behalf of herself and all members of the putative

Classes.

88.     Under Pennsylvania law, an otherwise safe product can be deemed "defective" for strict liability purposes if, upon normal use, the product is dangerous beyond the reasonable consumer's contemplations ("consumer expectations standard"), or if a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions ("risk-utility analysis").

89.     Under both the consumer expectations standard and the risk-utility analysis, Defendant's Microwave is defective.

90.     Defendant designed, manufactured, and supplied the Microwave to consumers throughout the Commonwealth of Pennsylvania and the United States.

91.     Plaintiff alleges based on information and belief that the Microwave failed to meet an ordinary consumer's minimum safety expectations of an over-the-range microwave.

92.     Plaintiff alleges based on information and belief that the risk of the stainless steel design for the Microwave handle outweighs any aesthetic or functional benefits and any utility to the public.

93.     The external surface of the Microwave handle reaches temperatures that expose consumers to the likely risk of injury, such as burns.

94.     Plaintiff, using the over-the-range Microwave as instructed by the Use & Care Guide, suffered a burn when her hand touched the handle of the Microwave while the cooking range was in use below.

95.     The stainless steel handle of the Microwave reaches temperatures in excess of 168°F when the cooking range is in use below.  This creates a risk of burns or other injuries when a consumer touches the handle.

96.     The Microwave did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way and/or the manner in which it was intended by Defendant.  Further, it was intended, and is reasonably foreseeable, that a consumer would use the handle of the Microwave while the cooking range was in use below as it is the only means to open the door to the appliance.

97.     The Microwave contained the foregoing defect when it left Defendant's control.

98.     Plaintiff did not make any alterations or modifications to the Microwave. Plaintiff is informed, believes, and thereon alleges that the Microwave was, at all times mentioned herein, substantially the same as when it left Defendant's possession.

99.     Consumers cannot adjust or prevent the handle of the Microwave from conducting heat from when the cooking range is in use below.

100.     There are no visible heat indicators or warnings regarding the external surface temperature of the Microwave handle.

101.     In other words, ordinary consumers would not have recognized the potential risks of serious burns or other injury based on the exterior appearance of the Microwave.

102.     The foregoing defects alone, or in combination, render the Microwave unreasonably dangerous and unable to perform as an ordinary consumer would expect.

103.     Based on consumer complaints, Defendant was aware that the external surface of the Microwave handle reaches unsafe temperatures and hid the Handle Defect or other defects and/or proposed inadequate and misleading solutions which led to numerous injuries to consumers, including the burn suffered by Plaintiff.

104.     Plaintiff is informed, believes, and thereon alleges that Defendant knew, or should have known, of the danger of the Microwave at the time it sold and distributed it, but failed to

adequately warn of the particular risk regarding the unreasonably high external surface temperature of the handle when the cooking range in is use below.

105.     Plaintiff is informed, believes, and thereon alleges that a substitute material exists which would meet the same functional needs of the handle for the Microwave, and would eliminate the unsafe heat conductive stainless steel handle without impairing its usefulness.

106.     In summary, the Microwave sold by Defendant was defective in design and/or manufacture and unreasonably dangerous to users and consumers in that it caused an unreasonable risk of injury to persons who used the Microwave as intended.

107.     Defendant failed to warn Plaintiff and the Class of the risk for injury caused by using the Microwave.  Defendant also failed to ensure that the Microwave sold was safe for its intended users.

108.     Defendant failed to warn in the Microwave's Use & Care Guide, and all other documents accompanying the Microwave, about the risk regarding the unreasonably high external surface temperature of the handle when the cooking range in is use below.

109.     As a direct and proximate result of the Defendant designing, manufacturing, selling, distributing, and otherwise putting into the stream of commerce the defectively designed and/or manufactured Microwave, and/or its failure to warn of the risks of use thereof, Plaintiff and putative Class Members have been injured and have suffered damages.

