IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELAINE RICE, Individually and on      :
behalf of others similarly situated   :
                                      :
         Plaintiff,                   :     Case No. 4:15-cv-00371
                                      :
    v.                                :
                                      :
ELECTROLUX HOME                       :     (Judge Brann)
PRODUCTS, INC.                        :
                                      :
         Defendant.                   :

**<u>MEMORANDUM</u>**
July 28, 2015

Defendant Electrolux Home Products, Inc. ("Electrolux") has filed a Partial Motion to dismiss Plaintiff Elaine Rice's Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, (ECF No. 10), as well as a Motion to strike the putative "other states" subclass from the Complaint pursuant to Federal Rule of Civil Procedure Rule 12(f).  (ECF No. 8).

This Court retains jurisdiction pursuant to 28 U.S.C. § 1332; consequently, Pennsylvania substantive law applies to Ms. Rice's state law claims.  <u>E.g.</u>, <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 91-92 (1938).  For the reasons discussed below, Electrolux's Motion to strike will be granted, while the Motion to dismiss is granted in part and denied in part.

1

# I. BACKGROUND[1]

For nearly one-hundred years, Electrolux has designed, manufactured, assembled, and sold a wide range of home appliances.  (ECF No. 1, ¶ 18).  During that time, Electrolux has become a global leader in home appliances, selling more than fifty million products in over one-hundred fifty counties every year.  Id. Among the home appliances that Electrolux manufactures and sells are microwave ovens which Electrolux sells on its website and through third party retailers, including Lowe's Home Improvement ("Lowe's").  Id. at ¶ 22.

Among the microwave ovens sold by Electrolux are various versions of a stainless steel, over-the-range microwave (the "Microwaves").  Id. at ¶ 23.  These Microwaves are designed to be installed on a vertical wall directly above the cooking surface of a stovetop.  Id. at ¶ 2.  Ms. Rice purchased one version of the Microwave, model number FGMV174KFC.  Id. at ¶ 10.  Each Microwave features a stainless steel handle, which as of December 4, 2014, featured part number 5304471830.  Id. at ¶ 3.

These Microwaves contain a serious defect due to the stainless steel handle; when installed at the recommended height, the Microwave handle absorbs heat and can reach temperatures exceeding 168 degrees Fahrenheit.  Id.  When tests were conducted on Ms. Rice's Microwave, the handle temperature exceeded 168

---

[1] As discussed *infra*, the allegations presented in Ms. Rice's complaint are taken as true, and all inferences are construed in the light most favorable to Ms. Rice.

degrees Fahrenheit in the time it took to bring water to a boil. Id. at ¶ 4. Skin

contact with metallic surfaces which exceed temperatures of 154 degrees

Fahrenheit causes burns resulting in irreversible injury. Id. at ¶ 28. Such injuries

are preventable through the use of proper insulation or other protective measures.

Id. at ¶ 29.

Ms. Rice purchased her Microwave from Lowe's on October 13, 2013 for

$269.10, and paid an additional $180 to have the Microwave professionally

installed in her home in accordance with the Installation Instructions provided by

Electrolux.[2] Id. at ¶¶ 31-32. At some point thereafter, Ms. Rice was cooking on

her stovetop and reached for the Microwave handle to open the door. Id. at ¶ 35.

The temperature of the handle had reached an "exceedingly high" temperature,

resulting in burns to Ms. Rice's hand. Id. at ¶ 36.

Ms. Rice contacted Electrolux's customer service regarding the injury. Id. at

¶ 37. In response, Electrolux arranged for a service representative from Baker

Appliance Repair, LLC ("Baker Appliance") to inspect Ms. Rice's Microwave. Id.

at ¶ 38. After inspecting the Microwave, the Baker Appliance worker informed

Ms. Rice that her Microwave had been installed too close to the surface of her

stovetop. Id. at ¶ 39. Despite the Installation Instructions calling for the

---

[2] The Microwave is covered by a one-year, limited warranty pursuant to which "Electrolux will pay all costs for repairing or replacing any parts of [the Microwave] that prove to be defective in materials or workmanship when [the Microwave] is installed, used and maintained in accordance with the provided instructions." (ECF No. 1, ¶ 50). Ms. Rice relied on this warranty. Id. at ¶ 53.

Microwave *top* to be installed thirty inches from the stovetop surface, as Ms. Rice

has done, the Baker Appliance worker asserted that the Microwave *base* must be

thirty inches from the stovetop surface.  Id. at ¶ 39-40.

