# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELAINE RICE and ALEX KUKICH, Individually, and on behalf of all others similarly situated, | No. 4:15-CV-00371 |
| | (Judge Brann) |
| Plaintiffs, | |
| v. | |
| ELECTROLUX HOME PRODUCTS, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

### FEBRUARY 20, 2018

Before the Court for disposition is Defendant Electrolux Home Products, Inc.'s Partial Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint. For the reasons discussed below, this Motion will be granted in part and denied in part.

## I. BACKGROUND[1]

This is a class action brought by Plaintiffs Elaine Rice and Alex Kukich (collectively "Plaintiffs") to redress a defective condition in the stainless steel handles of Defendant Electrolux Home Products, Inc.'s ("Defendant") over-the-

---

[1] When considering a motion to dismiss, a court assumes the truth of all allegations made in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The material in this section, then, is taken entirely from Plaintiffs' Consolidated Amended Class Action Complaint, ECF No. 116, and is presumed true for present purposes.

range microwave ovens.² Defendant, has designed, manufactured, assembled, and sold a wide range of home appliances for nearly one-hundred years.³ Defendant sells these appliances both directly through its website, and indirectly through retailers such as Lowe's Home Improvement.⁴

As noted above, among the home appliances sold by Defendant are stainless steel, over-the-range microwave ovens (the "Microwaves").⁵ These Microwaves are, as the name suggests, designed, manufactured, and intended to be used and installed on a vertical wall directly above the cooking surface.⁶ Plaintiff Elaine Rice ("Plaintiff Rice") purchased one version of the Microwave, model number FGMV174KFC, containing a handle defect.⁷ Plaintiff Alex Kukich ("Plaintiff Kukich") is the owner of a Frigidaire Gallery Over-The-Range Microwave Oven, model number FGMV174KFC, containing a handle defect.⁸ This Microwave was purchased from retailer HHGREGG in Catonsville, Maryland in October 2013.⁹

Plaintiffs allege that the Microwaves they purchased contain a serious defect due to the stainless steel handle; when installed at the recommended height, the

---

² Consolidated Am. Class Action Compl. (ECF No. 116) ¶ 1.

³ *Id.* ¶ 24.

⁴ *Id.*

⁵ *Id.* ¶ 25.

⁶ *Id.* ¶ 2.

⁷ Consolidated Am. Class Action Compl. (ECF No. 116) ¶ 10.

⁸ *Id.* ¶ 15.

⁹ *Id.* ¶ 16.

Microwave handle absorbs heat and can reach temperatures exceeding 168 degrees Fahrenheit.[10] Indeed, when tests were conducted on Plaintiff Rice's Microwave, the handle temperature exceeded 168 degrees Fahrenheit in the time it took to bring water to a boil.[11] Pursuant to the American Society of Testing Materials' Standard for Heated System Surface Conditions that Produce Contact Burn Injuries,[12] skin contact with metallic surfaces which exceed temperatures of 140 degrees Fahrenheit causes burns resulting in irreversible injury.[13] The conduction of this excessive temperature renders the Microwaves' handles unfit to use when opening the Microwave door—its intended and ordinary purpose.[14] The Microwave handles containing this defect include at least the following part numbers: 5304471830, 5304481502, 5304471828, 5304472054, 5304472053, and 5304461371.[15]

Plaintiff Rice purchased her Microwave from Lowe's on October 13, 2013 for $269.10, and paid an additional $180 to have the Microwave professionally installed in her home in accordance with the Installation Instructions provided by

---

[10] *Id.* ¶ 2.
[11] *Id.* ¶ 6.
[12] ECF No. 116-2.
[13] Consolidated Am. Class Action Compl. (ECF No. 116) ¶ 10.
[14] *Id.* ¶ 7.
[15] *Id.* ¶ 26.

Electrolux.[16] [17] At some point thereafter, Plaintiff Rice was cooking on her stovetop and reached for the Microwave handle to open the door.[18][19] The temperature of the handle had reached an "exceedingly high" temperature, resulting in burns to Ms. Rice's hand.[20] Plaintiff Rice thereafter contacted Electrolux's customer service regarding the injury, and Defendant arranged for service representative to inspect the microwave.[21] After inspecting the Microwave, a service representative from Baker Appliance Repair, LLC informed Plaintiff Rice that her Microwave had been installed too close to the surface of her stovetop.[22] Despite the Installation Instructions calling for the Microwave *top* to be installed thirty inches from the stovetop surface, as Plaintiff Rice had done, the Baker Appliance worker asserted that the Microwave *base* must be thirty inches from the stovetop surface.[23]

On February 18, 2015, Ms. Rice filed a complaint with this Court, alleging eight counts: (1) declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*; (2) strict liability for a design defect and failure to warn; (3) negligent failure to warn; (4)

---

[16] *Id.* ¶¶ 38–39.

[17] 

[18] *Id.* ¶ 40.

[19] Plaintiff Kukich alleges no such personal injury.

[20] Consolidated Am. Class Action Compl. (ECF No. 116) ¶ 40.

[21] *Id.* ¶¶ 41–42.

[22] *Id.* ¶ 43.

[23] *Id.* ¶¶ 43–44.

violation of the Magnuson-Moss Consumer Products Warranties Act; (5) breach of implied warranty of merchantability; (6) breach of express warranty; (7) unjust enrichment; and (8) strict liability for a design defect and failure to warn, resulting in personal injuries.[24] In addition to bringing personal claims, Ms. Rice asserts a class action for three putative classes.[25] By Memorandum Opinion and Order dated July 28, 2015, I (1) dismissed any claims for economic loss related to the cost to repair or replace the Microwaves in tort counts two and three, (2) struck count 8 for strict liability for a design defect and failure to warn resulting in personal injuries, and putative "other state" subclass, and (3) dismissed count seven for unjust enrichment and any claim for equitable tolling.[26] The parties thereafter engaged in discovery[27] noted by the Court's resolution of a discovery dispute[28] and its satisfaction of existing subject matter jurisdiction.[29]

On January 24, 2017, the United States District Court for the District of Maryland granted Defendant's motion to transfer to this forum an action initiated by Plaintiff Kukich.[30] The parties thereafter stipulated to the consolidation of that

---

[24] ECF No. 1.

[25] *Id.*

[26] ECF No. 24.

[27] ECF No. 29, 83, & 85.

[28] ECF Nos. 80 & 81.

[29] ECF Nos. 106 & 107.

[30] ECF No. 115 ¶ 7.

action with the present case initiated by Plaintiff Rice, and the filing of a Consolidated Amended Class Action Complaint.[31] Plaintiffs filed the operative Consolidated Amended Class Action Complaint on March 24, 2017.[32] Defendant filed a Partial Motion to Dismiss on April 14, 2017 which, following briefing, is now ripe for disposition.[33]

## II. DISCUSSION

### A. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief may be granted,[34] a court assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party;[35] the court does not, however, assume the truth of any of the complaint's legal conclusions.[36] If a complaint's factual allegations, so treated, state a claim that is plausible—*i.e.*, if they allow the court to infer the defendant's liability—the motion is denied; if they fail to do so, the motion is granted.[37]

---

[31] *See generally* ECF No. 115.

[32] ECF No. 116.

[33] ECF Nos. 117, 118, 119, & 120.

[34] Federal Rule of Civil Procedure 12(b)(6).

[35] *Phillips v. County Of Allegheny*, 515 F.3d 224, 228 (3rd Cir. 2008).

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

[37] *Id.*

## B. Analysis

### i. Whether the Consolidated Amended Complaint Improperly Expands the Putative Class

Defendant Electrolux first moves to strike the class definitions included within Plaintiffs' Consolidated Amended Class Action Complaint. Defendant avers that such an action is warranted because this Amended Complaint impermissibly expanded the putative class definitions without either opposing parties' consent or leave of Court.[38] Plaintiffs, in turn, argue that the class definitions within the March 24, 2017 Complaint were not expanded, and, even if they were, such expansion was done with both Court leave and opposing party consent.[39] Plaintiffs base this argument on the Court-approved February 10, 2017 Stipulation in which the Court both consolidated the Rice and Kukich actions, and granted leave to file an amended complaint.[40]

Here, I have compared the putative class definitions contained within the Consolidated Amended Class Action Complaint with those of both the original Rice and Kukich Complaints.[41] In these documents, the putative classes are defined as such:

---

[38] Def.'s Br. in Supp. of Partial Mot. to Dismiss (ECF No. 118), at 10–17.
[39] Pls.' Br. in Opp. To Def.'s Partial Mot. to Dismiss (ECF No. 119), at 3–12.
[40] *Id.*
[41] *See* ECF Nos. 1 & 116; Civil Docket No. 4:17-cv-00149, ECF No. 1.

> Rice Complaint: All individuals "who own a Microwave with a stainless steel handle (Part # 5304471830)."[42]
>
> Kukich Complaint: All individuals "who own a Microwave with a 400-Grade Stainless Steel Handle."[43]
>
> CAC: All individuals "who own a Microwave with a Handle Defect," where "Handle Defect" is defined to occur in Microwaves with "stainless steel handle[s]."[44]

Given these definitions, I am in agreement with Defendant that the putative class definitions have expanded within the successive pleadings. The question remains therefore whether this expansion occurred with either the opposing party's consent or leave of Court. I find that it occurred with Court leave.

First, I am in agreement with Plaintiffs that the plain language of Stipulation entered into between the parties, and adopted by the Court, provided for the filing of an amended complaint consolidating the *Rice* and *Kukich* Actions.[45] The putative class definition within the Consolidated Amended Class Action Complaint was therefore made with leave of Court under Federal Rule of Civil Procedure 15(a)(2), and is a natural, but perhaps overbroad, consequence of that consolidation. Second, I note that, despite the vigorous argument of the parties, the putative class definition contained within the Consolidated Amended Class Action

---

[42] *See* ECF No. 1 ¶¶ 62–63.

[43] *See* Civil Docket No. 4:17-cv-00149, ECF No. 1 ¶¶ 44–45.

[44] *See* ECF No. 116 ¶¶ 2, 66–67.

[45] *See* Stipulation Modifying Case Management Deadlines (ECF No. 114) ¶ 8b. See also ECF No. 115 (containing Court approval).

Complaint are just that—putative. The Court retains the authority to limit or modify class definitions, in conjunction with the discovery material advanced, to provide the precision needed at the upcoming class certification stage.[46] I will therefore decline to strike the class definitions advanced in the Consolidated Amended Class Action Complaint.

### ii. Whether Plaintiff Kukich's Claims Are Barred by the Economic Loss Rule

Defendant Electrolux next moves for the dismissal of Plaintiff Kukich's tort claims,[47] arguing that they are barred by the economic loss rule of the State of Maryland.[48] Defendant specifically avers that Plaintiff Kukich has failed to allege personal injury, and is instead seeking damages for economic loss resulting from the microwave itself—damages not recoverable in tort.[49] Plaintiff Kukich, however, argues that he has plausibly alleged facts establishing Maryland's "public safety exception" to the economic loss doctrine.[50] Accepting Plaintiffs' factual averments as true, I am satisfied that Plaintiff Kukich has, at this preliminary stage

---

[46] *See, e.g., Chedwick v. UPMC*, 263 F.R.D. 269, 272 (W.D.Pa. 2009)(collecting cases); *Logory v. Cnty. of Susquehanna*, 277 F.R.D. 135, 139 n.1 (M.D.Pa. 2011).

[47] These tort claims are strict liability, negligent failure to warn, and negligence, as included in Counts II, III, and VII of the Consolidated Amended Class Action Complaint.

[48] Def.'s Br. in Supp. of Partial Mot. to Dismiss (ECF No. 118), at 18–19.

[49] *Id.*

[50] Pls.' Br. in Opp. To Def.'s Partial Mot. to Dismiss (ECF No. 119), at 12–17.

of litigation, made plausible that further discovery may support the application of the "public safety exception" to the economic loss doctrine.

Under Maryland law, "[l]osses related to product liability claims may be categorized generally as (1) personal injuries, (2) physical harm to tangible things, and (3) intangible economic loss resulting from the inferior quality or unfitness of the product to serve adequately the purpose for which it was purchased."[51] A plaintiff alleging only the third type of injury—economic loss—is generally barred from bringing a tort claim, and must instead proceed under a contract theory.[52] This doctrine, known as the economic loss doctrine, does not, however, always bar tort recovery of solely economic damages.[53] Rather, in *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.*, 517 A.2d 336, 345 (Md. 1986), the Maryland Court of Appeals recognized that "in limited circumstances, those in which a product defect presents a substantial, clear and unreasonable risk of death or personal injury, it is inappropriate to draw a

---

[51] *A.J. Decoster Co. v. Westinghouse Elec. Corp.,* 634 A.2d 1330, 1332 (Md. 1994)(citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*§ 101, at 707-08 (5th ed. 1984)).

[52] Id.; *see also Nat'l Labor College, Inc. v. Hillier Group Architecture N.J., Inc.,* 739 F.Supp.2d 821, 832 (D.Md. 2010) ("Under the economic loss rule, courts generally will not permit negligence claims that allege only economic loss.").

[53] *Lloyd v. General Motors Corp.*, 916 A.2d 257, 266 (Md. 2007).

distinction" between actions premised on personal injury and purely economic loss.[54]

Known as the "public safety exception," Maryland courts apply a two-part test to determine its applicability.[55] Specifically, a court must examine "the nature of the damage threatened and the probability of damage occurring to determine whether the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury."[56] "[W]hen analyzing the two elements, the critical test is not whether the plaintiff has alleged facts that meet an articulable threshold for both elements, but, rather, whether that plaintiff has met the threshold to satisfy *either* of the elements so long as, under the facts alleged, both elements are, at a minimum, present."[57] Indeed, in *Morris v. Osmose Wood Preserving,* the Maryland Court of Appeals described this test as follows:

> [I]f the possible injury is extraordinarily severe, i.e., multiple deaths, we do not require the probability of the injury occurring to be as high as we would require if the injury threatened were less severe, i.e. a broken leg or damage to property. Likewise, if the probability of the injury occurring is extraordinarily high, we do not require the injury to be as severe as we would if the probability of injury were lower.[58]

---

[54] *Id.*(citing *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.,* 517 A.2d 336, 345. (Md. 1986)).

[55] *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 632 (Md. 1995).

[56] *Id.*

[57] *Lloyd*, 916 A.2d at 269 (citing *Morris*, 667 A.2d at 631–32).

[58] *Morris*, 667 A.2d at 632.

Viewing the facts in the light most favorable to the non-moving party and with all reasonable inferences in his favor, I find that Plaintiff Kukich has alleged facts that make it plausible that further discovery may bring his tort claims for economic loss within the public safety exception. Specifically, concerning the first element—the nature of the damage threatened, Plaintiff Kukich alleges that the handle defect is unreasonably dangerous and can result in "permanent burns injuries."[59] Plaintiff specifically avers that testing of this handle revealed temperatures exceeding 168°F when the cooking range below was in use.[60] This exceeds the point of irreversible permanent skin damage, as measured at 158°F.[61]

Second, Plaintiff Kukich sufficiently alleges a high probability of serious injury. Indeed, Plaintiff indicates, within the Consolidated Amended Complaint that "the intended use of the Microwave's handle is to access the appliance for use, and is the only way to open the Microwave door."[62] Given that use of the handle is therefore unavoidable during the ordinary operation of the microwave and oven range located below, the alleged defect presents a high probability of injury, satisfying the second requirement of the public safety exception. Defendant

---

[59] Consolidated Am. Class Action Compl. (ECF No. 116) ¶ 96.
[60] *Id.* ¶ 98.
[61] *Id.* ¶ 97.
[62] *Id.* ¶ 28.

Electrolux's motion to dismiss Plaintiff Kukich's tort claims under the economic loss doctrine will therefore be denied.

### iii. Whether Plaintiff Rice's Tort-Based Claims Seeking Economic Damages Are Barred

Defendant Electrolux seeks the dismissal of Plaintiff Rice's tort-based claims to the extent they seek economic damages dismissed by the Court's July 28, 2015 Order.[63] Because these damages were previously dismissed, Defendant argues that Plaintiff Rice cannot therefore seek them on behalf of the putative class.[64] Plaintiff Rice, however, does not contest the holding of the July 28, 2015 Order dismissing damages for economic loss stemming from her tort claims, and instead argues that she is asserting such claims on behalf of the Rule 23(b)(2) declaratory relief class.[65]

In my Memorandum Opinion of July 28, 2015, I addressed the issue of whether Plaintiff Rice's strict liability and negligent failure to warn claims should be dismissed to the extent based on purely economic damages.[66] Based on my review of Pennsylvania tort law, I wrote the following:

> [T]he Court concludes that claims in tort for both economic and non-economic losses must be severed, with all economic losses resulting

---

[63] Def.'s Br. in Supp. of Partial Mot. to Dismiss (ECF No. 118), at 19–20.
[64] Def.'s Reply Br. (ECF No. 120) at 5-6.
[65] Pls.' Br. in Opp. To Def.'s Partial Mot. to Dismiss (ECF No. 119), at 17–18.
[66] ECF No. 24, at 7.

solely from damage to the product itself being dismissed from the tort claim.[67]

Here, Plaintiff Rice does not assert that she is attempted to re-litigate this holding, and the Court sees no reason to abandon it *sua sponte*. Plaintiff Rice's claims in tort for both economic and non-economic losses remain severed, with all economic losses resulting solely from damage to the product itself being dismissed. Therefore, to the extent that Plaintiff Rice attempts to assert claims in tort for such economic loss on behalf of a putative class, those claims for purely economic losses cannot proceed.[68]

### iv. Whether Plaintiff Kukich's Implied Warranty of Merchantability Claim is Barred by the Statute of Limitations

Under Maryland law, claims for breach of implied warranty are subject to a four-year statute of limitations.[69] A product manufacturer can, however, shorten that time period to not less than one year pursuant to Md. Com. Law § 2-725.[70] A claim for breach of implied warranty accrues, and the statute of limitations begins

---

[67] *Id.* at 10.

[68] *Bass v. Butler*, 116 F.App'x. 376, 385 (3d Cir. 2004)(stating that, prior to class certification, if named plaintiff's claim has been dismissed, claim cannot proceed on behalf of class); *Napoli v. HSBC Mortg. Services Inc.*, No. 12-CV-222, 2012 WL 3715936 (D.N.J. Aug. 27, 2012).

[69] Md. Com. Law Code § 2-725; *Youmans v. Douron, Inc.*, 65 A.3d 185, 188 (Md. App. 2013).

[70] Md. Code Ann., Com. Law § 2-725.

to run, when tender of delivery is made.[71] The discovery rule does not apply to extend the accrual date for breach of warranty claims.[72]

Defendant here seeks dismissal of Plaintiff Kukich's implied warranty of merchantability as barred by the statute of limitations.[73] Specifically, because Defendant limited all claims based on implied warranties to one year,[74] it argues that this implied warranty claim is barred by the statute of limitations because tender of delivery occurred no later than October 2013.[75] Plaintiff Kukich resists dismissal by arguing that, although Section 2-725(1) of the Maryland Commercial Law Code allows for the reduction of the standard four year statute of limitations to one year "by original agreement," Defendant has misapplied this provision to the case at bar.[76] Plaintiff Kukich's arguments to this end are twofold.

First, he argues that Electrolux's interpretation of this provision does not square with the text of the statute as it fails to articulate how the parties agreed to

---

[71] *Youmans*, 65 A.3d at 194; *Rassa v. Rollins Protective Servs. Co.*, 30 F. Supp. 2d 538, 542 (D. Md. 1998).

[72] Md. Com. Law Code § 2-725(2) ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.").

[73] Def.'s Br. in Supp. of Partial Mot. to Dismiss (ECF No. 118), at 21–22.

[74] ECF No. 116-4 at 27("CLAIMS BASED ON IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO ONE YEAR OR THE SHORTEST PERIOD ALLOWED BY LAW, BUT NOT LESS THAN ONE YEAR").

[75] ECF No. 116 ¶ 16.

[76] Pls.' Br. in Opp. To Def.'s Partial Mot. to Dismiss (ECF No. 119), at 20.

this reduction "by original agreement."[77]  In support of this argument, he cites the non-binding case of *Hoffman v. Daimler Trucks N. Am.*, in which the United States District Court for the Western District of Virginia rejected a reduction of the statute of limitations period under Virginia law, finding that "there is no indication that [plaintiff] was ever aware of the limitation period, let alone any agreement by [defendant] and [plaintiff] on this issue."[78]  That case, however, is premised on an errant application of this Uniform Commercial Code provision.  Indeed, in *Merricks v. Monaco Coach Corp.*—a case distinguished in *Hoffman*—the Western District of Virginia found a one-year limitation under the same Virginia statute to be validly reduced in the written warranties and thus enforceable.[79]  In support of this conclusion, the *Merricks* court cited a multitude of other courts which had held that the same or similar provisions under the laws of other states valid and enforceable.[80]

Our Court of Appeals has reached a similar conclusion.  In *Amvest v. Anderson Equipment Co.*, the Third Circuit found an identical provision in a limited warranty governed by the Pennsylvania Uniform Commercial Code to be

---

[77] *Id.*

[78] 940 F.Supp.2d 347, 358 (W.D.Va. 2013).

[79] No. 08-CV-00047, 2008 WL 5210856, at *5 (W.D.Va. Dec. 15, 2008).

[80] *Id.*(collecting cases).

valid and enforceable.[81] The Third Circuit had previously reached the same conclusion concerning an analogous Delaware Uniform Commercial Code provision.[82] Here, even assuming the veracity of facts supporting Plaintiff Kukich's implied warranty claim, I nevertheless find that he has failed to state an implied warranty of merchantability claim. Tender of delivery was made in October 2013.[83] Plaintiff Kukich's original complaint, filed on October 11, 2016, was therefore untimely, as it was nearly two years beyond the one year statute of limitations. This claim will therefore be dismissed, and amendment would be futile given this deficiency; said dismissal is therefore with prejudice.[84]

### v. Whether Plaintiff Kukich's Express Warranty Claim Should Be Dismissed for Lack of Privity

In count six of the Consolidated Amended Complaint, Plaintiff Kukich alleges a breach of express warranty claim. Defendant seeks to dismiss this claim by Plaintiff Kukich for lack of privity.[85] Because Plaintiff Kukich's lack of privity

---

[81] *Amvest Corp. v. Anderson Equipment Co.*, 358 F.App'x. 344, 348-49 (3d Cir. 2009).

[82] *Strange v. Keiper Recarco Seating, Inc.*, 281 F.3d 224 (3d Cir. 2001)(affirming the District of Delaware's finding that a one year limitation contained with the limited warranty barred warranty claim).

[83] Consolidated Am. Class Action Compl. (ECF No. 116) ¶ 16.

[84] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)("[U]nless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.").

[85] Def.'s Br. in Supp. of Partial Mot. to Dismiss (ECF No. 118), at 20–21.

with Defendant is legally determinative given his failure to allege personal injury, I will grant that request and dismiss this claim.

Under Maryland law, an express warranty exists where there is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."[86] Here, Plaintiff Kukich has alleged the existence of a limited warranty, and has in fact attached said warranty to the complaint.[87] Plaintiff Kukich also avers, however, that he purchased his microwave from HH Gregg, not from Defendant directly.[88] Because privity of contact is an essential ingredient in an express warranty action not involving personal injury,[89] the clear lack of privity between Plaintiff Kukich and Defendant is fatal to the instant express warranty claim. Dismissal of this claim, however, will be without prejudice to Plaintiff Kukich re-asserting it to the extent it can establish one of Maryland's recognized exceptions to this privity requirement.[90]

### vi. Whether Plaintiff Kukich's Claim for Violation of the Magnuson Moss Warranty Act Fails

---

[86] Md. Com. Law § 2–313(1)(a).

[87] ECF No. 116-1.

[88] Consolidated Am. Class Action Compl. (ECF No. 116) ¶ 16.

[89] *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F.Supp. 312, 322 (D.Md. 1983)(quoting *Addressograph-Multigraph Corp., v. Zink*, 329 A.2d 28, 31 (Md. 1974)).

[90] *See H & M Co., Inc. v. Technical Heat Transfer Services, Inc.*, No. 14-CV-1518, 2015 WL 1472000, at *4-5 (D.Md. Mar. 30, 2015)(dismissing an express warranty claim where no personal injury is alleged without prejudice to plaintiff refiling it to show that this case falls under one of Maryland's recognized exceptions to privity).

Defendant next moves to dismiss Plaintiff Kukich's claim under the Magnuson Moss Warranty Act, codified at 15 U.S.C. § 2301, *et seq.* Magnuson-Moss actions for breach of limited or implied warranties are subject to the same pleading requirements as state law warranty claims.[91] Having previously found that Plaintiff Kukich's implied warranty and express warranty claims fail, this claim must be similarly dismissed. Because I granted Plaintiff Kukich leave to amend his implied warranty of merchantability claim, dismissal here will also be without prejudice.

### vii. Whether Kukich's Declaratory Relief Claim Should Be Dismissed

Finally, Defendant moves to dismiss Plaintiff Kukich's claim for declaratory relief, arguing (1) that the relief sought is not consistent with the purpose of declaratory judgments, and (2) the declaratory judgment act does not create an independent cause of action.[92] Plaintiff counters both of these points, and argues instead that this Court squarely rejected both arguments in its prior Memorandum Opinion in the *Rice* action.[93] Plaintiff Kukich is correct that the Court has already

---

[91] *See Laing v. Volkswagen of Am., Inc.*, 949 A.2d 26, 37 (Md. Ct. Spec. App. 2008); *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 624(M.D.N.C. 2006).

[92] Def.'s Br. in Supp. of Partial Mot. to Dismiss (ECF No. 118), at 23–25.

[93] Pls.' Br. in Opp. To Def.'s Partial Mot. to Dismiss (ECF No. 119), at 23–25.

addressed and rejected these arguments in the Rice action. I see no need to deviate in this now consolidated action, as my reasoning there remains compelling.[94]

### III. CONCLUSION

Based on the above reasoning, Defendant Electrolux Home Products, Inc.'s Partial Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint is granted in part and denied in part. Plaintiffs, however, will be granted limited leave to amend their complaint as outlined above.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[94] In that Opinion, I found that the declaratory relief sought was appropriate because the microwaves had not yet been recalled and putative class action plaintiffs remain at risk of physical injury, and the relief requested differs from that of other substantive counts. See ECF No. 24, at 17–22.