# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELAINE RICE, individually and on
behalf of all others similarly situated,

            Plaintiff,

        v.

ELECTROLUX HOME PRODUCTS,
INC.,

            Defendant.

:      No. 4:15-cv-00371

:

:      (Judge Brann)

:

:      CLASS ACTION

:

:      UNDER SEAL

:

:

:

## SEALED MEMORANDUM[1]

### June 17, 2016

## I.  BACKGROUND

The instant motion to compel arises during the course of a products

liability suit that alleges, among other causes of action, defective design,

failure to warn, and breach of warranty claims.[2] The action percolated up

---

[1]  This Memorandum and the accompanying Order are sealed to preserve the confidentiality of the terms of Defendant's purchase agreements. Leave to distribute this Memorandum and Order to the third-party suppliers for the purpose of securing compliance is, however, expressly granted.

[2]  ECF No. 1.

when Plaintiff Elaine Rice of Havertown Township, Delaware County, Pennsylvania allegedly touched the handle of a hot microwave that sat above her stovetop.[3] Counsel for Plaintiff readily admits that Ms. Rice did not require any medical treatment after touching the hot microwave. As they continue to unwind, the facts of this case have reminded the Court of a remark by the American novelist Gertrude Stein: sometimes, "there is no there there."

Nevertheless, the parties have become mired in a dispute as to whether the Defendant must produce certain documents that reside overseas with its third-party suppliers, Sharp Appliances Thailand Ltd. and Midea Microwave and Electrical Appliances Manufacturing Co. Ltd. Because Defendant entered into purchase agreements with those suppliers that contain explicit litigation assistance provisions, the answer to the pending dispute is that the Defendant must in fact turn over those documents to Plaintiff. The issue is fully briefed and the Court has held

---

[3]    Although the Plaintiff resides in the venire of the United States District Court for the Eastern District of Pennsylvania, the matter was assigned to this Court because Plaintiff's husband, the Honorable Timothy R. Rice, is a United States Magistrate Judge for the Eastern District of Pennsylvania.

oral argument. Consistent with the following analysis, Plaintiff's motion to compel will be granted.

## II.    LAW

"It is well established that the scope and conduct of discovery are within the sound discretion of the trial court . . . and that after final judgment of the district court . . . our review is confined to determining if that discretion has been abused."[4] "To find such abuse it is usually necessary to conclude that there has been an interference with a substantial right . . . or that the discovery ruling is seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case."[5] Thus, the Third Circuit has forewarned litigants that it "will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant."[6]

---

[4]    Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983) (Aldisert, J.).

[5]    Id.

[6]    In re Fine Paper Antitrust Litig., 685 F.2d 810, 817–18 (3d Cir. 1982) (Aldisert, J.).

"Discovery need not be perfect, but discovery must be fair."[7] "The responses sought must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party."[8] "[T]he scope of [ ] discovery is not without limits."[9] As such, "[d]iscovery should be tailored to the issues involved in the particular case."[10] As Federal Rule of Civil Procedure 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[7] Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 333 (E.D. Pa. 2012) (Baylson, J.).

[8] Hicks v. Arthur, 159 F.R.D. 468, 470 (E.D. Pa. 1995) (Joyner, J.).

[9] Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996).

[10] Id.

"To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings."[11] In ascertaining which materials are discoverable and which are not, a district court must distinguish between requests that "appear[ ] reasonably calculated to lead to the discovery of admissible evidence," and demands that are "overly broad and unduly burdensome."[12] "[T]he discovery rules are meant to be construed quite liberally so as to permit the discovery of any information which is relevant and is reasonably calculated to lead to the discovery of admissible evidence."[13] "As an initial matter, therefore, all relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible."[14]

---

[11]   Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014).

[12]   Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 191 (D.N.J. 2010); Miller v. Hygrade Food Products Corp., 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000).

[13]   Fid. Fed. Sav. & Loan Ass'n v. Felicetti, 148 F.R.D. 532, 534 (E.D. Pa. 1993).

[14]   Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

Federal Rule of Civil Procedure 37(a)(3)(B) states that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." "In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent."[15] "The party seeking the discovery has the burden of clearly showing the relevancy of the information sought."[16]

## III.   ANALYSIS

A.   **The clear text of the purchase agreements that Defendant executed with its third-party suppliers grant Defendant the requisite quantum of "control" contemplated by Federal Rule of Civil Procedure 34.**

Federal Rule of Civil Procedure 34(a)(1), with the Court's emphasis added, provides in pertinent part that:

> A party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: any designated documents or electronically stored information . . . or any designated tangible things.

---

[15]  Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995) (Cowen, J.) (citing Fed. R. Civ. P. 37(a)(1)).

[16]  Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000).

Thus, "[t]he test for the production of documents is control, not location."[17] Applying that rule, the dispositive issue on this motion is whether Defendant "controls" the requested discovery, despite that discovery being located with third-party suppliers overseas. "The concept of 'control' has been construed broadly."[18] Specifically, "[i]f the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party."[19] As then Chief Judge Anthony J. Scirica,

---

[17] Matter of Marc Rich & Co., A.G., 707 F.2d 663, 667 (2d Cir. 1983).

[18] In re Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177, 180 (S.D.N.Y. 2006).

[19] Riddell Sports Inc. v. Brooks, 158 F.R.D. 555, 558 (S.D.N.Y. 1994). See also Ice Corp. v. Hamilton Sundstrand Corp., 245 F.R.D. 513, 517 (D. Kan. 2007) (internal citations omitted):

> For the moving party to demonstrate control may prove difficult because the discovery sought is in the actual possession of a party other than the party to whom the request is addressed. That said, it is not unusual for documents in the possession of a third party, closely connected to the litigation, to be subject to a Rule 34 request. Without an expanded scope of production, a third party with a significant interest in the litigation could stymie the rules of discovery to the disadvantage of the party seeking production and the court.

writing for the United States Court of Appeals for the Third Circuit in

Mercy Catholic Medical Center v. Thompson explained, "so long as the

party has the legal right or ability to obtain the documents from another

source upon demand, that party is deemed to have control."[20]

In, Societe Internationale Pour Participations Industrielles Et

Commerciales, S. A. v. Rogers, the Supreme Court of the United States,

addressing the issue of "control" as to a corporation who asserted that it

did not have the legal right to produce sought-after documents,

recognized that the outcome to such a dispute "depends upon the

circumstances of a given case" and "is sufficiently flexible to be adapted to

the exigencies of particular litigation."[21] In that case, the Court upheld a

district court's order compelling discovery despite the compelled

company's "fear of punishment under the laws of its sovereign."[22]

---

[20]   380 F.3d 142, 160 (3d Cir. 2004) (finding adequate evidence of control in the
       subcontractor setting where the subcontractor was "employed . . . to conduct
       the audit and receive documents," and therefore, "the documents were
       accessible to the [contracting party] and within its control").

[21]   357 U.S. 197, 205–06, 78 S. Ct. 1087, 1092, 2 L. Ed. 2d 1255 (1958) (Harlan, J.).

[22]   Id. at 204.

The <u>Societe Internationale</u> Court reasoned that production was appropriate because the discovery sought "might have a vital influence upon [the] litigation" and because the compelled party "[was] in a most advantageous position to plead with" the third-party.[23] Several federal courts interpreting the <u>Societe Internationale</u> decision have confirmed that the case's "language indicates a direction to lower courts to closely examine the actual relationship between two corporations and guard against not just fraud and deceit, but also sharp practices, inequitable conduct, or other false and misleading actions whereby corporations try to hide documents or make discovery of them difficult."[24] "Certainly, this broad construction . . . is consonant with American civil process which

---

[23]  <u>Id.</u> at 205.

[24]  <u>Super Film of Am., Inc. v. UCB Films, Inc.</u>, 219 F.R.D. 649, 654 (D. Kan. 2004) (quoting <u>Uniden Am. Corp. v. Ericsson Inc.</u>, 181 F.R.D. 302, 306 (M.D.N.C. 1998)). <u>See also</u> <u>Brunswick Corp. v. Suzuki Motor Co.</u>, 96 F.R.D. 684, 686 (E.D. Wis. 1983) (explaining that the discovery rules "require[ ] that a corporation furnish such information as is available from the corporation itself or from sources under its control" and stating that "[i]f the corporation can obtain the information from sources under its control, it may not avoid answering by alleging ignorance").

puts a premium on disclosure of facts to ascertain the truth as the means of resolving disputes."[25]

The existence of a contractual right to access or otherwise require production of documents held in third-party hands is often a dispositive factor in disputes such as these. Federal courts have found that parties possessed an adequate quantum of control to compel discovery held in the possession of third parties in each of the following instances:

- In a dispute where the documents sought "relate[d] to a transaction that the defendant worked on," the third party "played a significant role in the transaction," and the defendant had "in the normal course of business obtained documents from [the third-party] related to this transaction," the United States District Court for the District of New Jersey held that "[t]he facts of this case support a finding that defendant [ ] has easy and customary access to the [third-party] documents involving this transaction, and [ ] possesses the ability to obtain such documents from [the third party] for its usual business needs. One such business need is to provide highly relevant documents in litigation."[26]

- Based upon contractual language that granted the party to a lawsuit the ability to "require[ ] the agent to produce any

---

[25] Uniden, 181 F.R.D. at 306.

[26] Camden Iron & Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 443–44 (D.N.J. 1991).

documents of any kind that relate in any way to the activities of [the third party] governed by . . . this Agreement at any reasonable time upon request," the United States District Court for the Western District of Washington held that the party had control over the requested documents.[27] Such was true even though the agreement "require[d] it to obtain permission before disclosing some [third-party] documents to outside parties," because "[t]here [was] no apparent basis for such an objection" and because "any disclosure to Plaintiffs would be subject to the parties' existing confidentiality agreement."[28]

- In a case where relevant documents were held by a third-party, the United States District Court for the District of New Jersey nevertheless found that those documents were in defendants control for the purposes of discovery because the defendant "himself would have a right to access the documents or obtain copies of them."[29]

- In a services contract context, the United States District Court for the District of Massachusetts held that where the defendant's contract with a third-party granted the defendant "the right, upon reasonable notice, to examine and copy the information," the information was discoverable.[30]

---

[27] Boucher v. First Am. Title Ins. Co., No. C10-199RAJ, 2011 WL 5299497, at *4 (W.D. Wash. Nov. 4, 2011) (internal quotation marks omitted).

[28] Id.

[29] Andrews v. Holloway, 256 F.R.D. 136, 145 n.13 (D.N.J. 2009).

[30] Rosie D. v. Romney, 256 F. Supp. 2d 115, 119 (D. Mass. 2003).

- In the subcontractor setting, where the subcontractor was "employed . . . to conduct the audit and receive documents," and thereby agreed to make available pertinent files "at all reasonable times, for review and obtaining any necessary information," the Third Circuit held that the "the documents were accessible to the [contracting party] and within its control."[31]

- In the services contract setting, the United States District Court for the District of New Jersey held that the pertinent language from defendant's agreements "plainly indicat[ed] that it ha[d] control over and access to its agents' closing files" and "had the requisite control over requested documents," where the underlying contractual provisions included that the third-party must "[m]aintain and carefully preserve all records . . . [and] [p]ermit [the defendant] to examine, audit and copy all financial information and records upon reasonable prior notice."[32] The court wrote that "[i]t logically follows that a litigating party has control of documents if a contractual obligation requires a non-party to provide requested documents to the litigating party upon demand."[33]

In light of the foregoing decisions, the text of Defendant's purchase

agreements with its third-party suppliers in this matter grants it adequate

---

[31]  Mercy Catholic Medical Center, 380 F.3d at 160.

[32]  Haskins v. First Am. Title Ins. Co., No. CIV. 10-5044 RMB/JS, 2012 WL 5183908, at *2 (D.N.J. Oct. 18, 2012) (Schneider, J.).

[33]  Id. at *1.

"control" over the requested discovery. ███████████████████

███████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████ ███████ ██ ██ ███████ ████ ██ ██████
██████ ██ ███ ████ ████ ██ ███ ██ ████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████

---

[34]   ECF No. 45 Ex. 3 at 8 ████

[35]   Id. at 3 ████

[36]   Id. at 12 ████

As a straightforward matter of contractual interpretation, I would conclude that these provisions afford Defendant sweeping rights to demand cooperation and discovery productions from its suppliers. The language in ███████ clearly requires the suppliers to take affirmative actions to assist Defendant in discovery and to meet its requests. The language explains that the supplier "shall": "cooperate," "provide," and "take all steps necessary."

As to the instant request, the third-party suppliers ███████████████ ████████████████████████████████████████████ ███████████████████████████ This cooperation is triggered simply by Defendant's ████████[37] Those are the rights that the Defendant bargained for when it executed the purchase agreements. It cannot now renege on those rights in a manner orchestrated to avoid fair discovery.

---

[37] See <u>Sedona Corp. v. Open Sols., Inc.,</u> 249 F.R.D. 19, 22 (D. Conn. 2008) ("The defendant is reminded that it has an obligation to produce responsive documents that are in the possession of R Systems by way of its contract with R Systems, which grants it . . . the ability to obtain these materials <u>upon request</u>.") (emphasis added).

Contract interpretation is an "attempt to ascertain the intent of the parties and give it effect," and "[w]hen the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement."[38] When determining whether the language of an agreement is clear or ambiguous, the Court assumes that the parties intend "all provisions in the agreement [to] be construed together and . . . given effect."[39] The "focus . . . is upon the terms of the agreement as <u>manifestly expressed</u>, rather than as, perhaps, silently intended."[40]

Accordingly, the Court assumes generally that the parties have given words their "commonly accepted and plain meaning," but also recognizes "that every agreement is made and to be construed with due regard to the known characteristics of the business to which it relates . . .

---

[38] <u>LJL Transp., Inc. v. Pilot Air Freight Corp.</u>, 599 Pa. 546, 962 A.2d 639, 647 (2009).

[39] <u>Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.</u>, 588 Pa. 470, 905 A.2d 462, 469 (2006).

[40] <u>Steuart v. McChesney</u>, 498 Pa. 45, 444 A.2d 659, 661 (1982).

and hence the language used in a contract will be construed according to its purport in the particular business, although this results in an entirely different conclusion from what would have been reached had the usual meaning been ascribed to those words."[41]

Interpretation is not concerned with the parties' "post hoc judgment[s] . . . as to what should have been," and the Court will not "rely upon a strained contrivancy" to establish ambiguity.[42] "The Court, rather, seeks to be faithful to the meaning that the parties—given their positions at the time of contracting—would have given their words <u>ex ante</u>."[43] "Thus, when the terms of a voluntary contract are clear and unambiguous, as here, the contracting parties are bound by those terms, and a court is

---

[41]  <u>Franklin Sugar Ref. Co. v. Howell</u>, 274 Pa. 190, 118 A. 109, 110 (1922).

[42]  <u>Steuart</u>, 444 A.2d at 663.

[43]  <u>Roe v. Chief Expl. & Dev. LLC</u>, No. 4:11-CV-00579, 2013 WL 4083326, at *5 (M.D. Pa. Aug. 13, 2013).

powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties."[44]

Applying these principles to the contractual language presently before the Court, the unambiguous intent animating the purchase agreements, as evidenced by their clear text, is that the third-party suppliers agreed to "cooperate" with discovery when Defendant came asking for their input. The plain English definitions of "cooperate" include "to work together: to work with another person or group to do something"; "to be helpful by doing what someone asks or tells you to do"; and "to act in a way that makes something possible or likely: to produce the right conditions for something to happen."[45]

This means that the third-party suppliers must produce the sought-after discovery when Defendant requests it, and conversely, that when Plaintiff requests it, Defendant must then produce it to her. To the extent

---

[44] Emergency Associates of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1003 (Fla. Dist. Ct. App. 1995). See also Camp Ne'er Too Late, LP v. SWEPI, LP, No. 4:14-CV-01715, 2016 WL 2594186, at *18 (M.D. Pa. May 5, 2016).

[45] http://www.merriam-webster.com/dictionary/cooperate.

that Defendant and the third-party suppliers somehow sought to evade discovery through their business arrangements, the plain language of their agreements forbids it.

Equally important, in the contractual setting, one party's right is another's obligation. That is why legal practitioners so often explain that in any good contract, both parties give some things up, but get some things in return. Accordingly, Defendant's third-party suppliers are on notice that when this Court holds that the pertinent discovery provisions of the purchase agreements grant Defendant the right to obtain that discovery, it is simultaneously holding that, by those same words, the third-party suppliers have obligated themselves to produce the information and otherwise comply with Defendant's requests. Necessarily, should the third-party suppliers resist such production, this Court would find it quite straightforward to hold, in a breach of contract suit between Defendant and its suppliers, that failure to abide by ███ of their own purchase agreements rendered the third-party suppliers in dereliction of their contractual duties.

Defendant also contends that it would be more appropriate for Plaintiff to conduct its third-party discovery through the procedures provided for by the Hague Convention. That argument was evaluated and squarely rejected by the United States District Court for the Southern District of New York of <u>In re Flag Telecom Holdings, Ltd. Securities Litigation</u>.[46] In that case, the court considered an argument whereby "defendants insist[ed] that if plaintiffs wish to seek discovery [located abroad] they must do so through the Hague Convention."[47]

As the court explained, "[t]he discovery procedures provided by the Hague Convention, however, are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure."[48] Rather, "[w]hen a party seeks to discover documents or things located outside the United States from a foreign party over whom the court has personal jurisdiction,

---

[46]   236 F.R.D. 177, 182 (S.D.N.Y. 2006).

[47]   <u>Id.</u> at 182.

[48]   <u>Id.</u>

the party seeking production may employ Rule 34 without first resorting to the Hague Convention."[49] "Indeed," the court wrote, "a discovery demand is proper under Rule 34 when it is served on a party to the action for documents within their custody or control regardless of where the documents are located."[50]

The court observed that "[t]he documents are subject to discovery pursuant to Rule 34 because [one of the individual defendants] is a party who has control over the corporation's documents irrespective of their location."[51] "Therefore, [that defendant] may be compelled to produce the documents under Rule 34 and plaintiffs are not required to proceed under the Hague Convention."[52] In that manner, the <u>Flag Telecom Holdings</u> decision stands for the proposition that a finding of control preempts any resort to the Hague Convention.

---

[49] <u>Id.</u>

[50] <u>Id.</u>

[51] <u>Id.</u>

[52] <u>Id.</u>

Defendant here furthered a similar argument regarding counsel for Plaintiff's failure to resort to third-party subpoenas and related third-party discovery tools. However, my view of that argument aligns with that set forth in a recent decision before the United States District Court for the District of Kansas. There, the court explained that:

> The Court does not agree with Defendants' argument that [plaintiff] cannot file a motion to compel Defendants to produce documents pertaining to a non-party pursuant to Fed. R. Civ. P. 34, until [plaintiff] has attempted to obtain those documents by means of a subpoena to the non-party under Fed. R. Civ. P. 45. Where [plaintiff] has some evidence that would indicate that a party has "control" over documents of a non-party, even though the non-party has actual possession of the documents, [plaintiff] can proceed under Rule 34 if it can meet the burden of proving that the Defendants do have the requisite "control" of the documents.[53]

Accordingly, having determined that the clear text of Defendant's purchase agreements grants Defendant an adequate quantum of control, as contemplated by Federal Rule of Civil Procedure 34, over the requested discovery possessed by the third-party suppliers, I will compel the

---

[53] <u>Ice Corp. v. Hamilton Sundstrand Corp.</u>, 245 F.R.D. 513, 516 (D. Kan. 2007) (quoting <u>Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.</u>, No. 05-2164 MLBDWB, 2007 WL 950282, at *17 (D. Kan. Mar. 26, 2007)).

Defendant to turn over to Plaintiff all requested discovery that Plaintiff has

sought in her motion.[54]

    **B.    Defendant enjoys the requisite quantum of "control" contemplated by Rule 34 because it has previously sought to enforce its contractual right to cooperation of the third-party suppliers with regard to this litigation.**

In support of its motion to compel, Plaintiff also submits the

following letter, which counsel for Defendant directed to one of its third-

party suppliers after this discovery dispute arose:



---

[54] Because Rules 33 and 34 are "equally inclusive in their scope," Defendant's obligation to respond to Plaintiff's interrogatories is the same as those governing its obligation to respond to her document requests. See Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 513 (4th Cir. 1977) (explaining that "'availability' and 'control' are both words of art . . . used to express the same thought") (third internal quotation marks omitted). See also Costa v. Kerzner Int'l Resorts, Inc., 277 F.R.D. 468, 471 (S.D. Fla. 2011) ("Furthermore, as with Rule 34, a party must provide information in response to a Rule 33 interrogatory if such information is under its control."). Accordingly, the analysis and outcome relating to document production set forth in this decision apply with equal force to Plaintiff's requests for interrogatories.



In a subsequent letter to one of the suppliers, counsel for Defendant wrote:



Were the text of the disputed purchase agreements unclear, and they are not, I would nevertheless have arrived at the same outcome for the second, independent reason that Defendant clearly intended and interprets the pertinent litigation cooperation provisions as granting it a right to demand the suppliers' cooperation upon request. Although the Court recognizes that a certain amount of posturing on Defendant's part was perhaps necessary in its communications with the suppliers, I also

---

55  ECF No. 65 Ex. 1 at 8.

56  ECF No. 74 at 2.

acknowledge that to accept Defendant's lack of control argument in light

of these communications would necessarily strain the reality of the

situation.

Because Defendant is correct in its assertions to the suppliers that

██████████████████████████████████████████ I recognize for

this subsequent reason that compelling the requested discovery is the

appropriate resolution here.

    C.    **The Court's concerns as to whether Plaintiff has adequately satisfied the minimum jurisdictional prerequisites of the Class Action Fairness Act of 2005 are held in abeyance pending additional discovery, but will be addressed by the Court at the class certification stage.**

During oral argument on Plaintiff's motion to compel, the Court, as

a preliminary matter, asked several questions of counsel pertaining to

whether federal jurisdiction under the Class Action Fairness Act of 2005

(CAFA) has adequately been established. Recognizing full well the

minimalist role our Constitution contemplates for federal courts, I remain

concerned as to the ability of the claims and alleged damages advanced

herein to adequately trigger CAFA's minimal jurisdictional prerequisites.[57] Nevertheless, the Court's questioning made apparent that further factual discovery was required before the core jurisdictional question could adequately be answered.

Therefore, the Order that will accompany this Memorandum will detail the following procedure aimed at ensuring that jurisdiction is appropriate in this matter. In conjunction with its anticipated motion for class certification, counsel for Plaintiff is ordered to submit an affidavit indicating whether, in light of the completion of its fact discovery, it still avers that federal jurisdiction pursuant to CAFA is appropriate in this matter. The affidavit shall briefly set forth the facts on which counsel for Plaintiff has relied in making its jurisdictional averments and explain how those facts satisfy CAFA's minimum jurisdictional prerequisites. Counsel

---

[57] Nittany Outdoor Advert., LLC v. Coll. Twp., No. 4:12-CV-00672, 2016 WL 1393400, at *4 (M.D. Pa. Apr. 8, 2016) ("As a constitutional matter, federal courts were conceived of to function as institutions with vast authority, but limited jurisdiction.").

for Plaintiff shall docket its affidavit as a separate docket entry so that it is properly preserved for the record.

Counsel for Defendant is permitted to file a response to counsel for Plaintiff's affidavit, but no such response is required. With the benefit of counsel for Plaintiff's affidavit, the Court will revisit the question of the appropriateness of federal jurisdiction at that time.

## IV. CONCLUSION

Consistent with the foregoing analysis, Plaintiff's motion to compel is granted as to both the requested documents and interrogatories. Counsel for the parties would do well to remember that the Court's ruling on the instant discovery dispute is necessarily separate and distinct from any determinations that I may need to make at the class certification stage. Therefore, nothing in this decision should be read as conflicting with my disillusioned impression of what have steadily revealed themselves to be the rather trivial facts that gave rise to this lawsuit.[58]

---

[58]   See, e.g., Tr. of May 12, 2016 Oral Argument at 7:21–12:02; 20:02–21:23:

THE COURT: So one thing that came to light that I was sort of running through my mind in preparation for the argument today is that, as it was explained, and I'm not holding you to this, Mr. Paris, that Ms. Rice was not severely injured as a result of touching this microwave handle. I don't want to diminish what happened to her, because I don't frankly know what happened to her. What I got out of it was she had not been hospitalized. Okay. But she has also really not sought any medical treatment for it.

. . .

MR. PARIS: Now, when you look to damages that Ms. Rice has sustained, those damages stem from the purchase of a defective product. Those damages stem from—this handle poses a serious threat of harm. The fact that she didn't seek medical treatment or go to the hospital is truly immaterial to the claims at issue in this case. She suffered a contact burn. Is that worth $75,000? No. I would agree it is, in all likelihood, not worth $75,000. But the fact that she sustained a personal injury, sustains damage warrants the sustaining of that claim.

. . .

MR. PARIS: So what are we going to do? Are we going to sit around and wait until someone does get burned because, like your Mr. Fassett? Because of the temperature of that raised 170 plus degrees, skin contact, perhaps from an elderly woman who can't pull her hand off fast enough, constitutes third-degree burns in less than a minute. You know, this product is a hazard to be out there. It is time, and it is only through this vehicle, that relief and notice is going to be brought to these people.

THE COURT: But the elderly lady, you say, who is horribly burned, if that were to occur, that hypothetical, isn't that an individual case? Isn't that a case that you would raise on an individual basis rather than as part of a class?

MR. PARIS: Yes. But a physical injury is not part of this class. Ms. Rice's physical injury claim, strict liability claim after Your Honor's motion to dismiss Order, is on an individual basis.

THE COURT: So how is the hypothetically horribly-burned elderly lady, who doesn't pull her hand off the microwave handle as quickly as she ought, how is she fundamentally different from Elaine Rice?

MR. PARIS: What the class action will allow this Court to do, through (b)(2) and through the Declaratory Judgment Act, is get those handles off the shelf so that that woman never sets foot in this courtroom. What it allows this Court to do is say that that's a defective product, recall it. What it allows this Court to do—the class action vehicle alone and through a notice program can make people aware of that concern.

. . .

THE COURT: Why am I bothered by that? I'm a United States District Judge. I'm not quality control. I'm not a government agency. Isn't that really left to them to sort those things out?

MR. PARIS: No, it's not. It's left to Your Honor to make the decision on the warranty claims and the defect that is alleged in this case.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge