## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELAINE RICE, ALEX KUKICH, ERIKA MENDOZA, JAMES HUNT, and DEAN MAURO, Individually, and on behalf of all others similarly situated, | No. 4:15-CV-00371 (Judge Brann) |
| Plaintiffs, | |
| v. | |
| ELECTROLUX HOME PRODUCTS, INC., SHARP MANUFACTURING COMPANY OF AMERICA, a division of SHARP ELECTRONICS CORPORATION; SHARP APPLIANCES THAILAND LIMITED; MIDEA AMERICA CORP.; MIDEA MICROWAVE AND ELECTRICAL APPLIANCES MANUFACTURING CO., LTD; LOWE'S HOME CENTERS, LLC; MODESTO DIRECT APPLIANCE, INC.; and ABC CORP. 1-10, | |
| Defendants. | |

## MEMORANDUM OPINION

### JANUARY 15, 2020

## I.     BACKGROUND

On October 3, 2018, Plaintiffs Elaine Rice, Alex Kukich, Erika Mendoza, James Hunt, and Dean Mauro (as well as other consumers similarly situated) filed an Amended Consolidated Class Action Complaint (ECF No. 174; the "Instant

Complaint") against seven Defendants. The Instant Complaint springs from alleged defects in the stainless-steel handles of certain microwaves that consumers install above their stove burner. According to Plaintiffs, these offending microwave handles conduct too much heat from the stoves below.

Plaintiffs Rice and Kukich bring the following claims against Defendant Electrolux Home Products, Inc. ("Electrolux").

1.  Declaratory relief under 28 U.S.C. § 2201.

2.  Strict liability under theories of a design defect and failure to warn.

3.  Negligent failure to warn.

4.  Violation of the Magnuson-Moss Consumer Products Warranties Act, 15 U.S.C. § 2301 (the "Magnuson-Moss Act").

5.  Breach of the implied warranty of merchantability.

6.  Breach of an express warranty.

7.  Negligence.

Plaintiffs Mendoza and Hunt bring the following claims against Defendants Electrolux, Midea America Corporation ("Midea America"), Midea Microwave and Electrical Appliances Manufactured Company, Limited ("Midea China"), Sharp Manufacturing Company of America ("Sharp America"), Sharp Appliances Thailand Limited ("Sharp Thailand"), Lowe's Home Centers, LLC ("Lowe's"), and Modesto Direct Appliance, Inc. ("Modesto").

1.      Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750.

2.      Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

3.      Violation of California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 (the "Song-Beverly Act").

Plaintiff Mauro brings the following claims.

1.      Against Defendants Electrolux, Midea America, Midea China, and Lowe's: violation of New York's General Business Law §§ 349 and 350.

2.      Against Defendant Lowe's: violation of the Magnuson-Moss Act.

3.      Against Defendant Lowe's: breach of the implied warranty of merchantability.

4.      Against Defendants Electrolux, Lowe's, and Midea China: unjust enrichment.

On September 9, 2019, all Defendants filed motions to dismiss the Instant Complaint. Defendants' motions are now ripe for disposition. For the reasons that follow, I resolve Defendants' motions as such:

1.      Sharp America's Motion to Dismiss, ECF No. 206, is GRANTED.

2.      Sharp Thailand's Motion to Dismiss, ECF No. 208, is GRANTED.

3.      Midea China's Motion to Dismiss, ECF No. 209, is GRANTED.

4.     Midea America's Motion to Dismiss, ECF No. 210, is GRANTED.

5.     Electrolux, Lowe's, and Modesto's Partial Motion to Dismiss, ECF

No. 211, is GRANTED IN PART AND DENIED IN PART.

## II.     DISCUSSION

### A.     Standards for a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), the Court dismisses a complaint if it lacks the "very power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "If a party asserts several objections and defenses to a complaint, including a F.R.C.P. 12(b)(1) defense for lack of subject matter jurisdiction, 'the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge.'"[1]

Additionally, "[t]he procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different" from the familiar procedure under Rule 12(b)(6).[2] "At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and

---

[1]     *Scanlin v. Soldiers & Sailors Mem'l Hosp.*, No. 4:06-CV-01915, 2007 WL 141014, at *2 (M.D. Pa. Jan. 17, 2007) (McClure, J.) *citing* 5B Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1350 at 154-55 (2004); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

[2]     *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."[3] "The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true."[4] "The factual attack, however, differs greatly, for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56."[5] "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction (its very power to hear the case) there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[6] "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[7] "Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."[8]

**B.** **Standards for a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.* (brackets added).

[7] *Id.*

[8] *Id.*

pleading"[9] and "streamlines litigation by dispensing with needless discovery and factfinding."[10] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[11] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[12]

Following the Roberts Court's "civil procedure revival,"[13] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[14] and *Ashcroft v. Iqbal*[15] tightened the standard that district courts must apply to 12(b)(6) motions.[16] These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[17]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

---

[9]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[10]  *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[11]  *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[12]  *Neitzke*, 490 U.S. at 327.

[13]  Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[14]  550 U.S. 544 (2007).

[15]  556 U.S. 662, 678 (2009).

[16]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[17]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

to relief that is plausible on its face.'"[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[20] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[21]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[22] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[23]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts

---

[18] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[19] *Iqbal*, 556 U.S. at 678.

[20] *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[21] *Twombly*, 550 U.S. at 556.

[22] *Iqbal*, 556 U.S. at 679.

[23] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

alleged in the light most favorable to [the plaintiff]."[24] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[25] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[26]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[27]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[28] Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[29] However, "[c]onsideration of materials outside the complaint

---

[24] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[25] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[26] *Iqbal*, 556 U.S. at 678.

[27] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[28] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[29] *See id.* and Fed. R. Civ. P. 12(d).

is not entirely foreclosed on a 12(b)(6) motion."[30]  It is permissible to consider the

full text of documents partially quoted in the complaint.[31]  It is also permissible to

consider documents relied upon by plaintiff in drafting the complaint and integral

to the complaint.[32]  "However, before materials outside the record may become the

basis for a dismissal, several conditions must be met."[33]  "For example, even if a

document is 'integral' to the complaint, it must be clear on the record that no

dispute exists regarding the authenticity or accuracy of the document."[34]  It must

also be clear that there exist no material disputed issues of fact regarding the

relevance of the document.[35]  In this matter, I find that these conditions have been

met, and will consequently consider Defendants' attachments.

### C.    Relevant Facts Alleged in the Instant Complaint

The facts alleged in the Instant Complaint that are relevant to my analysis in

disposing of Defendants' above motions to dismiss are as follows.  I must accept

these as true for the purposes of Defendants' motions.

---

[30]  *Faulkner,* 463 F.3d at 134.

[31]  *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos*., 75 F.3d 801, 808-09 (2d Cir. 1996).

[32]  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991).

[33]  *Faulkner*, 463 F.3d at 134.

[34]  *Id, See also  e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001).

[35]  *Faulkner*, 463 F.3d at 134.

### 1. The Microwaves and the Handle Defect

Plaintiffs have brought this class action to redress a defective condition (the "Handle Defect") in the stainless steel handles of particular over-the-range microwave ovens.[36]

Electrolux has designed, manufactured, assembled, and sold a wide range of home appliances for nearly one hundred years.[37]  Electrolux sells these appliances to consumers throughout the United States through retailers such as Lowe's and Modesto.[38]

As noted above, among the home appliances Electrolux sold are stainless steel, over-the-range microwave ovens (the "Microwaves").  The Microwaves are, as the name suggests, designed, manufactured, and intended to be used and installed on a vertical wall directly above the cooking surface.[39]

- Rice purchased one Frigidaire Gallery Over-The-Range Microwave Oven, bearing model number FGMV174KFC, containing the Handle Defect.[40]  She purchased this Microwave from a Pennsylvania Lowe's on October 13, 2013.[41]

- Kukich is the owner of a Frigidaire Gallery Over-The-Range Microwave Oven, model number FGMV174KFC, containing the Handle Defect.  He

---

[36]  Instant Complaint at ¶ 1.

[37]  *Id.* at ¶ 92.

[38]  *Id.*

[39]  *Id.* at ¶ 93.

[40]  *Id.* at ¶ 13.

[41]  *Id.* at ¶ 17.

purchased this Microwave from retailer HHGREGG in Catonsville, Maryland in October 2013.[42]

- Mendoza purchased a Frigidaire Professional Microwave Oven, model number FPMV189KFC and containing the Handle Defect, from Modesto in December 2014.[43] Sharp Thailand manufactured Mendoza's Microwave. Sharp America tested Mendoza's Microwave in its testing facility in Memphis, Tennessee.[44]

- Hunt purchased a Frigidaire Gallery Over-The-Range Microwave Oven, model number FGMV175QFA and containing the Handle Defect, from a Lowe's in November 2016.[45] Midea China manufactured Hunt's Microwave in January 2016. Midea America tested Hunt's Microwave.[46]

- Mauro owns a Frigidaire Gallery Over-The-Range Microwave Oven, model number FGMV175QFA, containing the Handle Defect. He purchased this Microwave from a Lowe's in Cicero, New York in December 2014.[47]

All five Plaintiffs here allege that the Microwaves they purchased contain the Handle Defect. The Handle Defect operates as follows: when installed at the recommended height, the Microwave handles absorb heat and can reach temperatures exceeding 168 degrees Fahrenheit. Indeed, when tests were conducted on Rice's Microwave, the handle temperature exceeded 168 degrees Fahrenheit in the time it took to bring water to a boil.[48]

---

[42] *Id.* at ¶¶ 31-32.

[43] *Id.* at ¶ 38.

[44] *Id.* at ¶ 41.

[45] *Id.* at ¶ 46.

[46] *Id.* at ¶ 50.

[47] *Id.* at ¶¶ 46-47.

[48] *Id.* at ¶¶ 14-15.

Per the American Society of Testing Materials' Standard for Heated System Surface Conditions that Produce Contact Burn Injuries,[49] skin contact with metallic surfaces which exceed temperatures of 140 degrees Fahrenheit causes burns resulting in irreversible injury.[50] California has a like standard, requiring that all metals be "covered thermal insulating material or otherwise guarded against contact" if they have "an external surface temperature of 140 degrees F . . . or higher" and are "located within 7 feet vertically from floor or working level."[51] New York City's Administrative Code provides that "[a]ll accessible piping in habitable and occupiable rooms carrying steam, water, or other fluids at temperatures exceeding one hundred sixty-five degrees Fahrenheit shall be insulated to prevent the temperature at the outer surface of the insulation from exceeding sixty degrees Fahrenheit above the ambient temperature."[52]

The conduction of this excessive temperature renders the Microwaves' handles unfit to use when opening the Microwave door—its intended and ordinary purpose.[53]

---

[49] *Id.* at ¶ 3.

[50] *Id.* at ¶ 4.

[51] *Id.* at ¶ 104.

[52] *Id.* at ¶ 107.

[53] *Id.* at ¶ 97,

## 2. Plaintiffs' Operation of the Microwaves

Rice purchased her Microwave from a Pennsylvania Lowe's on October 13, 2013 for $269.10, and paid an additional $180 to have the Microwave professionally installed in her home in accordance with the Installation Instructions provided by Electrolux.[54]  At some point thereafter, Rice was cooking on her stovetop and reached for the Microwave handle to open the door.[55]  The temperature of the handle had reached an "exceedingly high" temperature, resulting in burns to Rice's hand.[56]

Kukich purchased his Microwave from a Catonville, Maryland HHGREGG on October 27, 2013 for $249.99.[57]  The retail cost of his Microwave's handle, which bears part number 5304471830, is approximately $86.81.[58]  His Microwave was properly installed per Electrolux's installation instructions.[59]  When the stovetop below his Microwave was on, Kukich grabbed the handle to open his Microwave.  By touching the handle, Kukich discovered that the handle was hot enough to expose him to a serious risk of injury.[60]

---

[54]  *Id.* at ¶¶ 17-18.

[55]  *Id.* at ¶ 19.

[56]  *Id.* at ¶¶ 21-22.

[57]  *Id.* at ¶ 32.

[58]  *Id.* at ¶ 33.

[59]  *Id.* at ¶ 34.

[60]  *Id.* at ¶ 36.

Mendoza purchased her Microwave from a Modesto in December 2014.[61] The retail cost of her Microwave's handle, which bears part number 5304472053, is approximately $102.98.[62]  After installation, while cooking at her stove, Mendoza reached for her Microwave's handle to open it.  As a result of Mendoza's very brief contact with her Microwave's handle, she discovered its exceedingly high temperature.[63]

Hunt purchased his Microwave from a California Lowe's in November 2016.[64]  His Microwave was installed over Hunt's cooking range per Electrolux's installation instructions.[65]  The retail cost of his Microwave's handle, which bears part number 5304481502, is approximately $124.56.[66]  After installation, while cooking at his stove, Hunt reached for his Microwave's handle to open it.  As a result of Hunt's very brief contact with his Microwave's handle, he discovered its exceedingly high temperature.[67]

Mauro purchased his Microwave from a Cicero, New York Lowe's on December 3, 2014 for $224.10.[68]  The retail cost of his Microwave's handle, which

---

[61]  *Id.* at ¶ 38.

[62]  *Id.* at ¶ 40.

[63]  *Id.* at ¶¶ 42-43.

[64]  *Id.* at ¶ 46.

[65]  *Id.* at ¶ 47.

[66]  *Id.* at ¶ 49.

[67]  *Id.* at ¶¶ 51-52.

[68]  *Id.* at ¶ 57.

bears part number 5304481502, is approximately $124.56.[69]  His Microwave was

installed over Mauro's cooking range per Electrolux's installation instructions.

When the stovetop below his Microwave was on, Mauro grabbed the handle to

open his Microwave.  By touching the handle, Mauro discovered that the handle

had an "exceedingly high temperature exposing him to a serious risk of injury from

the Handle Defect."[70]

All Plaintiffs in this litigation understood that retailers Lowe's and Modesto,

in selling these microwaves, were acting with the knowledge and approval of

Electrolux, and/or as Electrolux's agent.[71] Lowe's and Modesto adopted and

represented Electrolux's representations that these Microwaves could be used

"over-the-range."[72]  When they purchased their Microwaves, Plaintiffs saw the

representation that these Microwaves were "over-the-range" microwaves by

Electrolux, Midea China, and Sharp Thailand (who created and affixed the

microwaves' packaging) and by Lowe's and Modesto (the retailers that advertised,

marketed, promoted, and sold the microwaves).[73]

---

[69]  *Id.* at ¶ 58.

[70]  *Id.* at ¶¶ 59, 61.

[71]  *Id.* at ¶ 112.

[72]  *Id.* at ¶ 113.

[73]  *Id.* at ¶ 114.

Had Plaintiffs known of the handles' high temperature and the associated risk of burns, Plaintiffs would not have purchased their microwaves or would have paid less.[74]

### 3. Defendants' Conduct

From 2011 to 2018, Electrolux's call center received complaints from customers whose Microwaves had the Handle Defect.[75] Electrolux documented these complaints in internal business records that acknowledged the Handle Defect.[76] In 2013, Rice filed a warranty claim with Electrolux about the Handle Defect.[77] In June 2015, an Electrolux field inspection measured the Handle Defect temperature as over 200 degrees Fahrenheit.[78] In August 2015, two Electrolux employees sent internal instant messages about the Handle Defect.[79]

On September 23, 2015, Electrolux advised Sharp America about the Handle Defect via email. Since at least December 30, 2015, counsel for Electrolux and Sharp America have communicated extensively about this litigation and about the Handle Defect.[80]

---

[74] *Id.* at ¶ 139.

[75] Instant Complaint at ¶¶ 10, 127.

[76] *Id.* at ¶ 127.

[77] *Id.* at ¶ 125.

[78] *Id.* at ¶ 7.

[79] *Id.* at ¶ 126.

[80] *Id.* at ¶ 81.

On January 26, 2016, Electrolux sent a letter to Midea China and Midea America informing them that Rice had filed her action and that her proposed classes could potentially cover Microwaves that Midea China manufactured for Electrolux. In that letter, Electrolux sought to coordinate document production of Midea China's responsive documents.[81] In May 2016, in a communication to Midea China, Electrolux stated that it would prefer its Microwaves to have handles coated with plastic instead of stainless steel. Per Electrolux, plastic coating would reduce the issue of the handle's temperature becoming hot from the cooktop below.[82] Electrolux ultimately told its senior project manager for cooking to eliminate "SS / aluminum handles and replace with plastic metallic painted handles."[83] In a November 2016 communication, Electrolux stated that a national home builder, David Weekly Homes, was moving from certain Electrolux to GE microwaves "because they feel we do not have a solution for homeowners who have complained about the handles getting too hot." Electrolux stated that "we do the installations and they are installed at appropriate height from cooking surface per the spec."[84] Electrolux routinely denies warranty claims that putative Class Members submit.[85]

_____

[81]  *Id.* at ¶¶ 72, 128.

[82]  *Id.* at ¶ 129.

[83]  *Id.* at ¶ 130.

[84]  *Id.* at ¶ 131.

[85]  *Id.* at ¶ 135.

Sharp America performs the product testing required for the Microwaves that Sharp Thailand manufactures.[86]  In April 2017, Midea America opened a research and development facility in Louisville, Kentucky.  The facility featured test kitchens and other testing facilities.[87]

### 4.    Warranties

The final page of the "Use & Care Guide" for the Microwaves contains a section on "Major Appliance Warranty Information" (the "Warranty Information") All Microwave models include this same Warranty Information.[88]  The Warranty Information is printed overseas in Asia prior to shipping to the United States.  For Electrolux microwaves that Midea China manufactures, the Warranty Information is printed in China.[89]

The Warranty Information document is sealed into the microwave's box at the point of manufacture (Thailand or China), imported into the United States, distributed by Electrolux, and then purchased by Plaintiffs and the proposed Class Members.  The actual terms of the Warranty Information are not disclosed to the microwave purchaser until they have purchased their microwave and opened the box.[90]  No other warranty information, or any disclaimer or limitation of any

---

[86]   *Id.* at ¶ 79.

[87]   *Id.* at ¶ 71.

[88]   *Id.* at ¶ 140.

[89]   *Id.* at ¶ 141.

[90]   *Id.* at ¶ 141.

warranty, was printed or displayed on the exterior of the boxes containing these microwaves.[91]

Electrolux provides the below express limited warranty ("Limited Warranty"):[92]

> Your appliance is covered by a one year limited warranty. For one year from your original date of purchase, Electrolux will pay all costs for repairing or replacing any parts of this appliance that prove to be defective in materials or workmanship when such appliance is installed, used and maintained in accordance with the provided instructions.

The Limited Warranty expressly provides that "[s]ervice under this warranty must be obtained by contacting Electrolux at the addresses or phone numbers below." Warranty service is not provided by the seller.[93] In the United States, the sole entity responsible for warranty service under the express warranty is Electrolux Major Appliances, North America in Augusta, Georgia at 1.800.944.9044, a division of Electrolux Home Products, Inc.[94]

The Warranty Information includes a section with language seeking to exclude or modify the implied warranties of merchantability and fitness for a particular purpose. This section is titled "Disclaimer of Implied Warranties; Limitations of Remedies." It is not available to buyers prior to purchase. There is

---

[91]  *Id.* at ¶ 150.

[92]  *Id.* at ¶ 142.

[93]  *Id.* at ¶ 143.

[94]  *Id.* at ¶ 144.

no disclaimer of any implied warranty visible at the point of sale, as it only appears on the last page of the Use & Care Guide that is sealed within the microwaves' box.[95] The Warranty Information's Disclaimer is not conspicuous and is not separately acknowledged by any Plaintiff or proposed Class Member.[96]

Every one of these Microwaves, when they left Defendants' control, had a handle that heated up as described above.[97] Lowe's and Modesto sell other microwave models with handles that do not heat up in this way.[98]

### 5. Procedural History[99]

On February 18, 2015, Rice filed the initial complaint with this Court.[100] On January 24, 2017, the United States District Court for the District of Maryland transferred an action filed by Kukich to this Court.[101] On November 2, 2017, the United States District Court for the Eastern District of California transferred an action filed by Mendoza and Hunt to this Court.[102] On March 6, 2018, the United States District Court for the Northern District of New York transferred an action

---

[95] *Id.* at ¶ 147.

[96] *Id.* at ¶¶ 148-49.

[97] *Id.* at ¶ 152.

[98] *Id.* at ¶ 153.

[99] This case has a complex procedural history. The Court does not give a full accounting here.

[100] ECF No. 1.

[101] ECF No. 115 at ¶ 7.

[102] Case No. 4:17-cv-02028, ECF No. 50.

filed by Mauro to this Court.[103]  On August 20, 2018, this Court consolidated all subcomponent actions.[104]

### D.     Analysis[105]

#### 1.     Standing

##### a.     Whether Plaintiffs Mendoza and Hunt have standing to seek injunctive relief against Defendants

Mendoza and Hunt request "equitable and/or injunctive relief" as part of their Unfair Competition Law claim.[106]  Because such relief is prospective relief, Mendoza and Hunt must show they are "likely to suffer future injury" from Defendants' conduct.  *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (citation omitted).  They have not made this showing.  The injury they plead is economic,[107] and they have not shown that they are likely to suffer future economic injury from Defendants' conduct.  Therefore, Mendoza and Hunt do not have standing to seek "equitable and/or injunctive relief" as part of their Unfair Competition Law claim.

---

[103]  Case No. 4:18-cv-00539, ECF No. 38.

[104]  ECF No. 159.

[105]  Defendants' five motions to dismiss and Plaintiffs' omnibus opposition brief present some arguments that the Court does not include in the following analytical discussion.  To avoid doubt, the Court has considered the arguments that it does not explicitly ventilate here.  It has chosen not to discuss them.  Some of the arguments are redundant given the success or failure of other arguments.  And other arguments are simply unavailing.

[106]  Instant Complaint at ¶ 300.

[107]  *Id.* at ¶ 299 ("Plaintiffs Hunt and Mendoza have suffered an injury-in-fact and have lost money or property by means of the inflated amounts they paid for functionally unsafe Microwaves.")

### b. Whether Plaintiffs have standing to assert claims regarding microwaves that they did not purchase

Defendants argue that Plaintiffs here lack standing to pursue claims across their Proposed Class for microwaves that the Plaintiffs did not themselves purchase. In a companion case in the District of New Jersey, District Judge Renee Marie Bumb found, in a decision addressing motions to dismiss, that she would "not address these arguments as they are more appropriately set forth in response to a motion for class certification."[108] The Court finds Judge Bumb's logic compelling. It won't consider this argument, and like arguments concerning the appropriateness of Plaintiffs' class allegations,[109] by Defendants at this stage.

### c. Whether Hunt has standing

Midea China argues that Hunt lacks standing because (a) he does not allege injuries during the period when he owned his Microwave, and (b) he eliminated the potential risk of future injury by removing his Microwave from his home.[110] The Instant Complaint provides that "[h]ad Plaintiffs known of the Handle Defect in the Microwave and the substantial risk of burns resulting from use of the Microwave due to the Handle Defect, Plaintiffs would not have purchased their

---

[108] *Gorczynski v. Electrolux Home Prod., Inc.*, No. CV 18-10661(RMB/KMW), 2019 WL 1894915, at *2 (D.N.J. Apr. 29, 2019), *on reconsideration*, No. CV 18-10661(RMB/KMW), 2019 WL 5304085 (D.N.J. Oct. 18, 2019).

[109] *See, e.g.*, ECF No. 227 at 12-17.

[110] ECF No. 217 at 38.

Microwaves or would have paid less."[111]  This economic injury suffices as an injury-in-fact.  Hunt has standing.[112]

## 2.    Jurisdiction

Defendants Sharp Thailand and Midea China argue that the Court lacks personal jurisdiction over them.  The Court agrees.

### a.    Personal Jurisdiction over Sharp Thailand

According to Plaintiffs, the Court can impute Sharp America's registration to do business in Pennsylvania to Sharp Thailand because Sharp Thailand is Sharp America's alter ego.  This argument fails.

Plaintiffs allege that Sharp America and Sharp Thailand "are vertically integrated and controlled by Sharp."  Plaintiffs do not allege, however, that either Sharp America or Sharp Thailand is a parent company of the other.  Without this allegation, "many of the elements of" the Court's standard test for determining alter ego status are "inapplicable."[113]  The remaining factors are as follows.[114]

(1)    Commonality of officers or directors;

(2)    A "unified marketing image," "including common branding of products";

---

[111]  Instant Complaint ¶ 139.

[112]  *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 287 (3d Cir. 2018).

[113]  *Mildren v. Watkins*, No. 1:18-CV-01403, 2019 WL 4302242, at *8 (M.D. Pa. Sept. 11, 2019).

[114]  *Id.*

(3)     The sharing of "uniform trademarks or logos";

(4)     The sharing of employees; and

(5)     Whether "the corporations exchange or share managerial or supervisory personnel."

Here, Plaintiffs allege that (a) Sharp America performed all testing for Microwaves sold in the United States, including those with the Handle Defect; (b) Sharp America addressed certain issues relating to the Defect-laden Microwaves that Sharp Thailand had manufactured; and (c) Sharp Thailand directed Sharp America to oppose, on Sharp Thailand's behalf, Plaintiffs' motion for alternative service in Mendoza's original case. These three allegations, taken together, do not demonstrate the level of day-to-day business control necessary for the Court to make a finding of alter ego.[115]

Plaintiffs also claim that the Court has specific personal jurisdiction over Sharp Thailand because of Sharp Thailand's contacts with Pennsylvania. This argument also fails. The Instant Complaint shows no Sharp Thailand contacts with Pennsylvania.

The Court lacks jurisdiction over Sharp Thailand. Thus, the Court dismisses Mendoza and Hunt's claims as to Sharp Thailand.

---

[115] *See Mildren*, 2019 WL 4302242, at *9 ("limited commonalities" did not establish requisite "intrusive control"); *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 324 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) (plaintiff did not show parent exercised "any control over the internal workings or day-to-day operations of its subsidiaries," and did not show the requisite "extraordinary level of control" by parent over subsidiary).

### b. Personal Jurisdiction over Midea China

According to Plaintiffs, the Court can impute Midea America's consent to personal jurisdiction in this Court to Midea China because Midea China is Midea America's alter ego. This argument fails. Like with Sharp Thailand and Sharp America, Plaintiffs do not allege that either Midea America or Midea China is a parent company of the other. Therefore, the above factors apply.

Here, Plaintiffs allege that (a) a Midea China employee supplied Midea America's interrogatory answers; (b) Midea China directed Midea America to oppose, on Sharp Thailand's behalf, Plaintiffs' motion for alternative service in Mendoza's original case; and (c) "Midea America shared employees and management with Midea China to handle the obligations" under Midea China's Finished Product Purchase Agreement with Electrolux.

Midea China presents evidence that the so-called Midea China employee was a Midea America employee.[116] This adequately contests Plaintiffs' first allegation. Plaintiffs provide no facts in support of their third allegation. As with Sharp Thailand, Plaintiffs' second allegation does not demonstrate the level of day-to-day business control necessary for the Court to make a finding of alter ego.[117]

Plaintiffs also claim that the Court has specific personal jurisdiction over Midea China because of Midea China's contacts with Pennsylvania. This

---

[116] ECF No. 232 Ex. C and Ex. D.

[117] *See* footnote 115 above.

argument fails. The Instant Complaint shows no Midea China contacts with Pennsylvania.

The Court lacks jurisdiction over Midea China. Thus, the Court dismisses Mendoza and Hunt's claims as to Midea China.

### c. Remedying the Court's Lack of Personal Jurisdiction

Plaintiffs offer that if the Court finds that it lacks personal jurisdiction over these foreign defendants, the following procedural vehicles provide an acceptable remedy.

a) Re-transfer of the offending subcomponent cases to different federal jurisdictions under 28 U.S.C. § 1631.

b) Exercising jurisdiction over these foreign defendants based on their contacts with the United States under Federal Rule of Civil Procedure 4(k)(2).

c) Allowing the Plaintiffs to conduct jurisdictional discovery.

Regarding *retransfer*: The Court already consolidated these subcomponent cases in its August 20, 2018 Memorandum Opinion.[118] In that Opinion, I stated that consolidation was "in the interest of judicial economy."[119] I also found that consolidation was on Plaintiffs' "request that the Court . . . exercise its discretion and consolidate these actions," as an alternative to retransfer.[120] It is not "in the

---

[118] ECF No. 158.

[119] *Id.* at 2.

[120] *Id.* at 12.

interest of justice"[121] for the Court to retransfer these cases, having already consolidated them on Plaintiffs' request. Further, "the Third Circuit has recently held that § 1631 only permits transfer to remedy a lack of statutory, and not constitutional, jurisdiction."[122] As I explained above, the jurisdictional defect here is constitutional and not statutory. 28 U.S.C. § 1631 therefore cannot serve as a remedy here.

The Court will not retransfer to these subcomponent cases to their different original federal jurisdictions. The case stays consolidated.

Regarding *Rule 4(k)(2) jurisdiction*: This argument fails for an independent reason for each foreign defendant. Rule 4(k)(2) cannot bring in Sharp Thailand because Rule 4(k)(2) only applies if a defendant is "not subject to jurisdiction in any state's courts of general jurisdiction."[123] Here, Sharp Thailand only contests Pennsylvania's jurisdiction to bring it before the Court.[124] And Rule 4(k)(2) cannot bring in Midea China because none of Plaintiffs' claims against Midea China "arise[] under federal law," which is another prerequisite.[125]

---

[121] 28 U.S.C. § 1631.

[122] *Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*, No. CV 16-6076, 2019 WL 1437981, at *28 (E.D. Pa. Mar. 29, 2019). The referred-to holding is at *In re IMMC Corp.*, 909 F.3d 589, 596 (3d Cir. 2018).

[123] Fed. R. Civ. P. 4(k)(2)(A).

[124] ECF No. 215 at 2.

[125] Fed. R. Civ. P. 4(k)(2).

Regarding *jurisdictional discovery*: The Court will not afford Plaintiffs jurisdictional discovery because Plaintiffs have already had years to conduct this discovery. The Court's Order of June 17, 2016 ordered Defendant Electrolux to produce certain "documents and information in the possession of" Sharp Thailand and Midea China.[126] Over two years later, Plaintiffs filed the Instant Complaint.[127] Where a plaintiff has had the opportunity to conduct jurisdictional discovery, and then fails to make out a *prima facie* case of personal jurisdiction, courts are entitled to deny the plaintiff's request for further jurisdictional discovery.[128]

### 3. Statutes of Limitations

### a. Applicable Standards

The Consumer Legal Remedies Act has a three-year statute of limitations that accrues "[f]rom the date of the commission of [the challenged] such method, act, or practice."[129] The Unfair Competition Law has a four-year statute of limitations that accrues when each of the elements of the plaintiff's cause of action

---

[126] *See* ECF No. 81.

[127] ECF No. 173.

[128] *See, e.g.*, *Rose v. Cont'l Aktiengesellschaft (AG)*, No. CIV.A. 99-3794, 2001 WL 236738, at *4 (E.D. Pa. Mar. 2, 2001); *Visual Sec. Concepts, Inc. v. KTV, Inc.*, 102 F. Supp. 2d 601, 609 n.12 (E.D. Pa. 2000); *Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 841 (E.D. Pa. 1997).

[129] Cal. Civ. Code § 1783; *Herremans v. BMW of N. Am., LLC*, cv14-02363 MMM (PJWx), 2015 WL 12712082, at *3 (C.D. Cal. Feb. 19, 2015).

have been satisfied.[130]  Generally, this is on the date of purchase.[131]  The Song-Beverly Act has a four-year statute of limitations, which in this instance accrues from the date of delivery.[132]

The New York General Business Law §§ 349 and 350 each have a three-year statute of limitations that accrues when the plaintiff is injured by the deceptive act or practice that violated the statute.[133]

Claims for breach of an implied warranty under Maryland law are normally subject to a four-year statute of limitations.[134]  A manufacturer can shorten that normal time period to not less than one year.[135]  This claim accrues when tender of delivery is made.[136]

---

[130]  Cal. Bus. & Prof. Code § 17208; *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, SA CV 17-1552-DOC (JDEx), 2018 WL 5099277, at *13 (C.D. Cal. Jul. 10, 2018).

[131]  *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *8 (N.D. Cal. July 7, 2015).

[132]  *Schick v. BMW of N. Am., LLC*, 5:17-cv-02512-VAP-KKx, 2018 WL 6017023, at *5 (C.D. Cal. Sept. 27, 2018); *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1305-06 (2009). "The Song-Beverly Act itself does not provide a limitations period. Instead, California courts have adopted a four-year statute of limitations period from Section 2725 of the Commercial Code. Section 2725 limits breach of contract claims to four years after the cause of action accrued, adjudged in breach of warranty actions to be from the date of delivery." *Bronson v. Samsung Elecs., Am., Inc.*, No. C 18-2300 WHA, 2018 WL 5809418, at *2 (N.D. Cal. Nov. 6, 2018).

[133]  *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 386 n.10 (S.D.N.Y. 2016).

[134]  Md. Code. Ann., Com. Law § 2-725; *Youmans v. Douron, Inc.*, 65 A.3d 185, 188 (Md. App. 2013).

[135]  Md. Code. Ann., Com. Law § 2-725; Uniform Commercial Code cmt. (recognizing that "Subsection (1) permits the parties to reduce the period of limitation" to a minimum of one year).

[136]  *Youmans*, 65 A.3d at 194.

Under New York law, claims for breach of an implied warranty are normally subject to a four-year statute of limitations.[137]  But the New York Uniform Commercial Code provides that a product manufacturer can shorten that normal time period to less than one year.[138]  This claim accrues when tender of delivery was made.[139]

Claims under the Magnuson-Moss Act are governed by the most analogous state law on warranties.[140]

### b.    Mendoza and Hunt's California Law Claims Against Sharp America

Sharp America argues that its only challenged conduct with respect to Mendoza and Hunt's Microwaves was the testing of these Microwaves on May 2011.  As such, Sharp America argues that Mendoza and Hunt brought their California law claims against it too late.[141]  This argument is not availing. Mendoza and Hunt's CLRA claim is tolled by the delayed discovery of the Handle Defect.[142]  And Sharp America's Microwave testing is not relevant to the accrual

---

[137]  New York Uniform Commercial Code § 2-725 (2015); *State of Narrow Fabric, Inc. v. Unifi, Inc.*, 126 A.D.3d 881, 882 (2d Dep't 2015).

[138]  New York Uniform Commercial Code § 2-725 (2015); Uniform Commercial Code cmt. (recognizing that "Subsection (1) permits the parties to reduce the period of limitation" to a minimum of one year).

[139]  *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012).

[140]  *Murungi v. Mercedes Benz Credit Corp.*, 192 F. Supp. 2d 71, 78 (W.D.N.Y. 2001).

[141]  ECF No. 214 at 18.

[142]  *See In re Seagate Tech. LLC Litig.*, 233 F.Supp.3d 776, 796 (N.D. Cal. 2017).

of Mendoza and Hunt's Unfair Competition Law and Song-Beverly Act claims. These claims accrued after Mendoza and Hunt purchased their Microwaves, or their Microwaves were delivered to them, respectively. They are therefore timely.

### c. Kukich and Mauro's Warranty-Based Claims Against Electrolux and Lowe's

A number of Kukich and Mauro's claims against Electrolux and Lowe's proceed under a warranty theory. Electrolux and Lowe's argue that because the implied warranty at issue here was limited to one year, Kukich and Mauro's warranty-based claims are therefore time-barred.[143]

Kukich argues that because he did not see the warranty-limiting term until after he purchased his Microwave, it was not part of his original agreement with Electrolux and is therefore unenforceable.[144] This argument does not hold because under Maryland law, "express warranties may be formed . . . even after the sale has been consummated." This "recognize[s] the reality that warranties are often given at the time of the sale such that the buyer does not become aware of their terms until after the sale is finished."[145] Kukich's claim for breach of the implied warranty of merchantability against Electrolux is therefore dismissed because it is time-barred.

---

[143] ECF No. 227 at 19, 32.

[144] ECF No. 231 at 27-29.

[145] *Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563, 573 (Md. 2006).

Mauro argues that misrepresentations and omissions prevented him from discovering his Microwave's defect and commencing his action within the applicable limitations period.[146]  He, however, alleges no such misrepresentations or omissions in the Instant Complaint.  Mauro's claim for breach of the implied warranty of merchantability and violation of the Magnuson-Moss Act against Lowe's are therefore dismissed because they are time-barred.

### d.  Mauro's New York General Business Law Claims Against Midea America

Mauro purchased his Microwave on December 3, 2014 but did not bring Midea America in as a defendant until April 6, 2018.  Midea America thus argues that Mauro's New York General Business Law claims against it are time-barred.[147]  Plaintiffs ask the Court to apply the doctrine of equitable tolling, or, in the alternative, hold that Plaintiffs' claims are actually timely because of Midea China's fraudulent concealment of the Handle Defect.[148]  The problem for Plaintiffs is that they were placed on notice of Midea America's identity no later than December 18, 2015, via a verified interrogatory answer from Electrolux.[149]  This was nearly two years before Mauro's statute of limitations expired.  Because of Plaintiffs' resultant failure to do their due diligence and add Midea America as a

---

[146]  ECF No. 231 at 35.

[147]  ECF No. 219 at 25-26.

[148]  ECF No. 231 at 36-38.

[149]  ECF Nos. 67-4, 67-5 at 9.

defendant, the Court cannot apply any equitable tolling.[150]  Further, Mauro

discovered the Handle Defect before the three-year statute of limitations had run.[151]

Therefore, Plaintiffs have not made out a claim of fraudulent concealment.[152]

Mauro's claims against Midea America for violation of New York's General

Business Law §§ 349 and 350 are dismissed because they are time-barred.

### 4. Failure to State a Claim

#### a. Kukich's Breach of Express Warranty Claim Against Electrolux

As it did previously,[153] Electrolux seeks to dismiss Kukich's breach of

express warranty claim for lacking privity.[154]  Kukich's two tries at making out

exceptions to the privity requirement each fail.  First, Kukich alleged that he was a

third-party beneficiary of the express warranty in question.  But Kukich did not

allege that he suffered the requisite personal injury.[155]  Second, Kukich's attempt to

harness equitable estoppel does not work because this "narrow exception to the

privity requirement" requires that "a defendant behave[] in such a way that the

plaintiff was justified in believing that the defendant was the actual seller, or that it

could rely on an express warranty because the defendant provided warranty

---

[150]  *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462-63 (S.D.N.Y. 2014).

[151]  *See* page 15, above.

[152]  *See Donahue v. Pendleton Woolen Mills Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986).

[153]  *See* ECF No. 126 at 17-18.

[154]  ECF No. 227 at 18-19.

[155]  *See* Instant Complaint; *Pulte Home Corp. v. Parex*, 923 A.2d 971, 995 n.14 (Md. App. 2007).

services to the plaintiff, despite the lack of privity."[156]  Kukich has not alleged either of these threshold requirements.[157]

Because Kukich lacks privity with Electrolux, and no exceptions apply, Kukich's breach of express warranty claim against Electrolux is dismissed.

### b. Kukich's Magnuson-Moss Act Claim Against Electrolux

Kukich's claims against Electrolux for breach of express warranty and breach of implied warranty both fail.  Therefore, Kukich's Magnuson-Moss Act claim against Electrolux also fails.[158]  This claim is dismissed.

### c. Mendoza and Hunt's Consumer Legal Remedies Act Claim and Unfair Competition Law Claim Against Sharp America

Mendoza and Hunt allege that Sharp America knew of the Handle Defect, failed to disclose and concealed it, and represented that the Microwaves satisfied a particular standard or quality while actually being of another standard or quality.[159]  This would constitute a violation of the Consumer Legal Remedies Act.  These

---

[156] *H & M Co. v. Tech. Heat Transfer Servs., Inc.*, 2015 WL 1472000, at *4 (D. Md. Mar. 30, 2015).

[157] *See* Instant Complaint.

[158] *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) (holding that the MMWA "operates *in conjunction with state law* to regulate the warranting of consumer products" (emphasis in original)); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) (holding that MMWA claims "hinge on the state law warranty claims"); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (noting that the MMWA borrows state law causes of action).

[159] Instant Complaint at ¶ 277.

claims sound in fraud and therefore Plaintiffs need to plead their associated factual allegations with particularity.[160]

Plaintiffs have not pled with particularity Sharp America's knowledge of the Handle Defect. The Instant Complaint makes general allegations about Sharp America's selection of material for and testing of the Microwave in question.[161] These general allegations are not particular enough to survive a motion to dismiss operating under this scrutiny.[162] And they likewise prove fatal to Mendoza and Hunt's Unfair Competition Law claim against Sharp America. This is so because an Unfair Competition Law claim must include allegations of "how the defendant obtained knowledge of the specific defect prior [to] the plaintiff's purchase of the defective product."[163]

Therefore, Mendoza and Hunt's Consumer Legal Remedies Act claim and Unfair Competition Law claim against Sharp America are each dismissed.

---

[160] Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

[161] *See* Instant Complaint at ¶¶ 41, 79, 80, 94, 118-20, 122, 124, 279.

[162] *See Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 910 (E.D. Cal. 2018) (allegations about testing lacked "any specific details about what type of . . . testing was performed"); *Burdt v. Whirlpool Corp.*, No. C 15-01563 JSW, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015) ("Plaintiff does not provide any details about or dates of the alleged tests or exactly what the tests would have shown. Prerelease testing is common and Plaintiff must allege more than an undetailed assertion that the testing must have revealed the alleged defect.").

[163] *Stewart*, 304 F. Supp. 3d at 908.

### d. Mendoza and Hunt's Consumer Legal Remedies Act Claim Against Midea America

Like with Sharp America, Mendoza and Hunt claim that Midea America knew of the Handle Defect, failed to disclose and concealed it, and represented that the Microwaves satisfied a particular standard or quality while actually being of another standard or quality.[164]

Here, Plaintiffs have not alleged an adequate "consumer transaction" between Hunt and Midea America. They only allege that Midea America tested Hunt's Microwave. The Court acknowledges that liability under the Consumer Legal Remedies Act extends to manufacturers with whom a plaintiff did not directly transact business.[165] This rule has some intuitive sense. As another federal district court has described it, it extends liability from "the consumer's 'transaction' of purchasing the product from some downstream seller" upwards to "the manufacturer's initial 'transaction' of putting a product into the stream of commerce."[166] But as Plaintiffs acknowledge,[167] this is an exception to the "general[] require[ment]" of "a consumer transaction between a plaintiff and a defendant."[168] Plaintiffs have presented no authority suggesting that Consumer

---

[164] Instant Complaint at ¶ 277.

[165] *See, e.g.*, *Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999-EJD, 2015 WL 5698752, at *8 (N.D. Cal. Sept. 29, 2015).

[166] *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 955 (N.D. Ill. 2016) (interpreting California law).

[167] ECF No. 231 at 47.

[168] *Arroyo*, 2015 WL 5698752, at *8.

Legal Remedies Act liability should extend to an entity that only tested an offending product. The Court has performed its own independent research and located no such authority. In the absence of supporting authority, the Court hesitates to make this extension, which is in the Court's view dramatic and not in accord with extending liability to the upstream manufacturer of a defective product.

Therefore, Mendoza and Hunt's Consumer Legal Remedies Act claim against Midea America is dismissed.

### e. Mendoza and Hunt's Consumer Legal Remedies Act and Unfair Competition Law Claims Against Electrolux, Lowe's, and Modesto, and their Unfair Competition Law Claim Against Midea America

Plaintiffs do not allege with the requisite specificity the representations that they relied upon that omitted the Handle Defect. This disposes of Mendoza and Hunt's Consumer Legal Remedies Act and Unfair Competition Law claims against Electrolux, Lowe's, and Modesto. This also disposes of Mendoza and Hunt's Unfair Competition Law claim against Midea America.

As Plaintiffs concede, reliance is a required element of both a Consumer Legal Remedies Act claim and an Unfair Competition Law claim.[169] Though California courts have acknowledged that "[t]he strictures of Rule 9(b) are

---

[169] ECF No. 231 at 41-42.

somewhat relaxed for claims based on fraudulent omission or concealment,"[170] they differ on how much relaxation is due. Indeed, one California court has remarked that "[u]nfortunately, the standard for pleading reliance in a fraud case alleging omissions is far from uniform in this Circuit."[171]

One standard known as the *Marolda* standard indicates that "to plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information."[172] A different "more flexible requirement,"[173] set forth by the United States Court of Appeals for the Ninth Circuit in *Kearns v. Ford Motor Co.*, requires a plaintiff only to provide the "who, what, when, where, and how of the misconduct alleged."[174]

By the *Marolda* standard, though Plaintiffs here have described the content of the given omission, they have not provided representative samples of the kind described above. By the *Kearns* standard, Plaintiffs have not provided the "what,"

---

[170] *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMRZX, 2014 WL 12586074, at *6 (C.D. Cal. Oct. 20, 2014).

[171] *Overton v. Bird Brain, Inc.*, No. SACV 11-1054 DOC ANX, 2012 WL 909295, at *5 (C.D. Cal. Mar. 15, 2012).

[172] *Parenteau v. Gen. Motors, LLC.*, No. CV1404961RGKMANX, 2015 WL 13309475, at *2 (C.D. Cal. May 28, 2015).

[173] *Overton*, 2012 WL 909295, at *6.

[174] 567 F.3d 1120, 1126 (9th Cir. 2009).

"where" and "how" of these Defendants' alleged omission of the Handle Defect.

The closest Plaintiffs come is a general allegation that Plaintiffs, when purchasing

their Microwaves, saw a representation by these Defendants that the Microwave

was "Over-the-Range."[175] Plaintiffs, then, by either test, have not made specific

enough allegations to satisfy Federal Rule of Civil Procedure 9(b).[176]

Therefore, Mendoza and Hunt's Consumer Legal Remedies Act and Unfair

Competition Law claims against Electrolux, Lowe's, and Modesto are dismissed.

Mendoza and Hunt's Unfair Competition Law claim against Midea America is also

dismissed.[177]

### f.    Mendoza and Hunt's Song-Beverly Act Claims

The Song-Beverly Act only applies to manufacturers, distributors, or

retailers of the targeted product.[178] Plaintiffs have not alleged in a non-conclusory

fashion that Sharp America or Midea America were manufacturers, distributors, or

retailers of Mendoza's or Hunt's Microwave.[179] The Court must then dismiss

---

[175] Instant Complaint at ¶ 114.

[176] *See* Instant Complaint; *see also Mack v. LLR, Inc.*, No. EDCV1700853JGBDTBX, 2019 WL 1873294, at *6-*7 (C.D. Cal. Feb. 6, 2019) (explaining plaintiff's failure to meet either standard).

[177] This reasoning provides an independent basis for dismissal of Mendoza and Hunt's Consumer Legal Remedies Act claim and Unfair Competition Law claim against Sharp America.

[178] Cal. Civ. Code § 1793; *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 207 (Cal. Ct. App. 1991).

[179] *See* Instant Complaint.

Mendoza and Hunt's Song-Beverly Act claim as to Sharp America and Midea America.

Electrolux, Lowe's and Modesto argue that Mendoza and Hunt have not alleged that the Handle Defect existed in their Microwaves during the requisite time period.[180]  The Instant Complaint alleges that the Handle Defect was latent at the time of the Microwaves' sale and then manifested.[181]  This suffices for the Song-Beverly Act's purposes.[182]  The Court will allow these claims to continue.

### g.    Mauro's Claims Against Electrolux and Lowe's

Electrolux and Lowe's argue that the Court should dismiss Mauro's New York claims against them, because Mauro has not alleged that the Handle Defect manifested in his particular microwave.[183]  Mauro has alleged that when he reached for the handle of his Microwave, he discovered that the handle had an "exceedingly high temperature exposing him to a serious risk of injury from the Handle Defect."  Drawing all inferences in the Instant Complaint in Mauro's favor,

---

[180]  ECF No. 227 at 27-28.  These Defendants also argue that Mendoza's Song-Beverly Act claim was time-barred.  But they do so in their reply brief, without having introduced the argument in their opening brief.  I therefore will not consider that argument.  *See Hunt v. Potter Cty.*, No. 4:16-CV-01729, 2017 WL 2152380, at *3 n.29 (M.D. Pa. May 17, 2017) (Brann, J.).

[181]  Instant Complaint at ¶¶ 42-45, 51-54.

[182]  *Mexia v. Rinker Boat. Co.*, 174 Cal. App. 4th 1297, 1310 (2009); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222-23 (9th Cir. 2015).

[183]  ECF No. 227 at 28-30.

I find that this suffices to plead that the Handle Defect manifested itself in Mauro's Microwave.[184]

### h. Mauro's New York General Business Law Claims Against Electrolux and Lowe's

Electrolux and Lowe's argue that because Mauro has not alleged that he saw any misleading statements or materials before purchasing his Microwave, he has failed to allege a causal "connection between the deceptive act and the plaintiff's injury," and therefore has not stated a claim for the violation of New York General Business Law §§ 349 and 350.[185]  In response, Mauro argues that Electrolux "promoted the Microwave as an 'Over The Range Microwave Oven'" within a particular "Installation Instructions, Use & Care Guide, and Specification Sheet" that is "available to consumers online at [the] Frigidaire website."[186]  Yet Mauro does not plead that he actually looked at this document before purchasing the Microwave.[187]  Mauro has therefore failed to allege the requisite causal connection.

Because Mauro has failed to allege this element of a claim under New York General Business Law §§ 349 and 350, these claims are dismissed.

---

[184]  Instant Complaint at ¶ 61.

[185]  ECF No. 227 at 31-32.

[186]  Instant Complaint at ¶ 314; ECF No. 231 at 32.

[187]  *See* Instant Complaint.

### i. Mauro's Unjust Enrichment Claim Against Electrolux and Lowe's

Electrolux and Lowe's argue that Mauro's claim for unjust enrichment fails, because it only duplicates other claims that Mauro had asserted or is currently asserting in this litigation.[188]  Mauro argues that he should be permitted to plead this claim in the alternative if the Court rejects his other claims.[189]  Under New York law, a plaintiff cannot rely on an unjust enrichment claim as "a catchall cause of action to be used when others fail" while "fail[ing] to explain how [it] is not merely duplicative of [his] other causes of action."[190]  Here Mauro appears to be hoping for unjust enrichment to play the role of a "catchall cause of action" and has not adequately claimed how this claim is not "merely duplicative."  Therefore, Mauro's unjust enrichment claim is dismissed.

## III.  CONCLUSION

As I have outlined above, Defendants' Motions to Dismiss and Partial Motion to Dismiss pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(6) are granted in part and denied in part.  Leave to amend is denied.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive,

---

[188] *See*, *e.g.*, *ECF* No. 227 at 34-36.

[189] ECF No. 231 at 33-34.

[190] *Tyman v. Pfizer, Inc.*, No. 16CV06941LTSBCM, 2017 WL 6988936, at *20 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, No. 16 CV 6941-LTS-BCM, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018) (cleaned up).

prejudice, and futility."[191] "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[192] Although there is a "liberal pleading philosophy of the federal rules" a court will dismiss the amended complaint in its entirety with prejudice because another opportunity for amendment would be futile.[193] "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."[194] Given the procession of complaints, consolidation, and discovery in this litigation, I find that further amendment would not cure the deficiencies in Plaintiffs' Instant Complaint. Leave to amend is therefore denied. And, for the avoidance of doubt, the claims that the Court identified above as dismissed are dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[191]  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir.1993).

[192]  *Burlington*, at 1434. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*; 3 Moore's Federal Practice, supra § 15.15[3], at 15–47 to –48 (3d ed.2000).

[193]  *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

[194]  *Id.*