# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAINE RICE, ALEX KUKICH, ERIKA MENDOZA, and JAMES HUNT, Individually, and on behalf of all others similarly situated, | : : : : : : | CIVIL NO. 4:15-cv-371-MWB |
| Plaintiffs, | : : | Judge Brann |
| v. | : : | |
| ELECTROLUX HOME PRODUCTS, INC., LOWE'S HOME CENTERS, LLC, MODESTO DIRECT APPLIANCE, INC.; AND ABC CORP. 1-10, | : : : : : | |
| Defendant. | : | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT
OF THEIR MOTION PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 60(b) SEEKING RELIEF FROM THIS
COURT'S FINAL ORDER (ECF NO. 25) DISMISSING
<u>PLAINTIFF RICE'S TORT-BASED CLAIMS WITH PREJUDICE</u>**

The intervening change of decisional law concerning the economic loss doctrine rendered by Pennsylvania's highest court constitutes an extraordinary circumstance under Rule 60(b)(6) to amend the judgment, and also highlights a critical legal error that will persist throughout the case if left uncorrected pursuant to Rule 59(e).  Under either Rule, the required relief is the reinstatement of Plaintiff Rice's economic loss claims for two tort-based causes of action:  (1) strict liability – design defect and failure to warn (Rice/Kukich Second Cause of Action), and (2) for negligent failure to warn (Rice/Kukich Third Cause of Action).  Likewise, this Court should permit economic recovery for Plaintiff Rice's negligence claim (Rice/Kukich Seventh Cause of Action).[1]

Each argument asserted by Defendant Electrolux Home Products, Inc.'s ("Electrolux") in its Opposition (ECF No. 267) fails.  A plain review of the docket, and this Court's prior orders, reveals that Plaintiff's Motion was filed in a reasonable time in accordance with Rule 60(c)(1), and Electrolux can assert no credible claim of prejudice.  The relief sought is clearly permitted under the "liberal" and "flexible" legal standard for Rule 60(b)(6) motions in the Third Circuit, as carefully explained in Plaintiff's opening Brief.  *See Satterfield v. Dist.*

---

[1] Plaintiff Rice's negligence claim (Rice/Kukich Seventh Cause of Action) of the operative Complaint (ECF No. 174) was not, at the time, a claim subject to this Court's July 25, 2015 Memorandum Opinion and Order.  ECF Nos. 24-25.  It was subsequently added.  Electrolux did not seek to dismiss the negligence claim in its most recent motion to dismiss.  ECF No. 212 at 18.  *See also* ECF Nos. 247-248.

*Attorney Philadelphia*, 872 F.3d 152, 161 n. 10 (3d Cir. 2017); *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014); *United States v. Enigwe*, 320 F. Supp. 2d 301, 308 (E.D. Pa. 2005).  The instant Motion does not offend the principle of finality as the case is still in the pleading stage and there is currently a Motion for Reconsideration pending.  ECF No. 250.  In addition to the jurisdictional concerns raised in that properly-filed Motion for Reconsideration, it is imperative that the legal claims framing the basis for class certification be decided correctly, at this juncture, in accordance with the controlling state law prior to engaging in expensive expert discovery and briefing class certification.  Fed. R. Civ. P. 1.

Accordingly, Plaintiff's Motion should be granted and the proper legal analysis for the economic loss doctrine should be applied to the allegations in the Amended Consolidated Class Action Complaint ("Complaint") (ECF No. 174), which will permit recovery for economic losses for the negligence-based and strict liability claims for Plaintiff Rice and the putative Rule 23(b)(3) Pennsylvania class.

I. **PLAINTIFF'S MOTION IS TIMELY**

Electrolux argues that there was a 16-month delay between the Pennsylvania Supreme Court issued its sea change of an opinion regarding the economic loss doctrine in *Dittman v. Univ. of Pittsburgh Med. Ctr.*, 196 A.3d 1036 (Pa. 2018)) on November 21, 2018 and the filing of the instant motion on March 26, 2020.  ECF No. 267 at 10.  But this temporal argument unravels as this case

has been stayed since November 8, 2018. ECF No. 188. Indeed, on August 22, 2019, Electrolux successfully advocated for the stay to remain in place, over Plaintiffs' objection. ECF No. 201-1, ¶2. On September 12, 2019, this Court ordered that the "prior stay (Dkt. 188) entered by the Court remains in place pending the Court's resolution of any motions to dismiss." ECF No. 226. On January 15, 2020 this Court issued its Opinion and Order on those motions to dismiss and then scheduled, but later cancelled, a case management teleconference after Plaintiff's pending Motion for Reconsideration was filed on January 29, 2020. ECF Nos. 247-48, 250, 257. No order has expressly lifted the stay entered on November 8, 2018, which predates *Dittman*. Moreover, *Dittman* was issued **after** Plaintiffs filed the operative Complaint on October 3, 2018. ECF No. 174.

These facts are analogous to those in *In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*, in which the court rejected defendant's timeliness argument and reasoned that "[w]hile this is a hiatus of 19 months [between the judgment and the Rule 60 motion] the case was on appeal for much of the time after the judgment was filed." 329 F.R.D. 151, 153 (E.D. Pa. 2018), *aff'd sub nom. Juday v. Merck & Co Inc.*, 2020 WL 1490886 (3d Cir. Mar. 26, 2020). That case was then **stayed** after the MDL was assigned to the court and the Rule 60 motion was not filed until 41 days after the stay was lifted. Even then, the court determined that "[u]nder the circumstances, the delay in filing the pending motion does not seem unreasonable."

3

*Id.* Similarly, in this case, Plaintiff's motion was not unreasonable given that this case has been stayed since November 8, 2018, at Electrolux's request.

The Third Circuit has held that a motion brought pursuant to Rule 60(b) is "not subject to an explicit time limit" and "[w]hat constitutes a 'reasonable time' depends on the circumstances of each case." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 383 F. App'x 242, 246 (3d Cir. 2010)). "A court considers many factors, including finality, the reason for delay, the practical ability for the litigant to learn of the grounds relied upon earlier, and potential prejudice to other parties." *Id.* Each of these factors weighs in favor of reasonableness here.

***First***, finality will not suffer, as the pleadings are not yet settled.[2] The claims that will frame basis for class certification in this Consolidated Action are in the process of being settled and Plaintiff has filed a Motion for Reconsideration

---

[2] This case is distinguishable from *Priester v. JP Morgan Chase Bank, N.A.*, 927 F.3d 912 (5th Cir. 2019), cited by Electrolux in its Opposition (ECF No. 267 at 9-10), because that case had been truly final for 3 years after the Fifth Circuit's *Erie* prediction under Texas law in 2013 that later turned out to be incorrect in 2016. The *Priester* court reasoned that "the interest in getting the law 'right' must sometimes give way to an even stronger interest in finality." *Priester*, 927 F.3d at 913. But this Consolidated Action is nowhere near final; the unsettled pleadings are subject to a pending Motion for Reconsideration and there remain serious jurisdictional questions that are pending before the Court in that same unresolved Motion. ECF No. 250. Electrolux's concern that granting relief would "encourage countless attacks on federal judgments long since closed" (ECF No. 267 at 15) is misplaced under the unique procedural posture of this case, which remains at the pleading stage and in light of class certification on the horizon.

filed on January 29, 2020 (ECF No. 250), which, if granted, may requiring re-pleading of limited claims, retransfer, or interlocutory review. Plaintiff timely filed the instant Motion on March 26, 2020 (ECF No. 264) so that all issues concerning the Complaint may be decided at once.[3] Moreover, Plaintiffs have raised the threshold issue of jurisdictional infirmity requiring retransfer for want of jurisdiction over all defendants and have sought interlocutory review of over the Court's ruling, premised in part by another change in decisional law issued on the same day this Court issued its Opinion on Defendants' Motions to Dismiss. *See* ECF Nos. 250, 263 (citing *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) ("the court must make some findings under § 1631, at least when the parties identify other courts that might be able to hear their case. Here, the District Court did not.")).

***Second***, the reason for any purported delay is this case had been continuously stayed since November 8, 2018. ECF Nos. 188, 226. The only exception to the stay was to brief motions to dismiss for the Complaint that was filed before *Dittman* was even decided. ECF No. 226, ¶1. And by the time the Court's order lifting the stay for the limited purpose of briefing motions to dismiss was entered on September 12, 2019, Defendants had already filed their motions on

---

[3] Plaintiff's Motion for Reconsideration was not ripe until February 26, 2020. ECF No. 263. The oral argument for that Motion was on April 7, 2020 but was later cancelled on April 3, 2020. ECF Nos. 262, 266. The instant Motion had been filed prior to April 7, 2020 – on March 26, 2020. ECF No. 264.

September 9 and 10, 2019. ECF Nos. 206, 208, 210, 211, 214, 215. There was no opportunity to brief *Dittman* or the economic loss doctrine for claims that were not pled in the operative Complaint that was filed pre-*Dittman*. And on September 12, 2019 the Court ordered the stay to "remain in place pending the Court's resolution of any motions to dismiss" – over Plaintiff's objection. ECF Nos. 201-1, ¶2; 226. Accordingly, contrary to Electrolux's argument on page 6 of its Opposition, a review of this Court's own orders (ECF Nos. 188, 226) explains the timing of filing this Motion after the Court's ruling on the motions to dismiss and in conjunction with the pending Motion for Reconsideration. ECF No. 250.

*Lastly*, there is no prejudice to Electrolux for this Court to apply *Dittman* and abide by the binding precedent from the Pennsylvania Supreme Court. It makes no showing or reference of any prejudice in its Opposition. ECF No. 267. And it is odd – but telling – that Electrolux is so concerned about such re-analysis under *Dittman*. Nonetheless, if Plaintiff's Motion is not granted it is Plaintiff Rice and the Pennsylvania State Sub-class that will be prejudiced. Given the expense of expert discovery and class certification briefing, the class certification analysis under Rule 23 should be performed correctly – once – with dutiful attention to all available legal claims.

Electrolux's temporal argument fails based on the unique circumstances of this case. *See In re Diet Drugs*, 383 F. App'x at 246. Plaintiff's timing is not

6

unreasonable given the procedural posture of this case and the lengthy stay obtained over Plaintiffs' objection.

## II. *DITTMAN* IS A KEY CHANGE IN DECISIONAL LAW THAT WARRANTS RELIEF UNDER RULES 60(b)(6) or 59(e)[4]

Electrolux erroneously claims that *Dittman* is not a change in decisional law. ECF No. 267 at 12-14. As Judge Jones made clear:

> ***Traditionally***, Pennsylvania's economic loss doctrine "developed in the product liability context to prevent tort recovery where the only injury was to the product itself." *Sarsfield v. CitiMortgage, Inc.*, 707 F. Supp. 2d 546, 556 (M.D. Pa. 2010). Eventually, the doctrine came to stand for the proposition that, "no cause of action can be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property." *2–J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir. 1997) (citing *Aikens v. Baltimore & Ohio R.R. Co.*, 348 Pa.Super. 17, 501 A.2d 277, 279 (1985)).
>
> ***Recently, however, in* [Dittman]*, the Pennsylvania Supreme Court limited the doctrine's application and moved away from an analysis of whether plaintiff alleges solely economic harms***. Instead, the Pennsylvania Supreme Court shifted to an examination of what *kinds of remedies* are available to the plaintiff. ***Under the new* Dittman *test***, the economic loss doctrine bars a plaintiff's solely economic claim via a *tort* action if the breached duty arises under a *contract*. *Id.* at 1054. ("[I]f the duty [that the tortfeasor breached] arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action."). "Thus, *Dittman* rejected the 'general pronouncement' that 'all negligence claims for economic losses are barred under Pennsylvania law ....' [and] held that 'under Pennsylvania's economic

---

[4] Plaintiff Rice has moved, in the alternative, for relief under Rule 59(e). Electrolux has not opposed Plaintiff's argument under Rule 59(e). *Compare,* ECF No. 265 at 8 n.2 *with,* ECF No. 267.

> loss doctrine, recovery for purely pecuniary damages is permissible under a negligence theory provided that the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract.' " *Dalgic v. Misericordia Univ.*, No. 3:16-CV-0443, 2019 WL 2867236, at *26 (M.D. Pa. July 3, 2019).
>
> Therefore, the central question in the application of the economic loss doctrine under *Dittman **now seems*** to be whether a duty between the parties was created by a contract, as opposed to in tort—not merely whether the plaintiff suffered solely economic injuries.

*Amig v. Cty. of Juniata*, 2020 WL 102998, at *5-6 (M.D. Pa. Jan. 8, 2020) (emphasis added).

Accordingly, *Dittman* is clearly a change in the law that definitively provides the governing analysis for the economic loss doctrine. *See S. Indep. Bank v. Fred's, Inc.*, 2019 WL 1179396, at *15 n.10 (M.D. Ala. Mar. 13, 2019) (finding that *Dittman* put the state of Pennsylvania's economic loss rule "in doubt"); *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *18 (D. Mass. Dec. 31, 2019), report and recommendation adopted, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020) (same).

This Court in its July 25, 2015 Order (ECF No. 24 at 8-12) did not undertake the *Dittman* analysis later mandated by the Pennsylvania Supreme Court, and instead, without the benefit of the Pennsylvania Supreme Court's framework, it performed a traditional analysis that is no longer applicable to bar claims for economic loss for tort claims premised on the breach of a duty that does not arise

8

under a contract. But *Dittman* has changed the governing analysis, which when properly applied, permits Plaintiff Rice's tort-based claims for economic losses to survive.

Electrolux's representation on pages 9-10 of its Opposition (ECF No. 267 at 13-14) that there has been no change in the law and that the same legal principles in *Dittman* have applied since *Bilt-Rite* was decided in 2005 is not only incorrect but it is belied by a plain reading of *Dittman* itself, in which the Superior Court in *Dittman* "opined that the trial court was correct in noting that the *Bilt-Rite* decision was meant to provide a ***narrow exception*** to the doctrine only when the losses result from the reliance on the advice of professionals." *Dittman*, 196 A.3d at 1042 (emphasis added); *see also Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) ("the *Bilt–Rite* Court simply carved-out an exception to allow a commercial plaintiff to seek recourse from an 'expert supplier of information' with whom the plaintiff has no contractual relationship, in ***very narrow circumstances*** not relevant here. ***The Pennsylvania Supreme Court emphasized that its holding was limited to those 'businesses' which provide services and/or information that they know will be relied upon by third parties in their business endeavors***) (citations omitted, emphasis added). Therefore, it was not until *Dittman* was decided that the Pennsylvania Supreme Court gleaned from *Bilt-Rite*, and other sources of law, what would become the broad approach to the

economic loss doctrine from what was once considered a "narrow exception." Simply put, the ending was far from obvious. Electrolux is plain wrong that *Bilt-Rite* approach applied broadly since 2005. The same is true for *Excavation Technologies, Inc. v. Columbia Gas Co. of Pa.*, 604 Pa. 50, 985 A.2d 840 (Pa. 2009). *See Dittman*, 196 A.3d at 1056 ("*Excavation Technologies* Court did not discuss *Bilt-Rite*'s approach to the doctrine, set forth above, at all.").

### III. *DITTMAN* IS CONTROLLING LAW THAT IS INCONSISTENT WITH THIS COURT'S PRIOR DECISION DISMISSING PLAINTIFF RICE'S CLAIMS FOR STRICT LIABILITY AND NEGLIGENT FAILURE TO WARN

On page 14 of its Opposition, Electrolux attempts to harmonize *Dittman* with the Court's prior ruling dismissing Plaintiff Rice's strict liability and negligent failure to warn claims by claiming that "Plaintiff has not established that Electrolux owed her a duty independent of any duty assumed in the sale of her microwave and issuance of a warranty." ECF No. 267 at 18. This is false. As set forth in her opening Brief, Plaintiff Rice has pled and can establish a breach of legal duties under common law that are independent of any duty assumed pursuant to contract for both tort-based claims. *See* Compl., ¶¶199-208 (for negligent failure to warn Plaintiff Rice alleges a breach of a legal duty to use reasonable care to warn consumers about the risks and dangers regarding the use of the Microwaves); *id.*, ¶¶180-96 (for strict liability-design defect and failure to warn, Plaintiff Rice alleges that the "Over-The-Range" Microwave is defective in that it

is dangerous beyond a reasonable consumer's expectations and under a risk-utility analysis); *Tincher v. Omega Flex, Inc.*, 628 Pa. 296, 388, 104 A.3d 328, 383 (Pa. 2014) (citing Restatement (2D) of Torts § 402A(1)). The analysis previously performed by this Court to dismiss Plaintiff Rice's tort claims pursuant to Pennsylvania's economic loss doctrine is wholly inconsistent with *Dittman.*

On pages 15 and 16 of its Brief (ECF No. 267 at 19-20), Electrolux relies heavily on *Cesare v. Champion Petfoods USA Inc.*, 2019 WL 7037585, *7 (W.D. Pa. Dec. 20, 2019), but that non-controlling case from the Western District of Pennsylvania, which does not appear to have been cited by any other federal district court, is factually and legally distinguishable.

*First*, *Cesare* involved a price premium theory of dog food products that were allegedly falsely promoted on their labels as being made from "fresh" ingredients "regionally sourced" that were of a quality "fit for human consumption." *Id.* at *4. *Cesare* did not involve a design defect or a dangerous product like the Microwaves as here. *See* Expert Report of Michael Bak, Ph.D. (ECF No. 253-3) (filed under seal). Indeed, the term "defect" does not appear once in the *Cesare* opinion. Electrolux's characterization that Plaintiff Rice was "disappointed" that the Microwave "did not live up to her expectations" (while true) misrepresents what she has alleged in the Complaint. The critical allegations for Rice's strict liability-design defect and failure to warn claim and negligent

11

failure to warn claim are that the Microwaves at issue uniformly violate an objective ASTM standard because of the same Defect, and that Electrolux has failed to warn of the Defect despite knowledge since at least late 2011. ECF No. 174, ¶¶10, 180-81, 185, 203-06.

*Second*, Electrolux cites *Cesare* out of context, focusing on the narrow "fraudulent inducement exception" to the general rule in the Third Circuit that intentional misrepresentation claims are generally preempted by the economic loss doctrine, *except* in the limited instances where a defendant committed fraud to induce another to enter into a contract. *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394, 403 (M.D. Pa. 2019). But if the alleged fraud is "intrinsic to the contract" (if the representations concern the specific subject matter of the contract or warranty, such as the quality of the goods sold), then fraud claim does not fall within this narrow exception and the economic loss doctrine applies. *Cesare*, 2019 WL 7037585, at *7 (citing *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016)). But none of Plaintiff Rice's claims under Pennsylvania law sound in fraud. Electrolux takes this Court on an expedition about a narrow exception that leads nowhere. There's no there there in the fraudulent inducement line of cases cited by Electrolux. *Cesare* is inapposite.

Even if this Court decided to consider *Cesare*, other courts have come to the opposite conclusion. In *Sheridan v. Roberts Law Firm*, Judge Wolson applied

*Dittman* and found that the economic loss doctrine **did not** bar tort claims for fraudulent and negligent misrepresentations even where there was a contract. *See Sheridan v. Roberts Law Firm*, 2019 WL 6726469, at *3-4 (E.D. Pa. Dec. 11, 2019). For the intentional/fraudulent inducement claims, Judge Wolson found that federal and state courts in Pennsylvania have recognized a duty "of honesty imposed by society" and a "societal duty not to affirmatively mislead or advise without factual basis." *Id.* at *4 (citing *Mendelsohn, Drucker & Associates v. Titan Atlas Manufacturing*, 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012); *Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 429 (Pa. Super. 2016)). For the negligent misrepresentation claim, Judge Wolson pointed to the Restatement of Torts (Second) Section 552 for the source of the duty. *Id.* at *4.[5] Similarly here, Electrolux breached its duties under Pennsylvania law independent of any contractual duty, as pled in the Complaint as detailed above. Electrolux is

---

[5] Chief Judge Connor permitted a negligent misrepresentation claim in a consumer class action against Rite Aid seeking economic recovery for mislabeling the amount of pills on its shelve panels where there was no personal injury or property damage. *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394, 403 n.1 (M.D. Pa. 2019) (citing *Dittman*, 196 A.3d at 1054) ("Pennsylvania's economic loss doctrine does not categorically bar negligence claims. The validity of a negligent misrepresentation claim instead 'turns on the determination of the source of the duty plaintiff claims the defendant owed.' If the alleged breach is 'independent[ ] of any contract duties between the parties,' plaintiffs' tort claim may survive.") (internal citations omitted). The court dismissed the contract claims for lack of pre-suit notice and on Rule 12(b)(6) grounds and permitted amendment, but noted in its order that if plaintiffs did not file an amended complaint the negligent misrepresentation claim would proceed. ECF No. 70 (18-cv-2135).

13

admittedly on notice of what those duties are, as it has raised affirmative defenses to them in its Answer. ECF No. 256 at 69-70 (Affirmative Defense Nos. 32, 35 36). Moreover, Plaintiff Rice's negligence claim (Rice/Kukich Seventh Cause of Action) is viable on behalf of an Injunctive/Declaratory Relief Class (and the Maryland State Sub-Class for Kukich). Electrolux never moved to dismiss the negligence claim and opted to deny those allegations in its Answer. *Compare*, Complaint (ECF No. 174) ¶¶262-71 *with*, Answer (ECF No. 256), ¶¶262-71; *see also* ECF Nos. 211-12, 247-48. Thus, the applicable duties here are readily apparent and established by Pennsylvania law. *See also Tincher*, 104 A.3d at 383 (citing Restatement (2d) of Torts § 402A(1)) ("Stated affirmatively, a person or entity engaged in the business of selling a product has a duty to make and/or market the product—which 'is expected to and does reach the user or consumer without substantial change in the condition in which it is sold'—free from 'a defective condition unreasonably dangerous to the consumer or [the consumer's] property.'"); *id.* ("[t]he duty spoken of in strict liability is intended to be distinct from the duty of due care in negligence").

## IV. CONCLUSION

This Court should apply *Dittman* and permit economic recovery for Plaintiff Rice's negligence claim (Rice/Kukich Seventh Cause of Action); her claim for strict liability – design defect and failure to warn (Rice/Kukich Second Cause of

Action); and for negligent failure to warn (Rice/Kukich Third Cause of Action). Under the new *Dittman* test, the economic loss doctrine only bars a plaintiff's economic claim via a tort action if the breached duty arises under a contract. Here, the applicable legal duties arise independently of any contractual duties between the parties, and, therefore, a breach supports economic recovery in tort.

                              Respectfully submitted,

DATE: April 23, 2020        BY: */s/ Charles J. Kocher*
                                       Simon B. Paris
                                       Patrick Howard (PA ID #88572)
                                       Charles J. Kocher (PA ID #93141)
                                       **SALTZ, MONGELUZZI,**
                                       **& BENDESKY, P.C**.
                                       1650 Market Street, 52nd Floor
                                       Philadelphia, PA 19103
                                       Telephone: (215) 496-8282
                                       Fax: (215) 496-0999
                                       E-mail: sparis@smbb.com
                                       E-mail: phoward@smbb.com
                                       E-mail: ckocher@smbb.com

                                       **Attorneys for Plaintiffs and Proposed Classes**

## CERTIFICATE OF SERVICE

I certify that on April 23, 2020, I caused the attached document to be filed with the Court's ECF system such that all counsel of record will be served automatically.

*/s/ Charles J. Kocher*