110.     Thus, Defendant is strictly liable for all injuries suffered by Plaintiff and the Class as a result of the defective design, warning, assembly, manufacture, and sale of the Microwave described herein.

### THIRD CAUSE OF ACTION

**Negligent Failure to Warn**
**On Behalf of a Rule 23(b)(3) Pennsylvania and Other State Sub-Classes**

111.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

112.     Plaintiff asserts this claim on behalf of herself and all members of the putative Classes.

113.     Defendant designed, sold, and/or distributed defective Microwaves to Plaintiff and the Classes.

114.     Defendant failed to adequately warn of the danger or instruct Plaintiff and the Classes on the safe use of the Microwave, rendering the Microwave unreasonably dangerous.

115.     Defendant knew or reasonably should have known that its Microwaves were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner.

116.     Defendant knew or reasonably should have known that Plaintiff and the Classes would not realize that the Microwave was defective and posed a danger to Plaintiff and consumers.

117.     A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product, including but not limited to, providing detailed instructions for safe use of the Microwaves together with warnings regarding the risk of harm from contact with the stainless steel handle of the Microwave when the cooking range is in use below.

118.     Defendant had a duty to Plaintiff and the Class to use reasonable care to warn consumers about the risks and dangers regarding the use of the Microwave, or facts that made

said Microwave likely to be dangerous, and of which Defendant knew or reasonably should have known.

119.     Defendant breached this duty.

120.     As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Classes have been injured.

121.     Defendant's failure to warn or instruct Plaintiff and the Classes was a substantial factor in causing their harm.

122.     As a direct, proximate, and foreseeable result of Defendant's negligence, Plaintiff and putative Class Members have been damaged in the aggregate, in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

**Violation of Magnuson-Moss Consumer Products Warranties Act,
15 U.S.C. § 2301, *et seq.* ("MMWA")
On behalf of all Classes**

123.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

124.     The MMWA provides a private right of action by purchasers of consumer products against manufacturers or retailers who, *inter alia*, fail to comply with the terms of an implied or written warranty.  15 U.S.C. § 2310(d)(1).  As alleged above, Defendant has failed to comply with its express and implied warranties with regard to its Microwave.

125.     Microwaves are consumer products, as that term is defined in 15 U.S.C. § 2301(a).

126.     Defendant is a warrantor, as that term is defined in 15 U.S.C. § 2301(5).

127.     Plaintiff and each member of the Classes are consumers, as that term is defined in 15 U.S.C. § 2301(3).

128.    The MMWA provides a cause of action for breach of warranty or other violations

of the Act.  15 U.S.C. § 2310(d)(1).  Defendant has breached its express warranties as alleged

herein.  It has also breached its implied warranty of merchantability, as alleged herein, which it

cannot disclaim under the MMWA, 15 U.S.C. § 2308(a)(1), by failing to provide merchantable

goods.  Plaintiff has suffered damages as a result of Defendant's breach of its express and

implied warranties as set forth herein.  15 U.S.C. § 2310(d)(1)-(2).

129.    Defendant was provided notice of the breach of warranty claims raised by

Plaintiff, and Defendant was afforded a reasonable opportunity to cure.  Defendant never cured

its breach of warranty.  In fact, Defendant's uniform policy is to deny the existence of any defect

and to deny any relief to consumers for the problems alleged herein.  Until Plaintiff's

representative capacity is determined, notice and opportunity to cure through Plaintiff, and on

behalf of the Class, can be provided under 15 U.S.C. § 2310(e).

130.    Due to failures and omissions on Defendant's part, Plaintiff did not receive or

otherwise have the opportunity to review at, or before, the time of sale the written warranty

containing the purported exclusions and limitations of remedies on which Defendant purports to

rely.  Accordingly, such exclusions and limitations of remedies are unconscionable and

unenforceable, and Plaintiff is entitled to all remedies available under MMWA and Article 2 of

the Uniform Commercial Code.

131.    Defendant's acts and omissions in violation of the MMWA are "[u]nfair methods

of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting

commerce," and they are unlawful.  15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

132.    Plaintiff and State Sub-Class Members have suffered, and are entitled to recover,

damages as a result of Defendant's breaches of warranty and violations of the MMWA.

133.     Additionally, or in the alternative, the MMWA provides for "other legal and equitable" relief where there has been a breach of warranty or failure to abide by other obligations imposed by the MMWA.  15 U.S.C. § 2310(d)(1).  Plaintiff and the Injunctive/Declaratory Relief Class seek declaratory relief relating to the existence of the Handle Defect alleged herein, the remediation of that Handle Defect and its coverage under available express and implied warranties.  In addition, Plaintiff asks that Defendant be enjoined from acting unlawfully as alleged herein, including with respect to its practices aimed at discouraging customers who purchased defective Microwaves from seeking the full panoply of remedies available to them.

134.     Plaintiff also seeks an award of costs and expenses, including attorneys' fees, under the MMWA to prevailing consumers in connection with the commencement and prosecution of this action.  15 U.S.C. § 2310(d)(2).  Plaintiff and the prospective Class intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability
### On Behalf of all Classes

135.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

136.     Defendant is a merchant who sold Microwaves to Plaintiff and members of the Class.

137.     Defendant impliedly warranted to Plaintiff and members of the Class that its Microwave was free of defects, and was merchantable and fit for the ordinary purpose for which such goods are used.

138.    Defendant knew or had reason to know at the time of sale that the over-the-range Microwave handle was required for a particular purpose – namely, safely opening the Microwave door, and that Plaintiff and Class Members were relying on Defendant's skill or judgment to select or furnish such goods.

139.    As alleged herein, Defendant breached the implied warranty of merchantability because Defendant's Microwave uniformly possesses the unsafe Handle Defect or defects.  The Microwaves are therefore defective, unmerchantable, and unfit for the ordinary, intended purpose at the time of sale.

140.    After Plaintiff was made aware of the Handle Defect, she gave reasonable and adequate notice to Defendant that its Microwaves were defective, unmerchantable, and unfit for their intended use or purpose.  Defendant has failed to cure.

141.    Defendant's purported disclaimer or exclusion of the implied warranty of merchantability in its written warranty is invalid, void, and unenforceable per Magnuson-Moss, 15 U.S.C. § 2308(a)(1).

142.    Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, the written warranty containing the purported exclusions and limitations of remedies on which Defendant seems to rely.  Accordingly, such exclusions and limitations of remedies are unconscionable and unenforceable, and Plaintiff is entitled to all remedies available under Article 2 of the Uniform Commercial Code.

143.    Defendant's warranty disclaimers, exclusions, and limitations were unconscionable and unenforceable because Defendant disclaimed a defect known but not disclosed to consumers at or before the time of purchase.

144.    Any contractual language contained in Defendant's written warranty attempting

to limit remedies is unconscionable, fails to conform to the requirements for limiting remedies under applicable law, causes the warranty to fail of its essential purpose, and is unconscionable, unenforceable, and/or void.

145.    Breach of implied warranty of merchantability laws in the following states do not differ, or differ in an immaterial way, from the laws of Pennsylvania: Alaska, Arkansas, California, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Oklahoma, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming.  Thus, Plaintiff's claim is likewise asserted on behalf of residents of each of these states.

146.    As a direct and proximate result of the breach of implied warranty, Plaintiff and Class Members have been injured in an amount to be proven at trial, including replacement of the defective handle with a non-defective handle of at least the quality and grade marketed and promised, as well as shipment and installation of the replacement handle at Defendant's expense.

147.    Additionally, or in the alternative, Plaintiff and the Injunctive/Declaratory Relief Class seek declaratory relief relating to the Handle Defect, the remediation of the Handle Defect, and its coverage under the available implied warranties.

## SIXTH CAUSE OF ACTION

### Breach of Express Warranty
### On Behalf of all Classes

148.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

149.    Under Defendant's express warranty, its Microwave is warranted by Electrolux

Major Appliances North America, a division of Defendant Electrolux Home Products, Inc.

150.    Defendant's Limited Warranty provides in relevant part:

> Your appliance is covered by a one year limited warranty.  For one year from your original date of purchase, Electrolux will pay all costs for repairing or **replacing any parts of this appliance that prove to be defective in materials or workmanship** when such appliance is installed, used and maintained in accordance with the provided instructions.

*See* Exh. C (Use & Care Guide) (emphasis added).

151.    Defendant expressly represented and warranted to Plaintiff and Class Members by and through oral and written statements, descriptions, and affirmations of fact in product advertisements, marketing materials, its web site, and other written materials intended for the general public that the Microwave was safe and fit for its proper and intended use for up to one (1) year, and that the Microwave contained no defects in material or workmanship.

152.    Defendant was therefore obligated to provide a Microwave free of defects which would result in a risk of injury, similar to the burn Plaintiff suffered.

153.    The Limited Warranty's express terms were breached by Defendant with respect to Plaintiff and all Class Members who purchased a Microwave that was of an inferior quality, and contained a Handle Defect which created a high likelihood of injury to consumers during the one (1) year period of limited warranty coverage.

154.    Defendant further breached the express terms of its Limited Warranty by failing to assemble and manufacture the Microwave in such a way that would prevent the exterior surface of the Microwave from achieving temperatures in excess of 168°F.

155.    Defendant publicized its Limited Warranty to Microwave buyers, and understood that the nature of the warranty and quality of its design and workmanship were material to Plaintiff and Class Members.

156.    This Limited Warranty related to and covered qualities and features of the Microwave, including the material selection of the defective stainless steel handle, that were unavoidably material to Plaintiff and Class Members.

157.    At the time it made these express warranties, Defendant knew the purposes for which the Microwaves were intended to be used, and warranted the Microwaves as safe and fit for such purposes.

158.    At the time it made these express warranties, Defendant knew that its Microwaves did not confirm to its express representations, because they contained the latent Handle Defect or defects in their design, material, and workmanship.

159.    Plaintiff is informed and believes, and based thereon alleges, that Defendant had within its means the knowledge and ability to design and manufacture its Microwave in a safe manner, which would not pose an unreasonable risk of injury to consumers when used as directed.  This is evidenced by the fact that Defendant markets several other Microwave designs on its website, which do not contain defective handles.

160.    Defendant is aware that the Handle Defect will continue to place purchasers of its Microwave at risk for both injury and product failure even after the stated warranty period has lapsed.  Such conduct by Defendant is patently unconscionable, rendering the warranty's durational limitations unenforceable, since Defendant was uniquely knowledgeable of the Microwave's design defect or defects prior to sale.

161.    The express warranties, affirmations, promises, assurances, description, and displays provided by Defendant were the basis of the bargain for Plaintiff's and Class Members' purchase or acquisition of their Microwaves.

162.    Plaintiff and Class Members relied upon these express warranties in purchasing

their Microwaves.

163.    Plaintiff's and the Class Members' Microwaves did not conform to Defendant's promises, descriptions, or affirmations of fact because they are defective in material and/or workmanship.

164.    Defendant breached its express warranties to Plaintiff and Class Members because the Microwaves contain a latent defective which is substantially certain to manifest itself during the life of the Microwave and harm consumers.

165.    Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Class whole, and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

166.    Accordingly, recovery by Plaintiff is not restricted to the Limited Warranty, and Plaintiff seeks all remedies allowed by law.

167.    Defendant has been placed on notice of its breach of express warranty by Plaintiff.

168.    Any contractual language contained in Defendant's express warranty that attempts to limit or exclude remedies is unconscionable, fails to conform to the requirements for limiting remedies under applicable law, causes the warranty to fail of its essential purpose, and is unconscionable, unenforceable, and/or void.

169.    Due to Defendant's failures and omissions, Plaintiff did not receive or otherwise have the opportunity to review at, or before, the time of sale the written warranty containing the purported exclusions and limitations of remedies on which Defendant seems to rely. Accordingly, such exclusions and limitations of remedies are unconscionable and unenforceable, and Plaintiff is entitled to all remedies available under Article 2 of the Uniform Commercial

Code.

170.    Defendant continued to conceal the defective nature of its Microwave even after members of the Class began to report problems.

171.    As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class are entitled to compensatory, direct, incidental, and consequential damages, including full refunds or the replacement of the defective handle with a non-defective handle of at least the quality and grade marketed and promised, as well as the shipment and installation of the replacement handle at Defendant's expense.

172.    Additionally, or in the alternative, Plaintiff and the Injunctive/Declaratory Relief Class seek declaratory relief relating to the Handle Defect, remediation of the Handle Defect, and its coverage under the available express and implied warranties.

173.    Plaintiff and the Class are entitled to all remedies under law.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment
### On Behalf of All Classes

174.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

175.    Defendant received monies for the purchases of Plaintiff's and Class Members' Microwaves, and Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

176.    Defendant's enrichment at the expense of Plaintiff and Class Members was unjust.

177.    As a result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution and institution of a constructive trust disgorging all profits, benefits, and other

compensation obtained by Defendant, in addition to attorneys' fees, costs, and interest thereon.

## EIGHTH CAUSE OF ACTION

### Strict Liability-Design Defect and Failure to Warn
### On Behalf of Plaintiff Rice Individually for Personal Injuries

178.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

179.    Plaintiff asserts this claim on behalf of herself for the personal injuries she sustained as caused by the Handle Defect.

180.    Under Pennsylvania law, an otherwise safe product can be deemed "defective" for strict liability purposes if, upon normal use, the product is dangerous beyond the reasonable consumer's contemplations ("consumer expectations standard"), or if a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions ("risk-utility analysis").

181.    Under both the consumer expectations standard and the risk-utility analysis, Defendant's Microwave is defective.

182.    Plaintiff alleges based on information and belief that the Microwave failed to meet an ordinary consumer's minimum safety expectations of an over-the-range microwave.

183.    Plaintiff alleges based on information and belief that the risk of the stainless steel design for the Microwave handle outweighs any aesthetic or functional benefits and any utility to the public.

184.    The external surface of the Microwave handle reaches temperatures that expose consumers to the likely risk of injury, such as burns.

185.    Plaintiff, using the over-the-range Microwave as instructed by the Use & Care Guide, suffered a burn when her hand touched the handle of the Microwave while the cooking

range was in use below.

186.    The stainless steel handle of the Microwave reaches temperatures in excess of 168°F when the cooking range is in use below.  This creates a risk of burns or other injuries when a consumer touches the handle.

187.    The Microwave did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way and/or the manner in which it was intended by Defendant.  Further, it was intended, and is reasonably foreseeable, that a consumer would use the handle of the Microwave while the cooking range was in use below as it is the only means to open the door to the appliance.

188.    The Microwave contained the Handle Defect when it left Defendant's control.

189.    Plaintiff did not make any alterations or modifications to the Microwave. Plaintiff is informed, believes, and thereon alleges that the Microwave was, at all times mentioned herein, substantially the same as when it left Defendant's possession.

190.    Consumers cannot adjust or prevent the handle of the Microwave from conducting heat from when the cooking range is in use below.

191.    There are no visible heat indicators or warnings regarding the external surface temperature of the Microwave handle.

192.    In other words, ordinary consumers would not have recognized the potential risks of serious burns or other injury based on the exterior appearance of the Microwave.

193.    The foregoing defects alone, or in combination, render the Microwave unreasonably dangerous and unable to perform as an ordinary consumer would expect.

194.    Based on consumer complaints, Defendant was aware that the external surface of the Microwave handle reaches unsafe temperatures and hid the Handle Defect or other defects

and/or proposed inadequate and misleading solutions which led to numerous injuries to consumers, including the burn suffered by Plaintiff.

195.    Plaintiff is informed, believes, and thereon alleges that Defendant knew, or should have known, of the danger of the Microwave at the time it sold and distributed it, but failed to adequately warn of the particular risk regarding the unreasonably high external surface temperature of the handle when the cooking range in is use below.

196.    Plaintiff is informed, believes, and thereon alleges that a substitute material or design exists which would meet the same functional needs of the handle for the Microwave, and would eliminate the unsafe heat conductive stainless steel handle without impairing its usefulness.

197.    In summary, the Microwave sold by Defendant was defective in design and/or manufacture and unreasonably dangerous to users and consumers in that it caused an unreasonable risk of injury to persons who used the Microwave as intended.

198.    Defendant failed to warn Plaintiff and the Class of the risk for injury caused by using the Microwave.  Defendant also failed to ensure that the Microwave sold was safe for its intended users.

199.    Defendant failed to warn in the Microwave's Use & Care Guide, and all other documents accompanying the Microwave, about the risk regarding the unreasonably high external surface temperature of the handle when the cooking range in is use below.

200.    As a direct and proximate result of the Defendant designing, manufacturing, selling, distributing, and otherwise putting into the stream of commerce the Microwave with the Handle Defect, and/or its failure to warn of the risks of use thereof, Plaintiff suffered physical injuries to her hand in the form of burns.

201.    Thus, Defendant is strictly liable for all injuries suffered by Plaintiff as a result of the defective design, warning, assembly, manufacture, and sale of the Microwave described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests a judgment against Defendant, as follows:

A.    For an order certifying the Classes, pursuant to Rule 23, appointing Plaintiff Rice as representative of the Classes, and designating the undersigned as Class Counsel;

B.    For compensatory damages sustained by Plaintiff Rice and all Classes;

C.    For equitable and injunctive relief for the Injunctive/Declaratory Relief Class;

D.    For payment of costs of suit herein incurred;

E.    For both pre-judgment and post-judgment interest on any amounts awarded;

F.    For punitive damages;

G.    For payment of reasonable attorneys' fees, expert fees, and expenses, as may be allowable under applicable law;

H.    For compensatory and punitive damages payable to Plaintiff Rice individually for the personal injuries caused by the Handle Defect of Defendant's Microwave; and

I.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Rice, individually and on behalf of the Class, demands a trial by jury as to all issues so triable.

DATE:  February 18, 2015

BY:   S/ JOSEPH G. PRICE
Joseph G. Price, Esquire (PA ID #32309)

s/Sean P. McDonough
Sean P. McDonough, Esquire (PA ID #47428)

s/Paul T. Oven
Paul T. Oven, Esquire (PA ID #77106)
**DOUGHERTY LEVENTHAL & PRICE, LLP**
75 Glenmaura National Blvd.
Moosic, PA 18507
Telephone: 570-347-1011
Email: JPrice@dlplaw.com
       SMcDonough@dlplaw.com
       Ptoven@dlplaw.com

Simon B. Paris
Patrick Howard (PA ID #88572)
Charles J. Kocher (PA ID #93141)
**SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C**.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 496-8282
Fax: (215) 496-0999
E-mail:  sparis@smbb.com
E-mail:  phoward@smbb.com
E-mail:  ckocher@smbb.com

Daniel E. Gustafson
Jason S. Kilene
Sara J. Payne
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN  55402
Telephone: (612) 333-8844
Fax: (612) 339-6622
E-mail:  dgustafson@gustafsongluek.com
E-mail:  jkilene@gustafsongluek.com
E-mail:  spayne@gustafsongluek.com

**Attorneys for Plaintiff and Proposed Classes**