On January 21, 2014, Ms. Rice sent an e-mail to a customer service

Supervisor at Electrolux's corporate office, informing them of the alleged defect

and requesting a refund or replacement of the Microwave.  Id. at ¶ 41.  On January

22, 2014, Ms. Rice was informed that Electrolux would not offer her a refund or

replacement.  Id. at ¶ 42.  Electrolux further informed Ms. Rice that the Baker

Appliance worker "was correct concerning the dimensions necessary for proper

installation" of the Microwave.  Id.  On February 28, 2014, Electrolux mailed a

letter to Ms. Rice denying her claim.  Id. at ¶ 43.

On February 18, 2015, Ms. Rice filed a complaint with this Court, alleging

eight counts: (1) declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*; (2) strict

liability for a design defect and failure to warn; (3) negligent failure to warn; (4)

violation of the Magnuson-Moss Consumer Products Warranties Act ("Warranties

Act"); (5) breach of implied warranty of merchantability; (6) breach of express

warranty; (7) unjust enrichment; and (8) strict liability for a design defect and

failure to warn, resulting in personal injuries.  (ECF No. 1).  In addition to bringing

personal claims, Ms. Rice asserts a class action for three putative classes.  Id.

Under Federal Rule of Civil Procedure Rule 23(b)(2) and (3), Ms. Rice asserts two

putative State Sub-Classes, defined as:

> Pennsylvania: All persons in the Commonwealth of Pennsylvania who
> own a Microwave with a stainless steel handle (Part # 5304471830)
> purchased during the four (4) years preceding the filing of this action;

> and/or,

> Other States: All persons in the States of Alaska, Arkansas,
> California, Colorado, Delaware, District of Columbia, Hawaii,
> Indiana, Kansas, Louisiana, Maine, Massachusetts, Maryland,
> Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska,
> Nevada, New Hampshire, New Jersey, New Mexico, New York,
> North Dakota, Oklahoma, Rhode Island, South Carolina, South
> Dakota, Texas, Utah, Virginia, Washington, West Virginia, and
> Wyoming who own a Microwave with a stainless steel handle (Part #
> 5304471830) purchased during the four (4) years preceding the filing
> of this action.

> Excluded from the State Sub-Classes are officers, representatives, or
> agents of Defendant, as well as the judge presiding over this case and
> his or her immediate family members. In addition, notwithstanding
> the foregoing, all claims for personal injury and wrongful death are
> excluded from the Class.

Id.

## II. DISCUSSION

### A.   Motion to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court must view all allegations stated in the complaint as true

and construe all inferences in the light most favorable to plaintiff.  Hishon v. King

& Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d

Cir. 1993).  However, "the tenet that a court must accept as true all of the [factual]

allegations contained in the complaint is inapplicable to legal conclusions."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id.  At the motion to dismiss stage, the

court considers whether the plaintiff is entitled to offer evidence to support its

allegations.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the

allegations in the amended complaint, the plaintiff has not pled enough facts to

state a claim to relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550

U.S. 544, 561 (2007).  "Determining whether a complaint states a plausible claim

for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 663-64.

Rule 8 of the Federal Rules of Civil Procedure "requires only a 'short and

plain statement of the claim showing that the pleader is entitled to relief,' in order

to 'give the defendant fair notice of what the . . . claim is and the grounds on which

it rests[.]'"  Twombly, 550 U.S. at 554 (quoting Conley v. Gibson, 355 U.S. 41, 47

(1957)).  However, even under this lower notice pleading standard, a plaintiff must

make a factual showing of entitlement to relief by alleging sufficient facts that,

when taken as true, suggest the required elements of a particular legal theory.  See

Twombly, 550 U.S. at 561.  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged –

but it has not "shown" – "that the pleader is entitled to relief."  Iqbal, 556 U.S. at

679 (quoting Fed. R. Civ. P. 8(a)).  A court may dismiss a claim under Rule

12(b)(6) where there is a "dispositive issue of law."  Neitzke v. Williams, 490 U.S.

319, 326 (1989).

### 1. *Strict Liability and Negligent Failure to Warn*

Electrolux argues that Counts Two and Three of Ms. Rice's Complaint,

alleging strict liability and negligent failure to warn, respectively, are barred by the

economic loss doctrine.  (ECF No. 11).  Alternatively, Electrolux contends that,

even if Ms. Rice had stated a claim for non-economic damages, any claim for

purely economic damages should be dismissed.  Id.

In Pennsylvania, the economic loss doctrine "bar[s] a plaintiff from

recovering purely economic losses suffered as a result of a defendant's negligent or

otherwise tortious behavior, absent proof that the defendant's conduct caused actual

physical harm to a plaintiff or his property."  Ellenbogen v. PNC Bank, 731 A.2d

175, 188 n. 26 (Pa.Super.Ct. 1999).  "Tort product liability theories impose

responsibility on the supplier of a defective product whenever it causes personal

injury or damage to other property because this is deemed to be the best way to

allocate the risk of unsafe products and to encourage safer manufacture and

design." <u>REM Coal Co. v. Clark Equip. Co.</u>, 563 A.2d 128, 129 (Pa.Super.Ct. 1989).  Thus, "while tort recovery is barred for damage a product causes to itself, such recovery is available for damage the failing product causes to [persons or] 'other property.'" <u>2-J Corp. v. Tice</u>, 126 F.3d 539, 542 (3d Cir. 1997).

Ms. Rice argues that Counts Two and Three state claims for economic and non-economic losses, and therefore the counts should not be dismissed.  (ECF No. 16, pp. 6-7).  The Court agrees.  The plain language used throughout Counts Two and Three puts Electrolux on clear notice of claims for personal injury.  For example, one paragraph asserts that Ms. Rice "suffered a burn when her hand touched the handle of the Microwave while the cooking range was in use below." (ECF No. 1, ¶ 94).  Ms. Rice further alleged that the Microwave design "creates a risk of burns or other injuries when a consumer touches the handle."  <u>Id.</u> at ¶ 95. Because Ms. Rice has alleged personal injury in Counts Two and Three, dismissal is inappropriate.

However, the Court agrees with Electrolux's argument that, in the alternative, any claims for purely economic loss must be dismissed from these counts.  The Third Circuit has noted that "[a]s it originally developed, the economic loss doctrine provided that no cause of action could be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property."  <u>2-J Corp.</u>,

126 F.3d at 541.  Although the contours of the doctrine have expanded over time, the definition remained relatively unchanged: "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage."  Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 175 (3d Cir. 2008) (quoting Adams v. Copper Beach Townhome Communities, L.P., 816 A.2d 301, 305 (Pa.Super.Ct. 2003)) (internal quotation marks omitted).

Notably, the United States Supreme Court expanded the economic loss doctrine to provide that "tort recovery is barred for damage a product causes to itself[.]" 2-J Corp, 126 F.3d at 542 (citing E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866 (1986)).  Consequently, tort remedies are unavailable for costs of replacement for the damaged product; recovery of these costs properly rest in warranty law rather than tort law.  E. River, 476 U.S. at 872-73.  The United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted that the Pennsylvania Supreme Court will adopt the East River holding.  See, e.g., Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618–21 (3d Cir. 1995); REM Coal, 563 A.2d at 132.

This case law clarifies that, although tort actions may be pursued for economic loss that occurs as a result of personal injury or damage to "other property," a party may not recover in tort for purely economic losses that result due to damage to the product itself.  See, e.g., E. River, 476 U.S. at 872-73; Seely v.

9

White Motor Co., 63 Cal. 2d 9, 18, 403 P.2d 145, 151 (1965); Emerson G.M.

Diesel, Inc. v. Alaskan Enter., 732 F.2d 1468, 1474 (9th Cir. 1984).  Accordingly,

the Court concludes that claims in tort for both economic and non-economic losses

must be severed, with all economic losses resulting solely from damage to the

product itself being dismissed from the tort claim. [3]

This interpretation of the economic loss doctrine comports with the purposes

behind the adoption of the doctrine in Pennsylvania.  In that regard, the economic

loss doctrine acts "to place a check on limitless liability for manufacturers and

establish clear boundaries between tort and contract law."  Werwinski v. Ford

Motor Co., 286 F.3d 661, 680 (3d Cir. 2002).  The doctrine was created because

> the goals of tort theories of recovery are not implicated in a product
> malfunction case involving only economic losses. A contract action,
> on the other hand, is perfectly suited to providing an adequate remedy
> for such losses and recognizes the parties' ability to structure their
> relative liabilities and expectations regarding the product's
> performance by setting the terms of their contractual bargain.

REM Coal, 563 A.2d at 129.  This was so because tort "products liability was

developed primarily as a means by which consumers could be compensated for

*personal injury and property damage* caused by defective products."  Indus. Unif.

---

[3] Pennsylvania precedent on this matter is surprising sparse.  An exhaustive search of
Pennsylvania court cases reveals only one Court of Common Pleas decision that has explicitly
addressed this issue in any way.  See, Teledyne Technologies Inc. v. Freedom Forge Corp., No.
3398 MAYTERM 2000, 2002 WL 748898, at *14 (Pa. Com. Pl. Apr. 19, 2002) ("courts first
must define 'the product,' denying recovery for damages to the product itself, then must
determine if there is damage to 'other property' for which the economic loss doctrine would *not*
bar recovery").

Rental Co. v. Int'l Harvester Co., 317 Pa. Super. 65, 71, 463 A.2d 1085, 1089

(1983) overruled by REM Coal, 563 A.2d 128 (emphasis added).

"[W]here damage occurs to the product itself, such losses are based upon

and flow from the purchaser's loss of the benefit of his bargain and his

disappointed expectations as to the product he purchased" which is best redressed

through warranty law.  Id.  As the Pennsylvania Superior Court has noted:

> The distinction that the law has drawn between tort recovery for
> physical injuries and warranty recovery for economic loss is not
> arbitrary and does not rest on the "luck" of one plaintiff in having
> an accident causing physical injury. The distinction rests, rather, on
> an understanding of the nature of the responsibility a manufacturer
> must undertake in distributing his products. He can appropriately be
> held liable for physical injuries caused by defects by requiring his
> goods to match a standard of safety defined in terms of conditions
> that create unreasonable risks of harm. He cannot be held for the
> level of performance of his products in the consumer's business
> unless he agrees that the product was designed to meet the
> consumer's demands. A consumer should not be charged at the will
> of the manufacturer with bearing the risk of physical injury when
> he buys a product on the market. He can, however, be fairly
> charged with the risk that the product will not match his economic
> expectations unless the manufacturer agrees that it will. Even in
> actions for negligence, a manufacturer's liability is limited to
> damages for physical injuries and there is no recovery for economic
> loss alone.

REM Coal, 563 A.2d at 130 (quoting Int'l Harvester, 463 A.2d at 1088).

This reasoning evidences a clear intent to bar any tort recovery for economic

loss, instead opting to encourage recovery through readily available warranty

actions, thereby preventing overlapping claims.  Even if a different reading of the

economic loss doctrine may be plausible, this Court will "opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently." Werwinski, 286 F.3d at 680 (citing City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 421 (3d Cir. 2002); Home Valu, Inc. v. Pep Boys, 213 F.3d 960, 965 (7th Cir. 2000)).

Consequently, any claim for economic damages related to the costs to repair or replace the allegedly defective Microwaves is dismissed from the Complaint. This raises a new issue, however; when claims for such economic damages are removed from Count Two, Count Eight becomes redundant. (Compare ECF No. 1, ¶¶ 86-110 with id. at ¶¶ 178-201).[4]  Consequently, the Court will *sua sponte* exercise its authority under Rule 12(f) to strike Count Eight from the Complaint. See, Thomas v. Sandstrom, No. 1:09-CV-1557, 2009 WL 5111788, at *1 (M.D. Pa. Dec. 16, 2009) (citing Krisa v. Equitable Life Assur. Soc., 109 F.Supp.2d 316 (M.D. Pa. 2000)).

### 2. *Breach of Express Warranty*

Electrolux moves to dismiss Count Six of the Complaint, alleging breach of an express warranty, on the grounds that Ms. Rice only alleges a design defect. (ECF No. 11).  As Electrolux points out, the express warranty provided protection

---

[4] Count Two seeks damages and other declaratory relief on behalf of Ms. Rice and the putative (b)(2) class, whereas Count Eight seeks damages for Ms. Rice alone due to personal injury resulting from the defect.  Therefore, Count Two is duplicative of Count Eight, not the other way around.

only against defects in materials and workmanship.  Id. at p. 10.  Alternatively, Electrolux contends that insufficient facts have been alleged to support a claim of defects in materials or workmanship.  Id.

Without question, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty."  Cipollone v. Liggett Group, 505 U.S. 504, 526 (1992).  "Accordingly, the 'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed *by the warrantor*."  Id. (emphasis in original).  See also Rosci v. AcroMed, Inc., 669 A.2d 959, 968 (Pa.Super.Ct. 1995).  Therefore, "[t]he parties to a contract, not the state, define the substantive obligations of the contract and . . . each party's duties."  Rosci, 669 A.2d at 967 (citing Michael v. Shiley, Inc., 46 F.3d 1316, 1325 (3d Cir. 1995)).

The express warranty provided by Electrolux covered "any parts of [the Microwave] that prove to be defective in materials or workmanship[.]"  (ECF No. 1, ¶ 150).  Ms. Rice explicitly alleges in her complaint that the Microwave was "defective in material and/or workmanship."  Id. at ¶ 163.  Based on this language, Ms. Rice has sufficiently alleged a breach of the express warranty.[5]

---

[5] Most of Ms. Rice's allegations relate to a design defect, rather than a defect in materials, as they relate to Electrolux's failure to design a safe handle by either (1) using a different material, or (2) including insulation in the handle.  (ECF No. 1, ¶¶ 3, 5.  Other courts have noted that "[a] defect in material is a defect in quality . . . [a] defect in workmanship is a defect in the way some part of the machine is constructed . . . [d]esign, on the contrary, involves the overall plan of construction and operation."  Lombard Corp. v. Quality Aluminum Prods. Co., 261 F .2d 336,

Although the Complaint primarily alleges facts consistent with a design defect rather than a defect in materials, at this stage in litigation the facts are insufficiently developed to allow the Court to reach a definitive conclusion on this point.  Discovery is necessary to determine whether the defects in the Microwave go beyond a design defect and enter the ambit of a defect in materials.  For example, it is possible that Electrolux designed the handle in such a way that it would not absorb heat, but a defect in the materials used resulted in the absorption of heat.  These two competing theories, a design defect and materials defect, are likely mutually exclusive.  However, in a products liability case it is simple impossible to determine prior to the conclusion of discovery which theory will ultimately prevail.  See, Alin v. Am. Honda Motor Co., No. CIV A 08-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010); Spera v. Samsung Electronics Am., Inc., No. 2:12-CV-05412, 2014 WL 1334256, at *7 (D.N.J. Apr. 2, 2014); Morris v. BMW of N. Am., LLC, No. CIV.A. 13-4980, 2014 WL 793550, at *11 (D.N.J. Feb. 26, 2014).  Consequently, the motion to dismiss Count Six will be denied.

---

338–39 (6th Cir. 1958).  See also, Cooper v. Samsung Electronics Am., Inc., 374 F. App'x 250, 253 (3d Cir. 2010) ("the plain language of the Warranty covers only 'manufacturing defects in materials and workmanship encountered in normal . . . noncommercial use of this product' [whereas plaintiff] does not allege a manufacturing defect; indeed, he agrees his TV was *manufactured as designed*") (emphasis added); In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices, & Products, 754 F.Supp.2d 1145, 1181 (C.D.Cal. 2010) (a design defect "exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective"); Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc., 508 F. App'x 180, 184 (3d Cir. 2012); Linden v. CNH Am., LLC, 673 F.3d 829, 835 (8th Cir.2012); Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516 (7th Cir. 2003).

For the same reason, Electrolux's motion to dismiss Count Five relating to a breach of an implied warranty of merchantability is likewise denied.[6]  Furthermore, Electrolux has moved to dismiss Count Four of the Complaint, an alleged violation of the Warranties Act, on the sole ground that Ms. Rice failed to state claims of a breach of express or implied warranties.  (ECF No. 11, p. 11).  Because Ms. Rice's allegations of a breach of express and implied warranties survive, Electrolux's motion to dismiss Count Four is also denied.

### 3.  *Unjust Enrichment*

Next, Electrolux moves to dismiss Count Seven, alleging unjust enrichment, on the grounds that an express warranty forms the basis of the parties' relationship and therefore a claim for unjust enrichment may not be sustained.  (ECF No. 11, p. 12).  Specifically, Electrolux contends that "there is no dispute that a valid express warranty exists" and therefore Ms. Rice may not plead unjust enrichment in the alternative.  (ECF No. 21, pp. 12-13).

"[I]t has long been held in [Pennsylvania] that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of

---

[6] The Court notes some disagreement between the parties as to whether a claim for a breach of an implied warranty of merchantability based on a design defect is allowed under Pennsylvania law. See, (ECF No. 11, p. 10; ECF No. 16, p. 14).  However, because Ms. Rice alleges breach of an implied warranty of merchantability based on a manufacturing defect, the motion to dismiss must be denied, and the Court need not resolve the issue at this point in time.

such contracts may seem in the light of subsequent happenings.'" <u>Wilson Area Sch. Dist. v. Skepton</u>, 586 Pa. 513, 520 (2006) (quoting <u>Third Nat'l & Trust Co. of Scranton v. Lehigh Valley Coal Co.</u>, 353 Pa. 185, 44 A.2d 571, 574 (1945)).  As the Pennsylvania Supreme Court expounded, this "bright-line rule"

> has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity . . . are not entitled to the remedies available under a judicially-imposed quasi[-]contract [i.e., the parties are not entitled to restitution based upon the doctrine of unjust enrichment] because the terms of their agreement (express and implied) define their respective rights, duties, and expectations.

<u>Id.</u> (quoting <u>Curley v. Allstate Ins. Co.</u>, 289 F.Supp.2d 614, 620-21 (E.D. Pa. 2003)) (alterations in original).

The ability to recover on two fatally inconsistent theories should not be confused with the ability to plead such theories.  In that vein, the Pennsylvania Superior Court has held that parties may plead breach of contract claims as well as plead "in the alternative with a cause of action under a theory of unjust enrichment."  <u>Lugo v. Farmers Pride, Inc.</u>, 967 A.2d 963, 970 (Pa.Super.Ct. 2009).  However, "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy."  <u>Grudkowski v. Foremost Ins. Co.</u>, 556 F.App'x 165, 170 (3d Cir. 2014) (citing <u>Montanez v. HSBC Mortg. Corp. (USA)</u>, 876 F.Supp.2d 504, 515–16 (E.D. Pa. 2012); <u>Premier Payments Online, Inc. v. Payment Sys. Worldwide</u>, 848 F.Supp.2d 513, 527 (E.D. Pa. 2012)).

It is undisputed that a written, express contract did exist in this instance.  See (ECF No. 1, ¶¶ 50-60; id. at Ex. C).  Furthermore, nothing in the Complaint impugns the validity of the contract.  To be certain, Ms. Rice challenges the validity of "[a]ny contractual language contained in [Electrolux's] express warranty that attempts to limit or exclude remedies[.]"  Id. at ¶¶ 144, 168.  However, this does not call into question the validity of the contract and the warranty, but only questions the purported limits on remedies available under the contract.  Even if Ms. Rice were to prevail on this issue, the remainder of the contract would remain valid, and therefore recovery under the quasi-contractual theory of unjust enrichment is prohibited.  Consequently, Ms. Rice has failed to state a plausible claim for relief under a theory of unjust enrichment, and Count Seven of the Complaint will be dismissed.

4. *Declaratory Relief*

Under Counts One and Two, Ms. Rice has moved for declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*, alleging that the Court must settle five factual disputes: (1) whether the Microwaves are defective; (2) whether Electrolux knew or should have known of the defect; (3) whether Electrolux failed to adequately warn of the risks caused by the defect; (4) whether the express warranty covers the defective condition; and (5) whether an implied warranty provides

coverage for the defect.  (ECF No. 1, p. 20).  Electrolux seeks dismissal of these Counts on the grounds that the underlying substantive claims fail on the merits or, in the alternative, that the request for declaratory relief in entirely duplicative of Ms. Rice's substantive claims and does not satisfy the purposes of declaratory relief.  (ECF No. 11, p. 14).

Title 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  "In providing the remedy of a declaratory judgment it was the Congressional intent 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.'"  Interdynamics, Inc. v. Firma Wolf, 698 F.2d 157, 164-65 (3d Cir. 1982) (quoting Dewey & Almy Chem. Co. v. Am. Anode, Inc., 137 F.2d 68, 69–70 (3d Cir. 1943), *cert. denied*, 320 U.S. 761 (1943)).

The Third Circuit has repeatedly "emphasized that the Act should have a liberal interpretation, bearing in mind its remedial character and the legislative purpose."  Id.  In that regard, the Third Circuit had interpreted Section 2201 "as

granting to the district court the discretion whether to award declaratory relief[.]"[7]

Id. at 167 (citing Bituminous Coal Operators' Ass'n, Inc. v. Int'l Union, United

Mine Workers, 585 F.2d 586, 596 (3d Cir. 1978)).  However, before a court may

exercise this discretion, there must first be a case or controversy.  Thus, the dispute

must "be 'definite and concrete, touching the legal relations of parties having

adverse legal interests'; and . . . be 'real and substantial' and 'admi[t] of specific

relief through a decree of a conclusive character, as distinguished from an opinion

advising what the law would be upon a hypothetical state of facts.'"  MedImmune,

Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Aetna Life Ins. Co. v.

Haworth, 300 U.S. 227, 240-41 (1937)) (alterations in original).

This requirement becomes somewhat complex when addressing requests for

declaratory relief.  As the United States Supreme Court has stated:

> The difference between an abstract question and a "controversy"
> contemplated by the Declaratory Judgment Act is necessarily one of
> degree, and it would be difficult, if it would be possible, to fashion a
> precise test for determining in every case whether there is such a
> controversy. Basically, the question in each case is whether the facts
> alleged, under all the circumstances, show that there is a substantial
> controversy, between parties having adverse legal interests, of
> sufficient immediacy and reality to warrant the issuance of a
> declaratory judgment.

---

[7] In deciding whether to exercise jurisdiction, Courts should consider eight non-exhaustive
factors.  See, Reifer v. Westport Ins. Corp., 751 F.3d 129, 146 (3d Cir. 2014).  The Court will not
address its discretionary jurisdiction as Electrolux does not ask "this Court to dismiss the
declaratory judgment claims based on the Court's discretionary powers."  (ECF No. 21, pp. 13-
14).

Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

As other courts have noted, "[a] declaratory judgment is inappropriate solely to adjudicate past conduct."  Del. State Univ. Student Hous. Found. v. Ambling Mgmt. Co., 556 F. Supp. 2d 367, 374 (D. Del. 2008).  "The real value of the [declaratory judgment] . . . is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*"  Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987)) (emphasis in original).

Electrolux's first argument, that Ms. Rice's substantive claims fail and therefore there is no case or controversy present, is unavailing.  The Court has concluded that most of Ms. Rice's substantive claims survive a Rule 12(b)(6) motion, and therefore the request for declaratory relief is appropriately grounded in substantive rights.

The Court also rejects Electrolux's argument that the declaratory relief counts are duplicative of Ms. Rice's other claims.  Although the claims presented in Counts One and Two are largely the same as the remaining counts of the Complaint, the relief sought is not.  Ms. Rice's complaint seeks damages and an award of fees in Counts Three through Eight, but requests "equitable and injunctive relief" under Counts One and Two.  (ECF No. 1, p. 38).  Given the differing nature of the relief sought, at this stage in the litigation it cannot be said

20

that the counts are wholly duplicative.  This conclusion is buttressed by the fact that "federal courts have broad discretion in fashioning declaratory relief 'where it is appropriate[,]'" Pa. Nurses Ass'n v. Com. of Pa., No. CIV. 86-1586, 1991 WL 120200, at *2 (M.D. Pa. Aug. 4, 1988), and have power to grant any appropriate relief, "even if the party has not demanded such relief in his pleadings.'" Davis v. Romney, 490 F.2d 1360, 1367 (3d Cir. 1974) (quoting Fed.R.Civ.P. 54(c)). Consequently, the relief ultimately granted for Counts One and Two may vary greatly from the relief granted under the remaining Counts, and dismissal is not appropriate at this time.

Finally, contrary to Electrolux's argument, Counts One and Two are consistent with the purposes of declaratory relief.  It is true that a party "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Lattaker v. Rendell, 269 F.App'x 230, 233 (3d Cir. 2008) (quoting Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2005)).  Electrolux is also correct that the harm suffered by Ms. Rice appears to have occurred, and declaratory relief will not affect the relationship of the parties in the future. Rhodes, 488 U.S. at 4.

However, the Complaint does allege possible harm to putative class action plaintiffs in the future.  Electrolux has not recalled the allegedly defective Microwaves, and therefore individuals who have purchased the Microwaves

remain at risk of physical injury.  (ECF No. 1, ¶ 7).  Consequently, Ms. Rice has

alleged sufficient facts to support allegations that putative class members will

suffer harm in the future.  Declaratory relief is therefore warranted under the facts

alleged in the Complaint, and Count One will not be dismissed.

     5.  *Statute of Limitations*

Lastly, Electrolux challenges Ms. Rice's assertion that any statute of

limitations should be tolled due to fraudulent concealment of the Microwave

defects.  (ECF No. 11).  Ms. Rice argues that she has pled sufficient facts to

survive a motion for summary judgment.  (ECF No. 16).

Equitable tolling works to "stop the statute of limitations from running

where the claim's accrual date has already passed."  Weis–Buy Services v. Paglia,

411 F.3d 415, 424 (3d Cir. 2005).  For equitable tolling to apply under a theory of

fraudulent concealment, a plaintiff must establish that: "(1) the defendant has

actively misled the plaintiff respecting the plaintiff's cause of action; (2) which

prevented the plaintiff from recognizing the validity of his claim within the

limitations period; and (3) where the plaintiff's ignorance is not attributable to his

lack of reasonable due diligence in attempting to uncover the relevant facts."  Cetel

v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 509 (3d Cir. 2006).  See also, Molineux v.

Reed, 516 Pa. 398, 402-03 (1987).  Such claims are "subject to the heightened

pleading requirements of Fed. R. Civ. P. 9(b)."  Davis v. Grusemeyer, 996 F.2d

617, 624, n.13 (3d Cir. 1993) *overruled on other grounds as stated in* Rolo v. City

Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998).

　　The facts alleged are insufficient to establish any entitlement to equitable

tolling.  Ms. Rice has alleged that Electrolux representatives affirmatively

misrepresented the installation instructions for the Microwave, and actively misled

Ms. Rice regarding her cause of action.  However, the Complaint is devoid of any

allegation that Electrolux's actions prevented Ms. Rice "from recognizing the

validity of his claim within the limitations period[.]"  Cetel, 460 F.3d at 509.

Further, there is no dispute that Ms. Rice has filed this claim within the statute of

limitations.  Consequently, the allegations presented are insufficient to allege

fraudulent misrepresentation, and any claim for equitable tolling is dismissed.

### B.　　Motion to Strike Under Rule 12(f)

　　In addition to the Motion to dismiss, Electrolux also seeks to strike the

putative "other states" subclass from the Complaint.  (ECF No. 8).   Electrolux

argues that Ms. Rice, by definition, cannot be a representative of that subclass, and

therefore the subclass must be stricken from the Complaint.  (ECF No. 9).

　　Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court

may strike from a pleading . . . any redundant, immaterial, impertinent, or

scandalous matter."  While generally disfavored in early stages of litigation, "a

district court will strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action." Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008) (citing Thompson v. Merck & Co., Inc., Nos. C.A. 01–1004, 01–1328, 01–3011, 01–6029, 02–1196, 02–4176, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004)).

In order to have standing to sue, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011) (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977). See also, Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 360 (3d Cir. 2013) ("It is axiomatic that the lead plaintiff must fit the class definition").

Here, it is evident from the self-defined contours of the putative "other states" subclass that Ms. Rice is not a member of that class. The Complaint defines the "other states" subclass as including

> All persons in the States of Alaska, Arkansas, California, Colorado, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Louisiana, Maine, Massachusetts, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming who own a Microwave with a stainless steel handle (Part # 5304471830) purchased during the four (4) years preceding the filing of this action.

(ECF No. 1, ¶ 63).  In contrast, Ms. Rice is a resident of Pennsylvania.  Id. at ¶ 9.

Consequently, Ms. Rice is not an adequate representative of the putative "other

states" subclass.  Hayes, 725 F.3d at 360.

Ms. Rice argues that it is premature to decide the issue prior to class

certification.  (ECF No. 15, pp. 7-8).  The point is well considered, but ultimately

unavailing.  The Court recognizes that, in general, "class certification issues are . . .

'logically antecedent' to Article III concerns and themselves pertain to statutory

standing, which may properly be treated before Article III standing."  Ortiz v.

Fibreboard Corp., 527 U.S. 815, 831 (1999) (internal citations omitted).  However,

in this instance it is plain from the face of the Complaint that Ms. Rice cannot

represent the putative "other states" subclass, and it would be pointless to belabor

discovery on this issue given the deficiencies in the Complaint.  However, because

the class is self-defined, amending the Complaint would not be futile, as Ms. Rice

is able to simply redefine the subclasses.  Therefore, Electrolux's Motion to strike

will be granted, and the "other states" subclass will be stricken with leave to

amend.

## III. CONCLUSION

For the foregoing reasons, Electrolux's Motion to dismiss under Rule

12(b)(6) is granted in part and denied in part.  Any claims for economic losses

related to the costs to repair or replace the Microwaves in Counts Two and Three

are dismissed with prejudice.  Count Eight is stricken from the complaint with

prejudice.  Count Seven and any claims for equitable tolling are dismissed with

leave to amend.  Finally, Electrolux's Motion to strike the putative "other state"

subclass is granted with leave to amend.

An appropriate Order will follow.


BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge